No. 16-56799
_____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
_____

ANTHONY PAUL MANRIQUE

*Debtor and Appellant,*

v.

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR LEHMAN XS
TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N,

*Secured Creditor and Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION
CASE NO. 5:16-cv-00708-DOC

UNITED STATES BANKRUPTCY COURT-CENTRAL DISTRICT OF
CALIFORNIA - RIVERSIDE DIVISION
CASE NO.6:15-bk-10650-SY
_____

**APPELLEE'S SUPPLEMENTAL EXCERPTS OF RECORD BY APPELLE
VOLUME II
(Pages 74-360)**
_____

**ALDRIDGE PITE, LLP**
Todd S. Garan (SBN 236878)
4375 Jutland Drive, Suite 200
San Diego, California 92117
Phone: (858) 750-7600
Fax: (858) 590-1385

| Docket | Party | Document | Date | Page |
|--------|-------|----------|------|------|
| | | **VOLUME II** | | |
| BK 15 | Debtor | Copy of Debtor's Bankruptcy Schedules | 02/04/2015 | Pages 74-117 44 pages |
| BK | Appellee | Copy of Proof of Claim No.3 Filed by U.S. Bank, N.A. | 03/06/2015 | Pages 118-160 43 pages |
| BK 45 | Debtor | Debtor's Objection to Proof of Claim No.3 Filed by U.S. Bank, N.A. | 07/27/2015 | Pages 161-225 65 pages |
| BK 48 | Court | Hearing Continued on Debtor's Objection to Claim No.3 Filed by U.S. Bank, N.A. | 08/20/2015 | Page 226 1 page |
| BK 51 | Appellee | U.S. Bank's Response to Debtor's Objection to Claim No.3. | 09/23/2015 | Pages 227-275 49 pages |
| BK 52 | Debtor | Notice of Amended Hearing on Debtor's Objection to Proof of Claim filed by U.S. Bank, N.A. | 09/28/2015 | Pages 276-280 5 pages |
| BK 55 | Court | Hearing Continued on Debtor's Objection to Proof of Claim No.3 Filed by U.S. Bank, N.A. | 10/01/20151 | Page 281 1 page |
| BK 61 | Court | Scheduling Order on Debtor's Objection to Proof of Claim No.3 filed by U.S. Bank, N.A. | 10/16/2015 | Pages 282-283 2 pages |
| BK 78 | Debtor | Notice of Hearing on Motion for Reconsideration of Court's Order Denying Debtor's Objection to Proof of Claim No.3 file by U.S. Bank, N.A. | 02/04/2016 | Pages 284-287 4 pages |
| BK 85 | Appellee | U.S. Bank, N.A.'s Opposition to Debtor's Motion for Reconsideration of Order | 03/03/2016 | Pages 288-330 43 pages |

| | | Denying Debtor's Objection to Proof of Claim No.3 | | |
|---|---|---|---|---|
| BK 89 | Appellee | U.S. Bank, N.A.'s Objection to Request for Judicial Notice filed by Debtor in Support of Motion for Reconsideration. | 03/16/2016 | Pages 331-333 3 pages |
| BK 102 | Debtor | Notice of Appeal and Statement of Election to District Court on Order on Motion for Reconsideration. | 04/12/2016 | Pages 334-339 6 pages |
| BK 76 | Debtor | Declaration By Debtor In Support of Motion for Reconsideration; Exhibits A & B | 01/16/2016 | Pages 340-360 21 pages |
| | | | | |
| | | | | |
| | | | | [Vol.2 287 pages] |

Dana M. Douglas (SBN 220053)
Attorney at Law
11024 Balboa Blvd., No.431
Granada Hills, CA 91344
818-360-8295 office
213-270-9456 fax
dana@danamdouglaslaw.com

Attorney for Debtor
Anthony Paul Manrique

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No. 6:15-bk-10650-SY |
| | Chapter 11 |
| ANTHONY PAUL MANRIQUE, | **SUMMARY OF SCHEDULES; STATISTICAL SUMMARY OF CERTAIN LIABILITIES; SCHEDULES A - J; DECLARATION CONCERNING DEBTOR'S SCHEDULES; STATEMENT OF FINANCIAL AFFAIRS; COMPENSATION STATEMENT OF ATTORNEY; DEBTOR CERTIFICATION OF EMPLOYMENT INCOME & PAYSTUBS; STATEMENT OF CURRENT MONTHLY INCOME; ELECTRONIC FILING DECLARATION** |
| Debtor. | |
| | ***No Hearing Required*** |



B 6 Summary (Official Form 6 - Summary) (12/13)

# United States Bankruptcy Court
## Central District of CA

In re    **Anthony Paul Manrique**      ,

Debtor

Case No.   **6:15-bk-10650-SY**

Chapter      **11**

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 350,000.00 | | |
| B - Personal Property | Yes | 4 | 129,248.00 | | |
| C - Property Claimed as Exempt | Yes | 2 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 448,377.09 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 1 | | 4,400.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 4,217.37 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 1 | | | 3,787.00 |
| Total Number of Sheets of ALL Schedules | | 14 | | | |
| Total Assets | | | 479,248.00 | | |
| Total Liabilities | | | | 452,777.09 | |

B 6 Summary (Official Form 6 - Summary) (12/13)

# United States Bankruptcy Court
## Central District of CA

In re    **Anthony Paul Manrique**                           ,     Case No.    **6:15-bk-10650-SY**
                                            Debtor                                Chapter _____ **11**

# STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | 0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | 0.00 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | 0.00 |
| Student Loan Obligations (from Schedule F) | 0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | 0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | 0.00 |
| TOTAL | 0.00 |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 12) | 4,217.37 |
| Average Expenses (from Schedule J, Line 22) | 3,787.00 |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20 ) | 5,115.00 |

**State the following:**

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | 96,127.09 |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | 0.00 | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | 0.00 |
| 4. Total from Schedule F | | 4,400.00 |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | 100,527.09 |

B6A (Official Form 6A) (12/07)

.

In re    **Anthony Paul Manrique**                                 ,     Case No.   **6:15-bk-10650-SY**

Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Debtor's Residence**<br>**Location: 718 Silverwood Ave., Upland CA 91786**<br>**APN: 1007-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**<br>**Tract 6654 Lot 3**<br>**Records of San Bernardino County** | **Joint tenant** | **-** | **350,000.00** | **446,127.09** |

|  |  |  |
|---|---|---|
| Sub-Total > | **350,000.00** | (Total of this page) |
| Total > | **350,000.00** |  |

  **0**   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com

SER 77

Best Case Bankruptcy

B6B (Official Form 6B) (12/07)

.

In re   **Anthony Paul Manrique** _____ ,   Case No.  **6:15-bk-10650-SY**
_____
Debtor

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | | **Cash in Debtor's Possession**<br>**Location: 718 Silverwood Ave., Upland CA 91786** | - | 6,000.00 |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Funds in Bank/Credit Union Accounts**<br>**Location: 718 Silverwood Ave., Upland CA 91786**<br>**Pacific Western Bank Checking   $2000** | - | 2,400.00 |
| | | | **Debtor's CE/Credit Union Account**<br>**Location: 718 Silverwood Ave., Upland CA 91786**<br>**Chaffey Credit Union   $2500** | - | 2,500.00 |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | | **Debtor's Household Goods and Furnishings**<br>**Location: 718 Silverwood Ave., Upland CA 91786**<br>**Living/Dining/Bedroom Furniture, Pool Table, Electronics, Food Eating/Preparation/Storage Utensils & Supplies, Miscellaneous Foodstuffs, Major & Minor Appliances, Linens/Soft Goods, Household Cleaning/Maintenance/Repair Supplies** | - | 4,500.00 |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. | Wearing apparel. | | **Debtor's Clothing**<br>**Location: 718 Silverwood Ave., Upland CA 91786** | - | 500.00 |
| 7. | Furs and jewelry. | | **Debtor's/Spouses Wedding Jewelry**<br>**Location: 718 Silverwood Ave., Upland CA 91786** | - | 1,000.00 |
| 8. | Firearms and sports, photographic, and other hobby equipment. | | **Debtor's Nikon Camera & Glock 30 Firearm**<br>**Location: 718 Silverwood Ave., Upland CA 91786** | - | 3,000.00 |
| 9. | Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |

Sub-Total >      **19,900.00**
(Total of this page)

  **3**   continuation sheets attached to the Schedule of Personal Property

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re   **Anthony Paul Manrique**                                                    ,   Case No.   **6:15-bk-10650-SY**
                                          Debtor

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars.  (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | | **Debtor's 2014 Income Tax Refund (if any)** **Location: 718 Silverwood Ave., Upland CA 91786** | - | 300.00 |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Sub-Total >         **300.00**
(Total of this page)

Sheet   **1**   of   **3**   continuation sheets attached
to the Schedule of Personal Property

## SER 79

B6B (Official Form 6B) (12/07) - Cont.

In re    **Anthony Paul Manrique**                      ,    Case No.   **6:15-bk-10650-SY**

Debtor

# SCHEDULE B - PERSONAL PROPERTY

(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | **Debtor's Claim Against Bank of America in re Mortgage Processing**<br>**Location: 718 Silverwood Ave., Upland CA 91786** | - | 93,348.00 |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | **Debtor's/Spouse's Vehicles**<br>**Location: 718 Silverwood Ave., Upland CA 91786**<br>**2004 Honda Shadow Aero-Motorcycle $3800**<br>**2004 Hyundai Santa Fe $4500**<br>**1998 Ford F150 Pickup $3900**<br>**1998 Dodge Durango $3500** | - | 15,700.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |

Sub-Total >      109,048.00

(Total of this page)

Sheet   **2**   of   **3**   continuation sheets attached
to the Schedule of Personal Property

# SER 80

B6B (Official Form 6B) (12/07) - Cont.

In re    **Anthony Paul Manrique**                                    ,          Case No.   **6:15-bk-10650-SY**
                                                                                Debtor

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  | | | Sub-Total > | **0.00** |
|  | | | (Total of this page) | |
|  | | | Total > | **129,248.00** |

Sheet __3__ of __3__ continuation sheets attached
to the Schedule of Personal Property                              (Report also on Summary of Schedules)

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

SER 81

B6C (Official Form 6C) (4/13)

.

In re    **Anthony Paul Manrique**                                    ,    Case No.   **6:15-bk-10650-SY**

                                                Debtor

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:
(Check one box)
☐ 11 U.S.C. §522(b)(2)
■ 11 U.S.C. §522(b)(3)

☐ Check if debtor claims a homestead exemption that exceeds
$155,675. *(Amount subject to adjustment on 4/1/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.)*

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Real Property**<br>**Debtor's Residence**<br>**Location: 718 Silverwood Ave., Upland CA 91786**<br>**APN: 1007-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**<br>**Tract 6654 Lot 3**<br>**Records of San Bernardino County** | C.C.P. § 703.140(b)(1) | 10.00 | 350,000.00 |
| **Cash on Hand**<br>**Cash in Debtor's Possession**<br>**Location: 718 Silverwood Ave., Upland CA 91786** | C.C.P. § 703.140(b)(5) | 6,000.00 | 6,000.00 |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit**<br>**Funds in Bank/Credit Union Accounts**<br>**Location: 718 Silverwood Ave., Upland CA 91786**<br><br>**Pacific Western Bank Checking      $2000** | C.C.P. § 703.140(b)(5) | 2,400.00 | 2,400.00 |
| **Household Goods and Furnishings**<br>**Debtor's Household Goods and Furnishings**<br>**Location: 718 Silverwood Ave., Upland CA 91786**<br>**Living/Dining/Bedroom Furniture, Pool Table, Electronics, Food Eating/Preparation/Storage Utensils & Supplies, Miscellaneous Foodstuffs, Major & Minor Appliances, Linens/Soft Goods, Household Cleaning/Maintenance/Repair Supplies** | C.C.P. § 703.140(b)(3) | 4,500.00 | 4,500.00 |
| **Wearing Apparel**<br>**Debtor's Clothing**<br>**Location: 718 Silverwood Ave., Upland CA 91786** | C.C.P. § 703.140(b)(3) | 500.00 | 500.00 |
| **Furs and Jewelry**<br>**Debtor's/Spouses Wedding Jewelry**<br>**Location: 718 Silverwood Ave., Upland CA 91786** | C.C.P. § 703.140(b)(4) | 1,000.00 | 1,000.00 |
| **Firearms and Sports, Photographic and Other Hobby Equipment**<br>**Debtor's Nikon Camera & Glock 30 Firearm**<br>**Location: 718 Silverwood Ave., Upland CA 91786** | C.C.P. § 703.140(b)(5) | 3,000.00 | 3,000.00 |
| **Other Liquidated Debts Owing Debtor Including Tax Refund**<br>**Debtor's 2014 Income Tax Refund (if any)**<br>**Location: 718 Silverwood Ave., Upland CA 91786** | C.C.P. § 703.140(b)(5) | 300.00 | 300.00 |

   **1**   continuation sheets attached to Schedule of Property Claimed as Exempt

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com                              Best Case Bankruptcy

B6C (Official Form 6C) (4/13) -- Cont.

In re     **Anthony Paul Manrique**                                    ,     Case No.   **6:15-bk-10650-SY**
                                                                   
                                          Debtor

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT
(Continuation Sheet)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Automobiles, Trucks, Trailers, and Other Vehicles** | | | |
| **Debtor's/Spouse's Vehicles** | **C.C.P. § 703.140(b)(2)** | **5,100.00** | **15,700.00** |
| **Location: 718 Silverwood Ave., Upland CA 91786** | **C.C.P. § 703.140(b)(5)** | **10,600.00** | |
| **2004 Honda Shadow Aero-Motorcycle    $3800** | | | |
| **2004 Hyundai Santa Fe    $4500** | | | |
| **1998 Ford F150 Pickup    $3900** | | | |
| **1998 Dodge Durango    $3500** | | | |

| | Total: | **33,410.00** | **383,400.00** |
|---|---|---|---|

Sheet __1__ of __1__ continuation sheets attached to the Schedule of Property Claimed as Exempt

SER 83

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com                                                    Best Case Bankruptcy

B6D (Official Form 6D) (12/07)

In re   **Anthony Paul Manrique** ,                                    Case No.  **6:15-bk-10650-SY**
─────────────────────────────────                                              ──────────────────────
                    Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | | |
| Account No.<br><br>**Chaffey Credit Union**<br>**PO Box 700**<br>**Upland, CA 91785-0700** | | - | | | **12/2014**<br>**Non-Purchase Money Security**<br>**Debtor's CE/Credit Union Account**<br>**Location: 718 Silverwood Ave., Upland CA 91786**<br>**Chaffey Credit Union     $2500** | | | | | |
| | | | | | Value $                          **2,500.00** | | | | 2,250.00 | 0.00 |
| Account No. **xxxxx3989**<br><br>**Lehman Bros. Holdings, Inc., et al.**<br>**Additional Claimants:  NationStar**<br>**US Bank, BAC/Countrywide/AWL**<br>**101 Hudson St., 38th Flr.**<br>**Jersey City, NJ 07302** | X | - | | | **6/2007**<br>**Mortgage**<br>**Debtor's Residence**<br>**Location: 718 Silverwood Ave., Upland CA 91786**<br>**APN: 1007-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**<br>**Tract 6654 Lot 3**<br>**Records of San Bernardino County** | X | X | X | | |
| | | | | | Value $                       **350,000.00** | | | | 446,127.09 | 96,127.09 |
| Account No. | | | | | | | | | | |
| | | | | | Value $ | | | | | |
| Account No. | | | | | | | | | | |
| | | | | | Value $ | | | | | |

| | | |
|---|---|---|
| **0**  continuation sheets attached | Subtotal<br>(Total of this page) | 448,377.09 | 96,127.09 |
| | Total<br>(Report on Summary of Schedules) | 448,377.09 | 96,127.09 |

B6E (Official Form 6E) (4/13)

.

In re  **Anthony Paul Manrique**

Case No.  **6:15-bk-10650-SY**

Debtor ,

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☑ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $12,475* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $6,150* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,775* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

☐ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

*\* Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

**0**   continuation sheets attached

**SER 85**

B6F (Official Form 6F) (12/07)

In re __Anthony Paul Manrique_____ ,     Case No. __6:15-bk-10650-SY_____
                                 Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. **xxxx-xxxxxx-x1000** <br><br> **American Express** <br> **PL Box 981535** <br> **El Paso, TX 79998** | | - | | | 12/2014 <br> **Credit Card Purchases** | | | | 2,300.00 |
| Account No. **xxxx940-6** <br><br> **HC Credit** <br> **HC Processing Center** <br> **PO Box 802** <br> **Springdale, AR 72765-0802** | | - | | | 1/2014 <br> **Medical Expenses** | | | | 845.00 |
| Account No. **xxxxxxxxxxxx2639** <br><br> **Synchrony Bank/Care Credit** <br> **ATTN: Bankruptcy Dept.** <br> **PO Box 965061** <br> **Orlando, FL 32896-5061** | X | - | | | 1/2014 <br> **Medical Expenses** | | | | 1,255.00 |
| Account No. | | | | | | | | | |

           Subtotal          4,400.00
__0__ continuation sheets attached        (Total of this page)

                           Total          4,400.00
          (Report on Summary of Schedules)

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com

SER 86

B6G (Official Form 6G) (12/07)

In re   **Anthony Paul Manrique**                             ,      Case No.   **6:15-bk-10650-SY**
                                      Debtor

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
| --- | --- |
| | |

0
____ continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

SER 87

B6H (Official Form 6H) (12/07)

.

In re  **Anthony Paul Manrique**                      ,     Case No.  **6:15-bk-10650-SY**

Debtor

# SCHEDULE H - CODEBTORS

    Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐  Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Alisa Arlene Manrique**<br>**718 Silverwood Ave.**<br>**Upland, CA 91786** | **Lehman Bros. Holdings, Inc., et al.**<br>**Additional Claimants: NationStar**<br>**US Bank, BAC/Countrywide/AWL**<br>**101 Hudson St., 38th Flr.**<br>**Jersey City, NJ 07302** |
| **Alisa Arlene Manrique**<br>**718 Silverwood Ave.**<br>**Upland, CA 91786** | **Synchrony Bank/Care Credit**<br>**ATTN: Bankruptcy Dept.**<br>**PO Box 965061**<br>**Orlando, FL 32896-5061** |

**0**

____ continuation sheets attached to Schedule of Codebtors

          **SER 88**    

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Anthony Paul Manrique** |
| Debtor 2<br>(Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CA |
| Case number<br>(If known) | **6:15-bk-10650-SY** |

Check if this is:

☐ An amended filing

☐ A supplement showing post-petition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

# Official Form B 6I
## Schedule I: Your Income                                   12/13

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| | Employment status | ■ Employed<br>☐ Not employed | ☐ Employed<br>■ Not employed |
| | Occupation | **Mgr. Furniture Mfg. & Mktg.** | |
| | Employer's name | **Omnia Italian Design, Inc.** | |
| | Employer's address | **4950 Edison Ave.<br>Chino, CA 91710** | |
| | How long employed there? | **8 years** | |

## Part 2:    Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ **5,542.33** | $ **0.00** |
| 3. | Estimate and list monthly overtime pay. | 3. | +$ **0.00** | +$ **0.00** |
| 4. | Calculate gross Income. Add line 2 + line 3. | 4. | $ **5,542.33** | $ **0.00** |

Debtor 1   **Anthony Paul Manrique**          Case number (*if known*)    **6:15-bk-10650-SY**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | Copy line 4 here ............................................................. | 4. | $ **5,542.33** | $ **0.00** |
| 5. | List all payroll deductions: | | | |
| | 5a.   Tax, Medicare, and Social Security deductions | 5a. | $ **1,255.97** | $ **0.00** |
| | 5b.   Mandatory contributions for retirement plans | 5b. | $ **0.00** | $ **0.00** |
| | 5c.   Voluntary contributions for retirement plans | 5c. | $ **0.00** | $ **0.00** |
| | 5d.   Required repayments of retirement fund loans | 5d. | $ **0.00** | $ **0.00** |
| | 5e.   Insurance | 5e. | $ **68.99** | $ **0.00** |
| | 5f.   Domestic support obligations | 5f. | $ **0.00** | $ **0.00** |
| | 5g.   Union dues | 5g. | $ **0.00** | $ **0.00** |
| | 5h.   Other deductions. Specify: _____ | 5h.+ | $ **0.00** | + $ **0.00** |
| 6. | Add the payroll deductions. Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ **1,324.96** | $ **0.00** |
| 7. | Calculate total monthly take-home pay. Subtract line 6 from line 4. | 7. | $ **4,217.37** | $ **0.00** |
| 8. | List all other income regularly received: | | | |
| | 8a.   Net income from rental property and from operating a business, profession, or farm <br> Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ **0.00** | $ **0.00** |
| | 8b.   Interest and dividends | 8b. | $ **0.00** | $ **0.00** |
| | 8c.   Family support payments that you, a non-filing spouse, or a dependent regularly receive <br> Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ **0.00** | $ **0.00** |
| | 8d.   Unemployment compensation | 8d. | $ **0.00** | $ **0.00** |
| | 8e.   Social Security | 8e. | $ **0.00** | $ **0.00** |
| | 8f.   Other government assistance that you regularly receive <br> Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. <br> Specify: _____ | 8f. | $ **0.00** | $ **0.00** |
| | 8g.   Pension or retirement income | 8g. | $ **0.00** | $ **0.00** |
| | 8h.   Other monthly income. Specify: _____ | 8h.+ | $ **0.00** | + $ **0.00** |
| 9. | Add all other income. Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | 9. | $ **0.00** | $ **0.00** |
| 10. | Calculate monthly income. Add line 7 + line 9. <br> Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | 10. | $ **4,217.37** + $ **0.00** = | $ **4,217.37** |
| 11. | State all other regular contributions to the expenses that you list in Schedule J. <br> Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives. <br> Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J*. <br> Specify: _____ | 11. | +$ **0.00** | |
| 12. | Add the amount in the last column of line 10 to the amount in line 11. The result is the combined monthly income. <br> Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data*, if it applies | 12. | $ **4,217.37** <br> **Combined monthly income** | |

13. **Do you expect an increase or decrease within the year after you file this form?**

■ No.

☐ Yes.   Explain: _____

Fill in this information to identify your case:

Debtor 1    **Anthony Paul Manrique**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CA

Case number   **6:15-bk-10650-SY**
(If known)

Check if this is:

☐ An amended filing

☐ A supplement showing post-petition chapter 13
   expenses as of the following date:

     MM / DD / YYYY

☐ A separate filing for Debtor 2 because Debtor 2
   maintains a separate household

## Official Form B 6J

## Schedule J: Your Expenses          12/13

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct
information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number
(if known). Answer every question.

### Part 1:    Describe Your Household

1.   **Is this a joint case?**

    ■ No. Go to line 2.

    ☐ Yes. **Does Debtor 2 live in a separate household?**

       ☐ No

       ☐ Yes. Debtor 2 must file a separate Schedule J.

2.   **Do you have dependents?**    ☐ No

    Do not list Debtor 1 and
    Debtor 2.

    Do not state the dependents'
    names.

    ☑ Yes. Fill out this information for
    each dependent...........

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| **Spouse** | 50 | ☐ No   ■ Yes |
| | | ☐ No   ☐ Yes |
| | | ☐ No   ☐ Yes |
| | | ☐ No   ☐ Yes |

3.   **Do your expenses include**
    **expenses of people other than**    ■ No
    **yourself and your dependents?**    ☐ Yes

### Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report
expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the
applicable date.

Include expenses paid for with non-cash government assistance if you know the value of
such assistance and have included it on *Schedule I: Your Income* (Official Form 6I.)

| | | Your expenses |
|---|---|---|
| 4. | The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. $    1,022.00 |
| | **If not included in line 4:** | |
| 4a. | Real estate taxes | 4a. $    261.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b. $    51.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. $    150.00 |
| 4d. | Homeowner's association or condominium dues | 4d. $    0.00 |
| 5. | **Additional mortgage payments for your residence,** such as home equity loans | 5. $    0.00 |
| 6. | **Utilities:** | |
| 6a. | Electricity, heat, natural gas | 6a. $    265.00 |
| 6b. | Water, sewer, garbage collection | 6b. $    60.00 |

SER 91

Debtor 1 __Anthony Paul Manrique__                                    Case number (if known) __6:15-bk-10650-SY__

| | | | | |
|---|---|---|---|---|
| 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | 350.00 |
| 6d. | Other. Specify: __Alarm System__ | 6d. | $ | 36.00 |
| 7. | **Food and housekeeping supplies** | 7. | $ | 600.00 |
| 8. | **Childcare and children's education costs** | 8. | $ | 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $ | 45.00 |
| 10. | **Personal care products and services** | 10. | $ | 50.00 |
| 11. | **Medical and dental expenses** | 11. | $ | 0.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | $ | 250.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $ | 50.00 |
| 14. | **Charitable contributions and religious donations** | 14. | $ | 0.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. Life insurance | 15a. | $ | 0.00 |
| | 15b. Health insurance | 15b. | $ | 0.00 |
| | 15c. Vehicle insurance | 15c. | $ | 147.00 |
| | 15d. Other insurance. Specify: | 15d. | $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | 16. | $ | 0.00 |
| 17. | **Installment or lease payments:** | | | |
| | 17a. Car payments for Vehicle 1 | 17a. | $ | 0.00 |
| | 17b. Car payments for Vehicle 2 | 17b. | $ | 0.00 |
| | 17c. Other. Specify: | 17c. | $ | 0.00 |
| | 17d. Other. Specify: | 17d. | $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 6I).** | 18. | $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. | $ | 0.00 |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*** | | | |
| | 20a. Mortgages on other property | 20a. | $ | 0.00 |
| | 20b. Real estate taxes | 20b. | $ | 0.00 |
| | 20c. Property, homeowner's, or renter's insurance | 20c. | $ | 0.00 |
| | 20d. Maintenance, repair, and upkeep expenses | 20d. | $ | 0.00 |
| | 20e. Homeowner's association or condominium dues | 20e. | $ | 0.00 |
| 21. | **Other:** Specify: __Administrative Support__ | 21. | +$ | 450.00 |
| 22. | **Your monthly expenses.** Add lines 4 through 21. The result is your monthly expenses. | 22. | $ | 3,787.00 |
| 23. | **Calculate your monthly net income.** | | | |
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. | $ | 4,217.37 |
| | 23b. Copy your monthly expenses from line 22 above. | 23b. | -$ | 3,787.00 |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | 23c. | $ | 430.37 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**

For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.

☐ Yes.      Explain here:

SER 92

B6 Declaration (Official Form 6 - Declaration). (12/07)

# United States Bankruptcy Court
## Central District of CA

In re  **Anthony Paul Manrique**

Debtor(s)

Case No.  **6:15-bk-10650-SY**

Chapter  **11**

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of __16__ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date  **February 3, 2015**

Signature

**Anthony Paul Manrique**
Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

B7 (Official Form 7) (04/13)

# United States Bankruptcy Court
## Central District of CA

In re __Anthony Paul Manrique__          Case No.   __6:15-bk-10650-SY__

Debtor(s)      Chapter   __11__

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

*DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any persons in control of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(2), (31).

---

### 1. Income from employment or operation of business

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| **$3,837.00** | **2015 YTD: Husband Wages** |
| **$71,974.00** | **2014: Husband Wages** |
| **$67,288.00** | **2013: Husband Wages** |

---

### 2. Income other than from employment or operation of business

None
■

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                SOURCE

B7 (Official Form 7) (04/13)
2

**3. Payments to creditors**

None ■     *Complete a. or b., as appropriate, and c.*

a.   *Individual or joint debtor(s) with primarily consumer debts:* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
| --- | --- | --- | --- |

None ■     b.   *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $6,225*.  If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency.  (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
| --- | --- | --- | --- |

None ■     c.   *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
| --- | --- | --- | --- |

**4.  Suits and administrative proceedings, executions, garnishments and attachments**

None ■     a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
| --- | --- | --- | --- |

None ■     b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

*\* Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

B7 (Official Form 7) (04/13)
3

**5. Repossessions, foreclosures and returns**

None
■

List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

**6. Assignments and receiverships**

None
■

a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
| --- | --- | --- |

None
■

b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- | --- |

**7. Gifts**

None
■

List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
| --- | --- | --- | --- |

**8. Losses**

None
■

List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
| --- | --- | --- |

**9. Payments related to debt counseling or bankruptcy**

None
□

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYER IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |
| **Dana M. Douglas Attorney at Law 11024 Balboa Blvd., No. 431 Granada Hills, CA 91344** | **1/22/2015** | **$5,000.00** |

B7 (Official Form 7) (04/13)
4

| NAME AND ADDRESS<br>OF PAYEE | DATE OF PAYMENT,<br>NAME OF PAYER IF OTHER<br>THAN DEBTOR | AMOUNT OF MONEY<br>OR DESCRIPTION AND VALUE<br>OF PROPERTY |
|---|---|---|
| **Access Counseling, Inc.**<br>**633 Fifth St.**<br>**Los Angeles, CA 90071** | **12/30/2014** | **$15.00** |

---

**10. Other transfers**

None
■
a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE,<br>RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED<br>AND VALUE RECEIVED |
|---|---|---|

None
■
b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER<br>DEVICE | DATE(S) OF<br>TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND<br>VALUE OF PROPERTY OR DEBTOR'S INTEREST<br>IN PROPERTY |
|---|---|---|

---

**11. Closed financial accounts**

None
■
List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR<br>DIGITS OF ACCOUNT NUMBER,<br>AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE<br>OR CLOSING |
|---|---|---|

---

**12. Safe deposit boxes**

None
■
List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK<br>OR OTHER DEPOSITORY | NAMES AND ADDRESSES<br>OF THOSE WITH ACCESS<br>TO BOX OR DEPOSITORY | DESCRIPTION<br>OF CONTENTS | DATE OF TRANSFER OR<br>SURRENDER, IF ANY |
|---|---|---|---|

---

**13. Setoffs**

None
■
List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

---

**14. Property held for another person**

None
■
List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

---

Best Case Bankruptcy

SER 97

B7 (Official Form 7) (04/13)
5

**15. Prior address of debtor**

None
■

If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---------|-----------|--------------------|

---

**16. Spouses and Former Spouses**

None
☐

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME
**Lisa Manrique**

---

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None
■

a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|------------------------|----------------------------------------|----------------|--------------------|

None
■

b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|------------------------|----------------------------------------|----------------|--------------------|

None
■

c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|----------------------------------------|---------------|------------------------|

B7 (Official Form 7) (04/13)
6

### 18 . Nature, location and name of business

None
■

a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|------|------|------|------|------|

None
■

b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
|------|---------|

---

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor, or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement **only** if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

---

### 19. Books, records and financial statements

None
■

a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|------|------|

None
■

b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
|------|---------|------|

None
■

c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

| NAME | ADDRESS |
|------|---------|

None
■

d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

| NAME AND ADDRESS | DATE ISSUED |
|------|------|

B7 (Official Form 7) (04/13)

7

**20. Inventories**

None ■    a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY (Specify cost, market or other basis) |
|---|---|---|

None ■    b. List the name and address of the person having possession of the records of each of the inventories reported in a., above.

| DATE OF INVENTORY | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY RECORDS |
|---|---|

**21 . Current Partners, Officers, Directors and Shareholders**

None ■    a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
|---|---|---|

None ■    b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|

**22 . Former partners, officers, directors and shareholders**

None ■    a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
|---|---|---|

None ■    b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
|---|---|---|

**23 . Withdrawals from a partnership or distributions by a corporation**

None ■    If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**24. Tax Consolidation Group.**

None ■    If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER (EIN) |
|---|---|

SER 100

B7 (Official Form 7) (04/13)
8

**25. Pension Funds.**

None   If the debtor is not an individual, list the name and federal taxpayer-identification number of any pension fund to which the debtor, as an
■      employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

NAME OF PENSION FUND                                                    TAXPAYER IDENTIFICATION NUMBER (EIN)

* * * * * *

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto
and that they are true and correct.

Date  **February  3, 2015**                     Signature

                                                        Anthony Paul Manrique
                                                        Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

Software Copyright (c) 1996-2013 Best Case, LLC - www.bestcase.com                                   Best Case Bankruptcy

SER 101

Form B203 - Disclosure of Compensation of Attorney for Debtor - (1/88)                    1998 USBC, Central District of California

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CA

| In re | Case No.: **6:15-bk-10650-SY** |
|---|---|
| **Anthony Paul Manrique** | |
| Debtor. | **DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR** |

1.  Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | | |
|---|---|---|
| For legal services, I have agreed to accept as a preliminary retainer | $ | 5,000.00 |
| Prior to the filing of this statement I have received | $ | 5,000.00 |
| Balance Due | $ | 0.00 |

2.  The source of the compensation paid to me was:

    ■ Debtor        ☐ Other (specify):

3.  The source of compensation to be paid to me is:

    ■ Debtor        ☐ Other (specify):

4.  ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

    ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
    a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
    b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
    c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
    d.  [Other provisions as needed]
        **Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**

6.  By agreement with the debtor(s), the above-disclosed fee does not include the following services
        **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

| | |
|---|---|
| **February 3, 2015** | *Dana M. Douglas* |
| Date | **Dana M. Douglas** |
| | *Signature of Attorney* |
| | **Dana M. Douglas Attorney at Law** |
| | *Name of Law Firm* |
| | **11024 Balboa Blvd., No. 431** |
| | **Granada Hills, CA 91344** |
| | **818-360-8295  Fax: 213-270-9456** |

February 2006                                                                                          2006 USBC Central District of California

## United States Bankruptcy Court
### Central District of CA

| | | | |
|---|---|---|---|
| In re | **Anthony Paul Manrique** | Case No. | **6:15-bk-10650-SY** |
| | Debtor(s) | Chapter | **11** |

# DEBTOR'S CERTIFICATION OF EMPLOYMENT INCOME
# PURSUANT TO 11 U.S.C. § 521 (a)(1)(B)(iv)

Please fill out the following blank(s) and check the box next to <u>one</u> of the following statements:

I, **Anthony Paul Manrique**, the debtor in this case, declare under penalty of perjury under the laws of the United States of America that:

■   I have attached to this certificate copies of my pay stubs, pay advices and/or other proof of employment income for the 60-day period prior to the date of the filing of my bankruptcy petition.
*(NOTE: the filer is responsible for blacking out the Social Security number on pay stubs prior to filing them.)*

☐   I was self-employed for the entire 60-day period prior to the date of the filing of my bankruptcy petition, and received no payment from any other employer.

☐   I was unemployed for the entire 60-day period prior to the date of the filing of my bankruptcy petition.

I, _____, the debtor in this case, declare under penalty of perjury under the laws of the United States of America that:

☐   I have attached to this certificate copies of my pay stubs, pay advices and/or other proof of employment income for the 60-day period prior to the date of the filing of my bankruptcy petition.
*(NOTE: the filer is responsible for blacking out the Social Security number on pay stubs prior to filing them.)*

☐   I was self-employed for the entire 60-day period prior to the date of the filing of my bankruptcy petition, and received no payment from any other employer.

☐   I was unemployed for the entire 60-day period prior to the date of the filing of my bankruptcy petition.

Date **February 3, 2015**            Signature _____
                                            **Anthony Paul Manrique**
                                            Debtor

SER 103

## Anthony Manrique

**Omnia Italian Design, Inc**

4950 Edison Ave
Chino, CA 91710 909-393-4400

| | | |
|---|---|---|
| Company | Period Begin | Division |
| OID01 | 1/3/2015 | |
| Number | Period End | Branch |
| 2287 | 1/9/2015 | |
| Social Security # | Check Date | Department |
| | 01/07/2015 | 800 |
| Hire Date | Check Number | Team |
| 9/11/2006 | 504220 | |

### Earnings

| Description | Location / Job | Rate | Hours/Pieces | Current | Year To Date |
|---|---|---|---|---|---|
| Salary | | 0:00 | 0:00 | 1279.00 | 2558.00 |
| Memos | | | | | |
| ER Insurance Premi | | | 0:00 | 254.83 | 509.66 |

### Deductions

| Description | Current | Year To Date |
|---|---|---|
| Fed (M/0) (1263.08) | 146.91 | 293.82 |
| OASDI (1263.08) | 78.31 | 156.62 |
| Medicare (1263.08) | 18.31 | 36.62 |
| CA (M/0) (1263.08) | 34.94 | 69.88 |
| CA SDI (1263.08) | 11.37 | 22.74 |
| Section 125 Cancer Insurance | 15.92 | 31.84 |

| | | | | | |
|---|---|---|---|---|---|
| Total Earnings | | | 0:00 | 1279.00 | 2558.00 |
| NET PAY | 973.24 | **Total Direct Deposits** | 0:00 | **Total Deductions** | 305.76 611.52 |
| | | | | **Check Amount** | 973.24 1946.48 |

504220

# Anthony Manrique

**Omnia Italian Design, Inc**

4950 Edison Ave
Chino, CA 91710 909-393-4400

| | |
|---|---|
| Company | OID01 |
| Number | 2287 |
| Social Security # | |
| Hire Date | 9/11/2006 |
| Period Begin | 12/20/2014 |
| Period End | 12/26/2014 |
| Check Date | 1/2/2015 |
| Check Number | 139280 |
| Division | |
| Branch | |
| Department | 800 |
| Team | |

## Earnings

| Description | Location / Job | Rate | Hours/Pieces | Current | Year To Date |
|---|---|---|---|---|---|
| Salary | | 0:00 | 0:00 | 1279.00 | 1279.00 |
| Memos | | | | | |
| ER Insurance Premi | | | 0:00 | 254.83 | 254.83 |

## Deductions

| Description | Current | Year To Date |
|---|---|---|
| Fed (M/0) (1263.08) | 146.91 | 146.91 |
| OASDI (1263.08) | 78.31 | 78.31 |
| Medicare (1263.08) | 18.31 | 18.31 |
| CA (M/0) (1263.08) | 34.94 | 34.94 |
| CA SDI (1263.08) | 11.37 | 11.37 |
| Section 125 Cancer Insurance | 15.92 | 15.92 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total Earnings | | | 0:00 | 1279.00 | 1279.00 | Total Deductions | 305.76 | 305.76 |
| NET PAY | 973.24 | Total Direct Deposits | | 0:00 | Check Amount | 973.24 | 973.24 |

SER 105

# Anthony Manrique

**Omnia Italian Design, Inc**

4950 Edison Ave
Chino, CA 91710 909-393-4400

| | | |
|---|---|---|
| Company | Period Begin | Division |
| OID01 | 12/13/2014 | |
| Number | Period End | Branch |
| 2287 | 12/19/2014 | |
| Social Security # | Check Date | Department |
| | 12/26/2014 | 800 |
| Hire Date | Check Number | Team |
| 9/11/2006 | 139060 | |

## Earnings

| Description | Location / Job | Rate | Hours/Pieces | Current | Year To Date |
|---|---|---|---|---|---|
| Vacation | | | | | 2558.00 |
| Salary | | 0.00 | 0.00 | 1279.00 | 65108.00 |
| Bonus | | | | | 1750.00 |
| Memos | | | | | |
| ER Insurance Premi | | | 0.00 | 254.83 | 1783.81 |

## Deductions

| Description | Current | Year To Date |
|---|---|---|
| Fed (M/0) (1263.08) | 147.64 | 7319.04 |
| OASDI (1263.08) | 78.31 | 4252.42 |
| Medicare (1263.08) | 18.31 | 994.50 |
| CA (M/0) (1263.08) | 35.98 | 1674.28 |
| CA SDI (1263.08) | 12.63 | 685.84 |
| Section 125 Cancer Insurance | 15.92 | 827.84 |

| | | | | | |
|---|---|---|---|---|---|
| **Total Earnings** | | | 0.00 | 1279.00 | 69416.00 |

| Total Deductions | 308.79 | 15753.92 |
|---|---|---|

| **NET PAY** | 970.21 | **Total Direct Deposits** | 0.00 | **Check Amount** | 970.21 | 53662.08 |
|---|---|---|---|---|---|---|

SER 106

**Anthony Manrique**

**Omnia Italian Design, Inc**

4950 Edison Ave
Chino, CA 91710 909-393-4400

| | |
|---|---|
| Company | Period Begin |
| OID01 | 12/6/2014 |
| Number | Period End |
| 2287 | 12/12/2014 |
| Social Security # | Check Date |
| | 12/19/2014 |
| Hire Date | Check Number |
| 9/11/2006 | 138832 |

Division

Branch

Department
800

Team

## Earnings

| Description | Location / Job | Rate | Hours/Pieces | Current | Year To Date |
|---|---|---|---|---|---|
| Vacation | | | | | 2558.00 |
| Salary | | 0.00 | 0.00 | 1279.00 | 63829.00 |
| Bonus | | | | | 1750.00 |
| Memos | | | | | |
| ER Insurance Premi | | | 0.00 | 254.83 | 1528.98 |

## Deductions

| Description | Current | Year To Date |
|---|---|---|
| Fed (M/0) (1263.08) | 147.64 | 7171.40 |
| OASDI (1263.08) | 78.31 | 4174.11 |
| Medicare (1263.08) | 18.31 | 976.19 |
| CA (M/0) (1263.08) | 35.98 | 1638.30 |
| CA SDI (1263.08) | 12.63 | 673.21 |
| Section 125 Cancer Insurance | 15.92 | 811.92 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total Earnings** | | | 0.00 | 1279.00 | 68137.00 | **Total Deductions** | 308.79 | 15445.13 |
| **NET PAY** | 970.21 | **Total Direct Deposits** | | 0.00 | **Check Amount** | 970.21 | 52691.87 |

SER 107

# Anthony Manrique

**Omnia Italian Design, Inc**

4950 Edison Ave
Chino, CA 91710 909-393-4400

| | |
|---|---|
| Company | OID01 |
| Number | 2287 |
| Social Security # | |
| Hire Date | 9/11/2006 |

| | |
|---|---|
| Period Begin | 11/29/2014 |
| Period End | 12/5/2014 |
| Check Date | 12/12/2014 |
| Check Number | 138593 |

| | |
|---|---|
| Division | |
| Branch | |
| Department | 800 |
| Team | |

## Earnings

| Description | Location / Job | Rate | Hours/Pieces | Current | Year To Date |
|---|---|---|---|---|---|
| Vacation | | | | | 2558.00 |
| Salary | | 0.00 | 0.00 | 1279.00 | 62550.00 |
| Bonus | | | | | 1750.00 |
| Memos | | | | | |
| ER Insurance Premi | | | 0.00 | 254.83 | 1274.15 |

## Deductions

| Description | Current | Year To Date |
|---|---|---|
| Fed (M/0) (1263.08) | 147.64 | 7023.76 |
| OASDI (1263.08) | 78.31 | 4095.80 |
| Medicare (1263.08) | 18.31 | 957.88 |
| CA (M/0) (1263.08) | 35.98 | 1602.32 |
| CA SDI (1263.08) | 12.63 | 660.58 |
| Section 125 Cancer Insurance | 15.92 | 796.00 |

| | | | | Current | Year To Date | | Current | Year To Date |
|---|---|---|---|---|---|---|---|---|
| **Total Earnings** | | | 0.00 | 1279.00 | 66858.00 | **Total Deductions** | 308.79 | 15136.34 |
| **NET PAY** | 970.21 | **Total Direct Deposits** | | 0.00 | | **Check Amount** | 970.21 | 51721.66 |

SER 108

**Anthony Manrique**

**Omnia Italian Design, Inc**

4950 Edison Ave
Chino, CA 91710 909-393-4400

| | |
|---|---|
| Company | OID01 |
| Number | 2287 |
| Social Security # | |
| Hire Date | 9/11/2006 |
| Period Begin | 11/22/2014 |
| Period End | 11/28/2014 |
| Check Date | 12/5/2014 |
| Check Number | 138361 |
| Division | |
| Branch | |
| Department | 800 |
| Team | |

## Earnings

| Description | Location / Job | Rate | Hours/Pieces | Current | Year To Date |
|---|---|---|---|---|---|
| Vacation | | | | | 2558.00 |
| Salary | | 0.00 | 0.00 | 1279.00 | 61271.00 |
| Bonus | | | | | 1750.00 |
| Memos | | | | | |
| ER Insurance Premi | | | 0.00 | 254.83 | 1019.32 |

## Deductions

| Description | Current | Year To Date |
|---|---|---|
| Fed (M/0) (1263.08) | 147.64 | 6876.12 |
| OASDI (1263.08) | 78.31 | 4017.49 |
| Medicare (1263.08) | 18.31 | 939.57 |
| CA (M/0) (1263.08) | 35.98 | 1566.34 |
| CA SDI (1263.08) | 12.63 | 647.95 |
| Section 125 Cancer Insurance | 15.92 | 780.08 |

| | | | | Current | Year To Date | | Current | Year To Date |
|---|---|---|---|---|---|---|---|---|
| Total Earnings | | | 0.00 | 1279.00 | 65579.00 | Total Deductions | 308.79 | 14827.55 |
| **NET PAY** | 970.21 | **Total Direct Deposits** | | 0.00 | | **Check Amount** | 970.21 | 50751.45 |

SER 109

# Anthony Manrique

## Omnia Italian Design, Inc

4950 Edison Ave
Chino, CA 91710 909-393-4400

| Company | Period Begin | Division |
|---|---|---|
| OID01 | 11/22/2014 | |
| Number | Period End | Branch |
| 2287 | 11/28/2014 | |
| Social Security # | Check Date | Department |
| | 11/25/2014 | 800 |
| Hire Date | Check Number | Team |
| 9/11/2006 | 504199 | |

## Earnings

| Description | Location / Job | Rate | Hours/Pieces | Current | Year To Date |
|---|---|---|---|---|---|
| Vacation | | | | | 2558.00 |
| Salary | | | | | 59992.00 |
| Bonus | | 0.00 | 0.00 | 750.00 | 1750.00 |
| Memos | | | | | |
| ER Insurance Premi | | | | | 764.49 |

## Deductions

| Description | Current | Year To Date |
|---|---|---|
| Fed (M/0) (750.00) | 0.00 | 6728.48 |
| OASDI (750.00) | 46.50 | 3939.18 |
| Medicare (750.00) | 10.88 | 921.26 |
| CA (M/0) (750.00) | | 1530.36 |
| CA SDI (750.00) | 7.50 | 635.32 |
| Section 125 Cancer Insurance | | 764.16 |

| Total Earnings | | | 0.00 | 750.00 | 64300.00 | Total Deductions | 64.88 | 14518.76 |
|---|---|---|---|---|---|---|---|---|
| **NET PAY** | | 685.12 | **Total Direct Deposits** | | 0.00 | **Check Amount** | 685.12 | 49781.24 |

504199

# Omnia Italian Design, Inc

**Anthony Manrique**

4950 Edison Ave
Chino, CA 91710 909-393-4400

| | |
|---|---|
| Company | OID01 |
| Number | 2287 |
| Social Security # | |
| Hire Date | 9/11/2006 |

| | |
|---|---|
| Period Begin | 11/15/2014 |
| Period End | 11/21/2014 |
| Check Date | 11/28/2014 |
| Check Number | 138133 |

| | |
|---|---|
| Division | |
| Branch | |
| Department | 800 |
| Team | |

## Earnings

| Description | Location / Job | Rate | Hours/Pieces | Current | Year To Date |
|---|---|---|---|---|---|
| Vacation | | | | | 2558.00 |
| Salary | | 0.00 | 0.00 | 1279.00 | 59992.00 |
| Bonus | | | | | 1000.00 |
| Memos | | | | | |
| ER Insurance Premi | | | 0.00 | 254.83 | 764.49 |

## Deductions

| Description | Current | Year To Date |
|---|---|---|
| Fed (M/0) (1263.08) | 147.64 | 6728.48 |
| OASDI (1263.08) | 78.31 | 3892.68 |
| Medicare (1263.08) | 18.31 | 910.38 |
| CA (M/0) (1263.08) | 35.98 | 1530.36 |
| CA SDI (1263.08) | 12.63 | 627.82 |
| Section 125 Cancer Insurance | 15.92 | 764.16 |

| | | | Current | Year To Date | | Current | Year To Date |
|---|---|---|---|---|---|---|---|
| **Total Earnings** | | | 0.00 1279.00 | 63550.00 | **Total Deductions** | 308.79 | 14453.88 |
| **NET PAY** | 970.21 | **Total Direct Deposits** | | 0.00 | **Check Amount** | 970.21 | 49096.12 |

SER 111

# Omnia Italian Design, Inc

4950 Edison Ave
Chino, CA 91710 909-393-4400

**Anthony  Manrique**

| | |
|---|---|
| Company | Period Begin |
| OID01 | 11/8/2014 |
| Number | Period End |
| 2287 | 11/14/2014 |
| Social Security # | Check Date |
| | 11/21/2014 |
| Hire Date | Check Number |
| 9/11/2006 | 137891 |

Division

Branch

Department
800

Team

## Earnings

| Description | Location / Job | Rate | Hours/Pieces | Current | Year To Date |
|---|---|---|---|---|---|
| Vacation | | | | | 2558.00 |
| Salary | | 0.00 | 0.00 | 1279.00 | 58713.00 |
| Bonus | | | | | 1000.00 |
| Memos | | | | | |
| ER Insurance Premi | | | 0.00 | 254.83 | 509.66 |

## Deductions

| Description | Current | Year To Date |
|---|---|---|
| Fed (M/0)  (1263.08) | 147.64 | 6580.84 |
| OASDI (1263.08) | 78.31 | 3814.37 |
| Medicare (1263.08) | 18.31 | 892.07 |
| CA (M/0)  (1263.08) | 35.98 | 1494.38 |
| CA SDI (1263.08) | 12.63 | 615.19 |
| Section 125 Cancer Insurance | 15.92 | 748.24 |

| | Rate | Hours/Pieces | Current | Year To Date | | Current | Year To Date |
|---|---|---|---|---|---|---|---|
| **Total Earnings** | | 0.00 | 1279.00 | 62271.00 | **Total Deductions** | 308.79 | 14145.09 |
| **NET PAY** | 970.21 | **Total Direct Deposits** | 0.00 | **Check Amount** | | 970.21 | 48125.91 |

# Omnia Italian Design, Inc

**Anthony Manrique**

4950 Edison Ave
Chino, CA 91710 909-393-4400

| | | |
|---|---|---|
| Company | Period Begin | Division |
| OID01 | 11/1/2014 | |
| Number | Period End | Branch |
| 2287 | 11/7/2014 | |
| Social Security # | Check Date | Department |
| | 11/14/2014 | 800 |
| Hire Date | Check Number | Team |
| 9/11/2006 | 137655 | |

## Earnings

| Description | Location / Job | Rate | Hours/Pieces | Current | Year To Date |
|---|---|---|---|---|---|
| Vacation | | | | | 2558.00 |
| Salary | | 0.00 | 0.00 | 1279.00 | 57434.00 |
| Bonus | | | | | 1000.00 |
| Memos | | | | | |
| ER Insurance Premi | | | 0.00 | 254.83 | 254.83 |

## Deductions

| Description | Current | Year To Date |
|---|---|---|
| Fed (M/0) (1263.08) | 147.64 | 6433.20 |
| OASDI (1263.08) | 78.31 | 3736.06 |
| Medicare (1263.08) | 18.31 | 873.76 |
| CA (M/0) (1263.08) | 35.98 | 1458.40 |
| CA SDI (1263.08) | 12.63 | 602.56 |
| Section 125 Cancer Insurance | 15.92 | 732.32 |

| | | | Current | Year To Date | | Current | Year To Date |
|---|---|---|---|---|---|---|---|
| **Total Earnings** | | | 0.00 / 1279.00 | 60992.00 | **Total Deductions** | 308.79 | 13836.30 |
| **NET PAY** | 970.21 | **Total Direct Deposits** | | 0.00 | **Check Amount** | 970.21 | 47155.70 |

SER 113

B22B (Official Form 22B) (Chapter 11) (12/10)

In re **Anthony Paul Manrique**
_____
Debtor(s)

Case Number: **6:15-bk-10650-SY**
_____
(If known)

# CHAPTER 11 STATEMENT OF CURRENT MONTHLY INCOME

In addition to Schedules I and J, this statement must be completed by every individual Chapter 11 debtor, whether or not filing jointly. Joint debtors may complete one statement only.

| | Part I. CALCULATION OF CURRENT MONTHLY INCOME | | | Column A<br>Debtor's Income | Column B<br>Spouse's Income |
|---|---|---|---|---|---|
| 1 | **Marital/filing status.** Check the box that applies and complete the balance of this part of this statement as directed.<br>a. ☐ Unmarried. **Complete only Column A ("Debtor's Income") for Lines 2-10.**<br>b. ■ Married, not filing jointly. **Complete only column A ("Debtor's Income") for Lines 2-10.**<br>c. ☐ Married, filing jointly. **Complete both Column A ("Debtor's Income") and Column B ("Spouse's Income") for Lines 2-10.** | | | | |
| | All figures must reflect average monthly income received from all sources, derived during the six calendar months prior to filing the bankruptcy case, ending on the last day of the month before the filing. If the amount of monthly income varied during the six months, you must divide the six-month total by six, and enter the result on the appropriate line. | | | | |
| 2 | **Gross wages, salary, tips, bonuses, overtime, commissions.** | | | $ 5,115.00 | $ 0.00 |
| 3 | **Net income from the operation of a business, profession, or farm.** Subtract Line b from Line a and enter the difference in the appropriate column(s) of Line 3. If more than one business profession or farm, enter aggregate numbers and provide details on an attachment. Do not enter a number less than zero.<br><table><tr><td></td><td></td><td>Debtor</td><td>Spouse</td></tr><tr><td>a.</td><td>Gross receipts</td><td>$ 0.00</td><td>$ 0.00</td></tr><tr><td>b.</td><td>Ordinary and necessary business expenses</td><td>$ 0.00</td><td>$ 0.00</td></tr><tr><td>c.</td><td>Business income</td><td colspan="2">Subtract Line b from Line a</td></tr></table> | | | $ 0.00 | $ 0.00 |
| 4 | **Net Rental and other real property income.** Subtract Line b from Line a and enter the difference in the appropriate column(s) of Line 4. Do not enter a number less than zero.<br><table><tr><td></td><td></td><td>Debtor</td><td>Spouse</td></tr><tr><td>a.</td><td>Gross receipts</td><td>$ 0.00</td><td>$ 0.00</td></tr><tr><td>b.</td><td>Ordinary and necessary operating expenses</td><td>$ 0.00</td><td>$ 0.00</td></tr><tr><td>c.</td><td>Rent and other real property income</td><td colspan="2">Subtract Line b from Line a</td></tr></table> | | | $ 0.00 | $ 0.00 |
| 5 | **Interest, dividends, and royalties.** | | | $ 0.00 | $ 0.00 |
| 6 | **Pension and retirement income.** | | | $ 0.00 | $ 0.00 |
| 7 | **Any amounts paid by another person or entity, on a regular basis, for the household expenses of the debtor or the debtor's dependents, including child support paid for that purpose.** Do not include alimony or separate maintenance payments or amounts paid by the debtor's spouse if Column B is completed. Each regular payment should be reported in only one column; if a payment is listed in Column A, do not report that payment in Column B. | | | $ 0.00 | $ 0.00 |
| 8 | **Unemployment compensation.** Enter the amount in the appropriate column(s) of Line 8. However, if you contend that unemployment compensation received by you or your spouse was a benefit under the Social Security Act, do not list the amount of such compensation in Column A or B, but instead state the amount in the space below:<br>Unemployment compensation claimed to be a benefit under the Social Security Act Debtor $ 0.00 Spouse $ 0.00 | | | $ 0.00 | $ 0.00 |
| 9 | **Income from all other sources.** Specify source and amount. If necessary, list additional sources on a separate page. Total and enter on Line 9. **Do not include alimony or separate maintenance payments paid by your spouse if Column B is completed, but include all other payments of alimony or separate maintenance. Do not include** any benefits received under the Social Security Act or payments received as a victim of a war crime, crime against humanity, or as a victim of international or domestic terrorism.<br><table><tr><td></td><td></td><td>Debtor</td><td>Spouse</td></tr><tr><td>a.</td><td></td><td>$</td><td>$</td></tr><tr><td>b.</td><td></td><td>$</td><td>$</td></tr></table> | | | $ 0.00 | $ 0.00 |
| 10 | **Subtotal of current monthly income.** Add lines 2 thru 9 in Column A, and, if Column B is completed, add Lines 2 thru 9 in Column B. Enter the total(s). | | | $ 5,115.00 | $ 0.00 |

SER 114

B22B (Official Form 22B) (Chapter 11) (12/10)                                                    2

| 11 | **Total current monthly income.** If Column B has been completed, add Line 10, Column A to Line 10, Column B, and enter the total. If Column B has not been completed, enter the amount from Line 10, Column A. | $ | **5,115.00** |

| | **Part II. VERIFICATION** |

| 12 | I declare under penalty of perjury that the information provided in this statement is true and correct. *(If this is a joint case, both debtors must sign.)* <br><br> Date: **February 3, 2015**      Signature: _Anthony Paul Manrique_ <br>                                         **Anthony Paul Manrique** <br>                                                 (Debtor) |

SER 115

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| **Dana M. Douglas**<br>**Dana M. Douglas Attorney at Law**<br>**11024 Balboa Blvd., No. 431**<br>**Granada Hills, CA 91344**<br>**818-360-8295 Fax: 213-270-9456**<br>**SBN 220053**<br>☒ *Attorney for Debtor(s):* | |

| UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CA | |
|---|---|
| In re:<br>    **Anthony Paul Manrique**<br>                                      Debtor(s). | CASE NO.:<br>CHAPTER: **11**<br>ADV. NO.: |

## ELECTRONIC FILING DECLARATION
### (INDIVIDUAL)

### PART I - DECLARATION OF DEBTOR(S) OR OTHER PARTY

|  | | Date Filed: |  |
|---|---|---|---|
| ☐ | Petition, statement of affairs, schedules or lists | Date Filed: | |
| ☐ | Amendments to the petition, statement of affairs, schedules or lists | Date Filed: | |
| ☐ | Other: | Date Filed: | |

I (We), the undersigned Debtor(s) or other party on whose behalf the above-referenced document is being filed (Signing Party), hereby declare under penalty of perjury that: (1) I have read and understand the above-referenced document being filed electronically (Filed Document); (2) the information provided in the Filed Document is true, correct and complete; (3) the "/s/," followed by my name, on the signature line(s) for the Signing Party in the Filed Document serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature line(s); (4) I have actually signed a true and correct hard copy of the Filed Document in such places and provided the executed hard copy of the Filed Document to my attorney; and (5) I have authorized my attorney to file the electronic version of the Filed Document and this *Declaration* with the United States Bankruptcy Court for the Central District of California. If the Filed Document is a petition, I further declare under penalty of perjury that I have completed and signed a *Statement of Social Security Number(s)* (Form B21) and provided the executed original to my attorney.

Signature of Signing Party                          Date    2/3/2015
**Anthony Paul Manrique**
*Printed Name of Signing Party*

### PART II - DECLARATION OF ATTORNEY FOR SIGNING PARTY

    I, the undersigned Attorney for the Signing Party, hereby declare under penalty of perjury that: (1) the "/s/," followed by my name, on the signature lines for the Attorney for the Signing Party in the Filed Document serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature lines; (2) the Signing Party signed the *Declaration of Debtor(s)* or *Other Party* before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; (3) I have actually signed a true and correct hard copy of the Filed Document in the locations that are indicated by "/s/," followed by my name, and have obtained the signature(s) of the Signing Party in the locations that are indicated by "/s/," followed by the Signing Party's name, on the true and correct hard copy of the Filed Document; (4) I shall maintain the executed originals of this *Declaration*, the *Declaration of Debtor(s)* or *Other Party*, and the Filed Document for a period of five years after the closing of the case in which they are filed; and (5) I shall make the executed originals of this *Declaration*, the *Declaration of Debtor(s)* or *Other Party*, and the Filed Document available for review upon request of the Court or other parties. If the Filed Document is a petition, I further declare under penalty of perjury that: (1) the Signing Party completed and signed the *Statement of Social Security Number(s)* (Form B21) before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; (2) I shall maintain the executed original of the *Statement of Social Security Number(s)* (Form B21) for a period of five years after the closing of the case in which they are filed; and (3) I shall make the executed original of the *Statement of Social Security Number(s)* (Form B21) available for review upon request of the Court.

Signature of Attorney for Signing Party           **2/3/2015**
**Dana M. Douglas**                          Date
*Printed Name of Attorney for Signing Party*

SER 116

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 11024 Balboa Blvd., No. 431, Granada Hills, CA 91344.

A true and correct copy of the foregoing document entitled (*specify*):  SUMMARY OF SCHEDULES; STATISTICAL SUMMARY OF CERTAIN LIABILITIES; SCHEDULES A - J; DECLARATION CONCERNING DEBTOR'S SCHEDULES; STATEMENT OF FINANCIAL AFFAIRS; COMPENSATION STATEMENT OF ATTORNEY; DEBTOR CERTIFICATION OF EMPLOYMENT INCOME & PAYSTUBS; STATEMENT OF CURRENT MONTHLY INCOME; ELECTRONIC FILING DECLARATION   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 2/3/2015 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Dana M Douglas     dmddouglas@hotmail.com
- Abram Feuerstein     abram.s.feuerstein@usdoj.gov
- United States Trustee (RS)     ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*)  ### , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  ### , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/3/2015 | DM Douglas | /s/ DM Douglas |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**
SER·117

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | Central District of California | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor: Anthony Paul Manrique aka Anthony Manrique | Case Number: 6:15-bk-10650-SY |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

U.S. Bank National Association, as Trustee for LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N

**COURT USE ONLY**

Name and address where notices should be sent:

Nationstar Mortgage LLC
PO Box 619096
Dallas TX 75261   9741

Telephone number:     email:
(877) 343-5602

❏ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
    (*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):

Nationstar Mortgage LLC
PO Box 619094
Dallas TX 75261   9741

Telephone number:     email:
(877) 343-5602

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**     $   492,647.50

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**   MONEY LOANED
    (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** __ __ __ ******3989 | **3a. Debtor may have scheduled account as:** _____ (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ (See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑Real Estate  ❏Motor Vehicle  ❏Other
**Describe:**  718 Silverwood Avenue, Upland, California 91786

**Value of Property:** $_____

**Annual Interest Rate** 2.750 % ❏Fixed  or  ☑Variable
**(when case was filed)**

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$   45,117.94

**Basis for perfection:**   Mortgage/Deed of Trust

**Amount of Secured Claim:** $   492,647.50

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❏ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❏ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**

$_____

*\*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

SER 118

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A).  If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached.  If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:**  (See instruction #8)

Check the appropriate box.

☐ I am the creditor.      ☑ I am the creditor's authorized agent.      ☐ I am the trustee, or the debtor,      ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                                              or their authorized agent.      (See Bankruptcy Rule 3005.)
                                                                              (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Matthew R. Clark (CA SBN 271054)
Title:       ATTORNEY
Company:     PITE DUNCAN, LLP                                              _____            02/11/2015
Address and telephone number (if different from notice address above):    (Signature)                  (Date)
  4375 Jutland Drive, Suite 200
  P.O. Box 17933
  San Diego, CA 92177-0933
Telephone number: (858) 750-7600    email: mclark@piteduncan.com
*Penalty for presenting fraudulent claim:  Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.*

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law.  In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case.  A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred.  Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.  If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured.  (See Definitions.)  If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority.  (See Definitions.)  A claim may be partly priority and partly non-priority.  For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. FRBP 3001(c) and (d).  If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it.  FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief.  Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration.  Print the name and title, if any, of the creditor or other person authorized to file this claim.  State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

_____DEFINITIONS_____             _____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

B 10A (Attachment A) (12/11)
## Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.** See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| **Name of debtor:** | Anthony Paul Manrique aka Anthony Manrique | **Case number:** | 6:15-bk-10650-SY |
| **Name of creditor:** | U.S. Bank National Association, as Trustee for LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N | **Last four digits** of any number you use to identify the debtor's account | ******3989 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

**Itemize the principal and interest due on the claim as of the petition date** (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. **Principal due**      (1)   $ 446,127.09

2. **Interest due**

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 7.125 % | 5/1/2012 | 7/31/2012 | $7,946.64 |
| 3.375 % | 8/1/2012 | 7/31/2013 | $15,056.79 |
| 3 % | 8/1/2013 | 7/31/2014 | $13,383.81 |
| 2.75 % | 8/1/2014 | 1/26/2015 | $5,985.79 |
| **Total interest due as of the petition date** | | | $42,373.03 |

Copy total here ▶   (2)   $42,373.03

3. **Total principal and interest due**     (3)   $488,500.12

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

**Itemize the fees, expenses, and charges due on the claim as of the petition date** (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. **Late charges** | | (1) | $ 0.00 |
| 2. **Non-sufficient funds (NSF) fees** | | (2) | $ 0.00 |
| 3. **Attorney's fees** | 9/11/14 | (3) | $ 500.00 |
| 4. **Filing fees and court costs** | | (4) | $ 0.00 |
| 5. **Advertisement costs** | | (5) | $ 0.00 |
| 6. **Sheriff/auctioneer fees** | | (6) | $ 0.00 |
| 7. **Title costs** | 7/8/14, 9/22/14 | (7) | $ 1,993.00 |
| 8. **Recording fees** | 9/11/14 | (8) | $ 92.20 |
| 9. **Appraisal/broker's price opinion fees** | | (9) | $ 0.00 |
| 10. **Property inspection fees** | 4/9/14, 5/5/14, 6/2/14, 7/23/14, 9/10/14, 10/8/14, 11/26/14, 12/24/14, 1/14/15 | (10) | $ 150.00 |
| 11. **Tax advances (non-escrow)** | | (11) | $ 0.00 |
| 12. **Insurance advances (non-escrow)** | | (12) | $ 0.00 |
| 13. **Escrow shortage or deficiency** (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $ 1,747.00 |
| 14. **Property preservation expenses. Specify:** | | (14) | $ 0.00 |
| 15. **Other. Specify:** Postpetition Bankruptcy Attorney's Fees | 2/6/15 | (15) | $ 750.00 |
| 16. **Other. Specify:** Mailing Costs | 9/17/14 | (16) | $ 13.16 |
| 17. **Other. Specify:** | | (17) | $ 0.00 |
| 18. **Total prepetition fees, expenses, and charges. Add all of the amounts listed above.** | | (18) | $5,245.36 |

SER 121

B 10 (Attachment A) (12/11)                                                   Page 2



## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☐ No

☒ Yes   Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1. | **Installment payments due** | Date last payment received by creditor | | | 5/11/2012 | | | |
| | | Number of installment payments due | | | (1) 32 | | | |
| 2. | **Amount of installment payments due** | 2 installments | From 6/1/2012 | To 7/1/2012 | @ | $2,648.88 | = | $5,297.76 |
| | | 12 installments | From 8/1/2012 | To 7/1/2013 | @ | $1,254.73 | = | $15,056.76 |
| | | 12 installments | From 8/1/2013 | To 7/1/2014 | @ | $1,115.32 | = | $13,383.84 |
| | | 6 installments | From 8/1/2014 | To 1/1/2015 | @ | $1,022.37 | = | $6,134.22 |

| | | |
|---|---|---|
| **Total installment payments due as of the petition date** | **$39,872.58** | Copy total here ▶ (2) $39,872.58 |

| | | |
|---|---|---|
| 3. | **Calculation of cure amount** | **Add** total prepetition fees, expenses, and charges |

Copy total from Part 2 here ▶  + $5,245.36

**Subtract** total of unapplied funds (funds received but not credited to account)   - $0.00

**Subtract** amounts for which debtor is entitled to a refund   - $0.00

**Total amount necessary to cure default as of the petition date**   (3) $45,117.94

Copy total onto Item 4 of Proof of Claim form

Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.

SER 122

**Steven W. Pite** *CA/NV/WA*
**David E. McAllister**
*AZ/CA/HI/OR/UT/WA*
**Casper J. Rankin**
*AZ/CA/OR/ID/WA*
**Eddie R. Jimenez** *CA/NV/TX*
**Christopher McDermott** *CA*

**Josephine E. Salmon**
*AK/AZ/CA/NY*
**Gagan G. Vaideeswaran** *CA*
**Megan E. Lees** *CA*

**Joseph C. Delmotte** *CA*
**Bryan S. Fairman** *CA*
**Anh P. Nguyen** *TX*
**Philip Giles** *AZ/CA*
**Ace C. Van Patten** *ID/NV*

**Jesse Baker** *OR/UT/WA*
**Todd Garan** *CA*
**Matthew R. Clark, III**
*CA/NY*
**Arnold L. Graff** *CA/UT/WI*

**Robert P. Zahradka** *CA*
**Greg P. Campbell** *CA*
**Gina J. Kim** *CA*
**Justin S. Moyer** *CA*
**Drew A. Callahan** *CA*
**Jonathan C. Cahill** *CA*

## PROOF OF CLAIM DISCLOSURES

### IN RE: **MANRIQUE, ANTHONY PAUL AKA ANTHONY MANRIQUE**
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

CASE NO. 6:15-bk-10650-SY

CREDITOR:  U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N

| First Post Petition Payment | Principal & Interest | Escrow | Total |
|---|---|---|---|
| 2/1/2015 | $1,115.32 | $280.49 | $1,395.81 |

1. The amount of the post-petition payments is subject to change per the terms of the Note and Deed of Trust/Mortgage.
2. This Proof of Claim shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004 notwithstanding Pite Duncan, LLP's participation in this proceeding. Moreover, the within party does not authorize Pite Duncan, LLP, either expressly or impliedly through Pite Duncan, LLP's participation in this proceeding, to act as its agent for purpose of service under Fed. R. Bankr. P. 7004.
3. Please be on notice that the Post-Petition Attorneys' Fees and Costs listed in Part 2 of the Mortgage Proof of Claim Attachment include the post-petition preparation and filing of this Proof of Claim; obtaining and reviewing the Chapter 11 Plan; and the preparation, filing and service of a Request for Courtesy Notice to monitor this bankruptcy. These post-petition fees are included in the Proof of Claim so that the subject loan is current upon completion of the Plan. If the Debtor(s) object to these fees being included in the Proof of Claim, please contact Steven Pite at (858)-750-7600 in order to have these fees and costs removed from the Proof of Claim.

# Annual Escrow Account
# Disclosure Statement

2501 S State Hwy 121 Business
Suite 100
Lewisville, Texas 75067

2/6/2015

| Loan Number | |
|---|---|
| Analysis Date | February 5, 2015 |
| **Previous Payment** | |
| Principal & Interest | $ 1,115.32 |
| Escrow | $ 295.77 |
| **Total** | $ 1,411.09 |
| **New Payment** | |
| Effective Date | February 1, 2015 |
| Principal & Interest | $ 1,115.32 |
| Escrow | $ 280.49 |
| **Total** | **$ 1,395.81** |

ANTHONY PAUL MANRIQUE
ALISA ARLENE MANRIQUE

718 SILVERWOOD AVE
UPLAND, CA 91786

The purpose of the Coming Year Escrow Projection is to determine the lowest balance "Low Point" to which your escrow account will decline over the upcoming year. The purpose of the Low Balance Summary is to compare the projected and allowable low point amounts. If the projected low point is greater than the allowable low point, there is a surplus. If the projected low point is less than the allowable low point, there is a shortage and/or deficiency which will be recovered by an adjustment to your monthly payment over a designated number of months. The adjustment amount(s) appears in the Low Balance Summary and New Payment information.

**Our records indicate that you have filed a bankruptcy.** This statement is sent for informational purposes only and is not an attempt to collect a debt. It does not alter or affect the terms of your bankruptcy proceedings. Please disregard the payment information if it conflicts with any order or requirement of the court.

If you filed a Chapter 13, any unpaid amounts prior to the filing of your bankruptcy petition may be paid through in and in accordance with your bankruptcy plan. If you are a Chapter 13 debtor whose plan requires you to make regular post petition payments directly to the Chapter 13 trustee, any payment should be remitted to the trustee directly and not to Nationstar Mortgage LLC.

| Escrow Accounts Summary | |
|---|---|
| Tax | $ 2,756.92 |
| Insurance | $ 609.00 |
| Lender-Placed Insurance | $ - |
| Mortgage Insurance | $ - |
| **Annual Total** | **$ 3,365.92** |
| **Approximate Monthly Deposit** | **$ 280.49** |
| **Monthly Deposit Without Mortgage Insurance** | **$ 280.49** |
| **RESPA Cushion (About Two Monthly Deposits)\*** | **$ 560.99** |

| Escrow Included in Proof of Claims | |
|---|---|
| Bankruptcy Filing Date | January 26, 2015 |
| Total Escrow Funds Advanced by Your Servicer at Filing Date | $ 649.02 |
| **Plus** Balance Required at Filing to Maintain RESPA Minimum | 1,097.98 |
| **Minus** Escrow Account Balance at Filing Date | $ - |
| **Total Shortage at Filing Date** | **$ 1,747.00** |

This column shows your new monthly escrow deposits over the next escrow cycle.

These columns show when each of your escrow accounts is expected to be paid during the next escrow cycle.

This column shows what your escrow balance would be without any additional funds.

This column shows the calculation of the amount of funds needed to maintain your RESPA cushion\* through the next escrow cycle.

## Escrow Balance Projection

| Month | Escrow Payment | Tax Disbursements | Insurance Disbursements | LPI Disbursements | Mortgage Insurance Disbursements | Balance | Required Balance |
|---|---|---|---|---|---|---|---|
| | | | | | Beginning Balance | $ - | 1,097.98 |
| Feb 2015 | $ 280.49 | $ - | $ - | $ - | $ - | $ 280.49 | $ 1,378.47 |
| Mar 2015 | $ 280.49 | $ - | $ - | $ - | $ - | $ 560.98 | $ 1,658.96 |
| Apr 2015 | $ 280.49 | 1,378.46 | $ - | $ - | $ - | $ (536.99) | $ 560.99 \* |
| May 2015 | $ 280.49 | $ - | $ - | $ - | $ - | $ (256.50) | $ 841.48 |
| Jun 2015 | $ 280.49 | $ - | $ - | $ - | $ - | 23.99 | $ 1,121.97 |
| Jul 2015 | $ 280.49 | $ - | $ - | $ - | $ - | 304.48 | $ 1,402.46 |
| Aug 2015 | $ 280.49 | $ - | $ - | $ - | $ - | 584.97 | $ 1,682.95 |
| Sep 2015 | $ 280.49 | $ - | $ - | $ - | $ - | 865.46 | $ 1,963.44 |
| Oct 2015 | $ 280.49 | $ - | $ - | $ - | $ - | 1,145.95 | $ 2,243.93 |
| Nov 2015 | $ 280.49 | $ - | 609.00 | $ - | $ - | 817.44 | $ 1,915.42 |
| Dec 2015 | $ 280.49 | 1,378.46 | $ - | $ - | $ - | $ (280.53) | $ 817.45 |
| Jan 2016 | $ 280.49 | $ - | $ - | $ - | $ - | $ (0.04) | $ 1,097.94 |
| Totals | 3,365.88 | $ 2,756.92 | 609.00 | $ - | $ - | | |
| | | | | Balance Required at Filing to Maintain RESPA Cushion\* | | | $ 1,097.98 |

\* - The cushion allowed by federal law (RESPA) is two times your monthly escrow payment excluding any mortgage insurance payments, unless your state's laws specify a lower amount. The highlighted value in the Required Balance column indicates where the RESPA cushion limit is set--this is lowest balance your Escrow account will reach during the next escrow cycle and all of the other values in the column are based on it.

SER 124

2501 S State Hwy 121 Business
Suite 100
Lewisville, Texas 75067

# Annual Escrow Account
# Disclosure Statement

2/6/2015

| | | Escrow Account Transactions Prior to Bankruptcy Filing | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| 4/4/2014 | Escrow Advance Recovery | $ - | $ - | $ (649.02) | $ - | $ 649.02 | $ 649.02 |
| 4/4/2014 | Escrow Debit Adj. | $ - | $ - | $ - | $ 649.02 | $ - | $ 649.02 |
| 10/28/2014 | Escrow Advance - Insurance | $ 609.00 | $ - | $ - | $ - | $ 609.00 | $ 1,258.02 |
| 10/28/2014 | Hazard Insurance Disbursed | $ - | $ - | $ - | $ 609.00 | $ - | $ 1,258.02 |
| 1/5/2015 | Hazard Insurance Deposit | $ - | $ - | $ - | $ (609.00) | $ 609.00 | $ 1,258.02 |
| 1/5/2015 | Escrow Advance Recovery | $ - | $ - | $ 609.00 | $ - | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | Subtotals | $ 609.00 | $ - | $ (40.02) | $ 649.02 | $ - | $ 649.02 |

SER 125

2501 S State Hwy 121 Business
Suite 100
Lewisville, Texas 75067

# Annual Escrow Account
# Disclosure Statement

2/6/2015

| | | Escrow Account Transactions Prior to Bankruptcy Filing | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| Subtotals | | $ 609.00 | $ - | $ (40.02) | $ 649.02 | $ - | $ 649.02 |

SER 126

2501 S State Hwy 121 Business
Suite 100
Lewisville, Texas 75067

# Annual Escrow Account
# Disclosure Statement

2/6/2015

| | | | Escrow Account Transactions Prior to Bankruptcy Filing | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| Totals | $ 609.00 | $ - | $ - | (40.02) | $ 649.02 | $ - | $ 649.02 |

SER 127

2501 S State Hwy 121 Business
Suite 100
Lewisville, Texas 75067

# Annual Escrow Account Disclosure Statement

2/6/2015

| | | | Escrow Account Transactions Prior to Bankruptcy Filing | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | Totals $ 609.00 | $ - | $ (40.02) | $ 649.02 | $ - | $ 649.02 |

SER 128

Prepared by: VERONICA RIOS

LOAN ████

# PAYMENT ADVANTAGE
## FIXED/ADJUSTABLE RATE NOTE
### (LIBOR One Year Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. FOR A LIMITED TIME I WILL HAVE A PAYMENT OPTION THAT IS LESS THAN THE FULL AMOUNT OF INTEREST DUE. IF I CHOOSE THIS OPTION, THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED.**
**THIS NOTE CONTAINS A PREPAYMENT PENALTY.**

| | | |
|---|---|---|
| JUNE 27, 2007 | EL CAJON | CALIFORNIA |
| [Date] | [City] | [State] |

718 SILVERWOOD AVENUE, UPLAND, CA 91786-4353
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 388,000.00 ("Principal"), plus interest, to the order of Lender. The Principal may increase as provided under the terms of this Note but will not exceed 115 percent of the Principal amount I originally borrowed. This is called the "Maximum Negative Amortization Cap." If I default under this Note or the Security Instrument, then default charges may cause the Maximum Negative Amortization Cap to be exceeded. Lender is Countrywide Home Loans, Inc. dba America's Wholesale Lender .
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or its successors or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Fixed Interest Rate

Interest will be charged on unpaid Principal until the full amount has been paid. Interest will initially accrue at a yearly rate of 7.125 %. This is my initial fixed interest rate and is the rate for determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

### (B) Adjustable Interest Rate

The initial fixed interest rate I owe will change to an adjustable interest rate on the first day of JULY, 2012 and the adjustable interest rate will change on that day every 12ᵗʰ month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

### (C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Rate Change Date is called the "Current Index."

---



LOAN #

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Adjustable Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new adjustable interest rate by adding      2.250 % (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new adjustable interest rate until the next Interest Rate Change Date. My adjustable interest rate will never be greater than      12.125 % or lower than the Margin.

### (E) Limits on Interest Rate Changes

The interest rate in effect at the first Interest Rate Change Date will not be greater than      12.125 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Interest Rate Change Date by more than 2 percentage points from the rate of interest in effect for the preceding 12 months.

## 3.  PAYMENTS

### (A)  Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first          day of each month beginning on AUGUST 01, 2007          . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If I still owe amounts under this Note on JULY 01, 2037          , I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

### (B)  Minimum Payment

The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. The Minimum Payment is calculated three (3) different ways during the loan term:

(i)   Until JULY 01, 2017          ("Recast Date") or until the Maximum Negative Amortization Cap is reached, whichever is earlier, the Minimum Payment will be calculated using the then-current interest rate (either fixed or adjustable as described in Section 2) minus      5.000 percentage points. The result of this calculation is called the "Minimum Payment Rate." The Minimum Payment Rate can never be lower than 1%. Since the Minimum Payment Rate is less than the interest rate applied to my unpaid Principal balance, the Minimum Payment will be insufficient to pay the interest portion of the monthly payment and no portion is applied to Principal. **When I make a Minimum Payment, which is based on the Minimum Payment Rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."**

(ii)   If the unpaid Principal balance reaches the Maximum Negative Amortization Cap prior to the Recast Date, my new Minimum Payment will be the amount that would pay only the interest portion of the monthly payment based upon the then-current interest rate, which changes in accordance with Section 2. This is the Minimum Payment in effect until the Recast Date.

(iii)   After the Recast Date and for the remainder of the loan term, the Minimum Payment will be the monthly payment amount necessary to pay the loan off, in full, at the Maturity Date in substantially equal payments based on the then-current interest rate, which changes in accordance with Section 2.

### (C)  Initial Monthly Minimum Payment

Each of my initial monthly Minimum Payments until the first Interest Rate Change Date will be in the amount of U.S. $1,458.50          .

### (D)  Monthly Payment Changes

Changes in my monthly payment will be the result of changes in the unpaid Principal balance of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 2 and 3 of this Note.

SER 130

LOAN #

**(E)   Additions to My Unpaid Principal**

For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

**(F)   Payment Options**

Until the Recast Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") if they are **greater** than the Minimum Payment. The Payment Options are calculated using the interest rate in accordance with Section 2. The following Payment Options may be provided:

(i)   **Interest Only Payment:** the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)   **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii)   **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are **greater** than the Minimum Payment. If the Maximum Negative Amortization Cap is reached, then the Payment Options available will be the Amortized Payment and the 15 Year Amortized Payment. Upon the Recast Date I will no longer have Payment Options and I will be required to pay the Amortized Payment, which becomes the Minimum Payment as described in Section 3(B)(iii).

**4.   NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction that could result from my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000 % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

**(B)   Default**

If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

SER 131

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees. If I default under this Note or the Security Instrument then default charges may cause the Maximum Negative Amortization Cap to be exceeded.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. DOCUMENT CORRECTION**

In the event that Note Holder at any time discovers that this Note, Security Instrument, Addenda, Rider or any other document related to this loan is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan, or otherwise contains an error, such as a clerical mistake, calculation error, computer error, printing error, electronic transmission error, or similar error, I agree, upon notice from Note Holder, to re-execute any documents that are necessary to replace or correct any such documents and return them within ten (10) days of receipt. I also agree that I will not hold Lender responsible for any damages which result from any such error.

**12. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests

LOAN #: ▓▓▓▓▓▓▓

transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B)** When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument described in Section 12(A) above shall then cease to be in effect, and Paragraph 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
ANTHONY PAUL MANRIQUE                                            - Borrower

_____
ALISA ARLENE MANRIQUE                                            - Borrower

_____
                                                                - Borrower

_____
                                                                - Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC., A NEW YORK CORPORATION
DOING BUSINESS AS AMERICA'S WHOLESALE LENDER

BY: _____
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

Prepared by: VERONICA RIOS

**Countrywide Home Loans, Inc. dba America's Wholesale Lender**

DATE:        06/27/2007
BORROWER: ANTHONY PAUL MANRIQUE
CASE #:
LOAN #:        ███████████
PROPERTY ADDRESS: 718 SILVERWOOD AVENUE
                 UPLAND, CA 91786-4353

```
Branch #██████████
1455 FRAZEE ROAD #102
SAN DIEGO, CA 92108
Phone: (619)688-5100
Br Fax No.: (619)688-9258
```

# PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated   JUNE 27, 2007          , and is incorporated into and amends and supplements the Note of the same date (the "Note") given by me to
Countrywide Home Loans, Inc. dba America's Wholesale Lender
(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "Borrower's Right to Prepay" is replaced with the following new section:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note.

**My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.**

● Multistate Prepayment Penalty Addendum
1E296-XX (09/06)(d/l)                              Page 1 of 2

LOA [redacted]

If within the first **TWELVE** months after the execution of this Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original Principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeds twenty (20) percent of the original Principal amount of this Note. Interest will be calculated using the rate in effect at the time of prepayment.

All other terms and conditions of the above referenced Note remain in full force and effect.

_Anthony Paul Gray_ _____  Borrower
ANTHONY PAUL MANRIQUE

_Alisa Arlene Manrique_ _____  Borrower
ALISA ARLENE MANRIQUE

_____  Borrower

_____  Borrower

SER 135



Recorded in Official Records, County of San Bernardino

**LARRY WALKER**
Auditor/Controller = Recorder

7/06/2007
8:00 AM
BN

602 Southland Title of San Diego

RECORDING REQUESTED BY:
SOUTHLAND TITLE OF SAN DIEGO

Recording Requested By:
J. FOX

Doc#:

| Titles: | 1 | Pages: | 22 |
|---|---|---|---|
| Fees | | | 73.00 |
| Taxes | | | 0.00 |
| Other | | | 0.00 |
| PAID | | | $73.00 |

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
VERONICA RIOS

USB2

—————————— [Space Above This Line For Recording Data] ——————————

[Escrow/Closing #]                    [Doc ID #]

# DEED OF TRUST

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   JUNE 27, 2007             , together with all Riders to this document.
**(B) "Borrower"** is
ANTHONY PAUL MANRIQUE, AND ALISA ARLENE MANRIQUE, HUSBAND AND WIFE AS
JOINT TENANTS

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

VMP® -6A(CA) (0207)   CHL (08/05)(d)   VMP Mortgage Solutions, Inc        Form 3005  1/01
CONV/VA

SER 136

DOC ID #: ██████████████

Borrower's address is
718 SILVERWOOD AVENUE, UPLAND, CA 91786-4353
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
Countrywide Home Loans, Inc. dba America's Wholesale Lender
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
**(D) "Trustee"** is
ReconTrust Company, N.A
225 West Hillcrest Dr., MSN TO-02, Thousand Oaks, CA 91360
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. ██████████
**(F) "Note"** means the promissory note signed by Borrower and dated JUNE 27, 2007 . The Note states that Borrower owes Lender
THREE HUNDRED EIGHTY EIGHT THOUSAND and 00/100

Dollars (U.S. $ 388,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JULY 01, 2037 .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

DOC ID #: ▮▮▮▮▮▮▮▮

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|           COUNTY            |         of          |        SAN BERNARDINO        | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

LOT(S) 3 OF TRACT NO. 6654, IN THE CITY OF UPLAND, COUNTY SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 84 PAGE(S) 90 AND 91, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Parcel ID Number ▮▮▮▮▮▮▮▮▮   which currently has the address of
718 SILVERWOOD AVENUE, UPLAND
[Street/City]
California 91786-4353 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

SER 138

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

DOC I█

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

SER 140

DOC ID ▮▮▮▮▮▮▮▮▮▮▮

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

DOC ID ████████████████

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

SER 142

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

DOC ID

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

SER 145

DOC ID ████████████

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

DOC ████████████████

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ████████████████████

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

DOC ID ████████████

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

SER 149

DOC ID ███████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
ANTHONY PAUL MANRIQUE                    -Borrower

_____ (Seal)
ALISA ARLENE MANRIQUE                    -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

SER 150

DOC ID #

**State of California**
**County of** San Bernardino }ss.

On 10/29/07 before me, Ana Brown Notary Public personally appeared

Anthony Paul Manrique

Alice Arlene Manrique

_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



ANA BROWN
Commission #
Notary Public - California
Riverside County
My Comm. Expires Dec 6, 2009

SER 151

# PAYMENT ADVANTAGE
# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One Year Index - Rate Caps)

[Escrow/Closing #]          [Doc ID #]

THIS FIXED/ADJUSTABLE RATE RIDER is made this TWENTY-SEVENTH day of JUNE, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Payment Advantage Fixed/Adjustable Rate Note (the "Note") to

Countrywide Home Loans, Inc. dba America's Wholesale Lender

("Lender") of the same date and covering the property described in the Security Instrument and located at:

718 SILVERWOOD AVENUE
UPLAND, CA 91786-4353
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT THE ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME. FOR A LIMITED TIME THERE WILL BE A PAYMENT OPTION THAT IS LESS THAN THE FULL AMOUNT OF INTEREST DUE. IF THIS PAYMENT OPTION IS CHOSEN, THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED.**

**THE NOTE CONTAINS A PREPAYMENT PENALTY.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST AND PAYMENTS
The Note provides for changes in the interest rate and the monthly payments, as follows:

• Payment Advantage Fixed/Adjustable Rate One Year LIBOR Rider
1E680-XX (12/06)(d/i)          Page 1 of 6

DOC ████████████████████

## 2. INTEREST

### (A) Fixed Interest Rate

Interest will be charged on unpaid Principal until the full amount has been paid. Interest will initially accrue at a yearly rate of      7.125 %. This is my initial fixed interest rate and is the rate for determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

### (B) Adjustable Interest Rate

The initial fixed interest rate I owe will change to an adjustable interest rate on the **first**              day of JULY, 2012              and the adjustable interest rate will change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

### (C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Adjustable Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new adjustable interest rate by adding      2.250 % (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new adjustable interest rate until the next Interest Rate Change Date. My adjustable interest rate will never be greater than      12.125 % or lower than the Margin.

### (E) Limits on Interest Rate Changes

The interest rate in effect at the first Interest Rate Change Date will not be greater than      12.125 % or less than      2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Interest Rate Change Date by more than 2 percentage points from the rate of interest in effect for the preceding 12 months.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

DOC ID #: ███████████

I will make my monthly payments on the FIRST        day of each month beginning on AUGUST 01, 2007      . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If I still owe amounts under this Note on    JULY 01, 2037     , I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

**(B) Minimum Payment**

The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. The Minimum Payment is calculated three (3) different ways during the loan term:

(i) Until   JULY 01, 2017       ("Recast Date") or until the Maximum Negative Amortization Cap is reached, whichever is earlier, the Minimum Payment will be calculated using the then-current interest rate (either fixed or adjustable as described in Section 2) minus    5.000   percentage points. The result of this calculation is called the "Minimum Payment Rate." The Minimum Payment Rate can never be lower than 1%. Since the Minimum Payment Rate is less than the interest rate applied to my unpaid Principal balance, the Minimum Payment will be insufficient to pay the interest portion of the monthly payment and no portion is applied to Principal. **When I make a Minimum Payment, which is based on the Minimum Payment Rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."**

(ii) If the unpaid Principal balance reaches the Maximum Negative Amortization Cap prior to the Recast Date, my new Minimum Payment will be the amount that would pay only the interest portion of the monthly payment based upon the then-current interest rate, which changes in accordance with Section 2. This is the Minimum Payment in effect until the Recast Date.

(iii) After the Recast Date and for the remainder of the loan term, the Minimum Payment will be the monthly payment amount necessary to pay the loan off, in full, at the Maturity Date in substantially equal payments based on the then-current interest rate, which changes in accordance with Section 2.

**(C) Initial Monthly Minimum Payment**

Each of my initial monthly Minimum Payments until the first Interest Rate Change Date will be in the amount of U.S. $ 1,458.50    .

**(D) Monthly Payment Changes**

Changes in my monthly payment will be the result of changes in the unpaid Principal balance of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 2 and 3 of this Note.

SER 154

DOC ID █████████

**(E)   Additions to My Unpaid Principal**

For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

**(F)   Payment Options**

Until the Recast Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") if they are **greater** than the Minimum Payment. The Payment Options are calculated using the interest rate in accordance with Section 2. The following Payment Options may be provided:

(i)   **Interest Only Payment:** the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)   **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are **greater** than the Minimum Payment. If the Maximum Negative Amortization Cap is reached, then the Payment Options available will be the Amortized Payment and the 15 Year Amortized Payment. Upon the Recast Date I will no longer have Payment Options and I will be required to pay the Amortized Payment, which becomes the Minimum Payment as described in Section 3(B)(iii).

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

(A)   Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by

SER 155

DOC ID #

this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B)** When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument described in Section 12(A) above shall then cease to be in effect, and Paragraph 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this

DOC I █████████████

Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Payment Advantage Fixed/Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____     _____
ANTHONY PAUL MANRIQUE                                                     -Borrower

_____     _____
ALISA ARLENE MANRIQUE                                                     -Borrower

_____     _____
                                                                                                 -Borrower

_____     _____
                                                                                                 -Borrower

• Payment Advantage Fixed/Adjustable Rate One Year LIBOR Rider
1E680-XX (12/06)                              Page 6 of 6

SER 157



Recorded in Official Records, County of San Bernardino

**DENNIS DRAEGER**
ASSESSOR – RECORDER – CLERK

8/14/2012
12:55 PM
FV

**C Priority Mail**

Doc#:

| Titles: | 1 | Pages: | 2 |
| --- | --- | --- | --- |
| Fees | | | 21.00 |
| Taxes | | | 0.00 |
| Other | | | 0.00 |
| PAID | | | $21.00 |

This space for Recorder's use

Recording Requested By:
**Bank of America**
Prepared By: **Danilo Cuenca**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
**800-444-4302**
When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

DocID#
Property Address:
**718 Silverwood Ave**
**Upland, CA 91786-4353**

SDV1+
loan #
acc'.

MIN

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE LXS 2007-16N TRUST FUND** whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
| --- | --- |
| Original Lender: | **COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER** |
| Original Borrower(s): | **ANTHONY PAUL MANRIQUE, AND ALISA ARLENE MANRIQUE, HUSBAND AND WIFE AS JOINT TENANTS** |
| Original Trustee: | **RECONTRUST COMPANY, N.A.** |
| Date of Deed of Trust: | **6/27/2007** |
| Original Loan Amount: | **$388,000.00** |

Recorded in **San Bernardino County**, CA on: **7/6/2007**, book **N/A**, page **N/A** and instrument number

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

AUG 0 3 2012

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: 

Faith DeJesus
Assistant Secretary



SER 158

State of **California**
County of **Ventura**

On ___AUG 0 3 2012___ before me, ___Kathy Serrano___, Notary Public, personally appeared ___FAITH DE JESUS___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: ___Kathy Serrano___    (Seal)
My Commission Expires: ___12/27/15___



KATHY SERRANO
Commission ▮▮▮▮▮▮
Notary Public - California
Los Angeles County
My Comm. Expires Dec 27, 2015

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

A true and correct copy of the foregoing document entitled (*specify*): Proof of Claim will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 6, 2015                    , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**ATTORNEY FOR DEBTOR:**
Dana M. Douglas  dmddouglas@hotmail.com

**TRUSTEE:**
Abram Feuerstein, esq   abram.s.feuerstein@usdoj.gov

**U.S. TRUSTEE:**
U.S. Trustee  ustpregion16.rs.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) March 6, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR:**

Anthony Paul Manrique
Aka Anthony Manrique
718 Silverwood Ave.
Upland, CA 91786

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 6, 2015   BRIANNE M. FLOQUET | /s/ BRIANNE M. FLOQUET |
|---|---|
| Date                    Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1 | Dana M. Douglas (SBN 220053)
Attorney at Law
2 | 11024 Balboa Blvd., No.431
Granada Hills, CA 91344
3 | 818-360-8295 office
213-270-9456 fax
4 | dana@danamdouglaslaw.com

5 | Attorney for Debtor
Anthony Paul Manrique

6

7 | UNITED STATES BANKRUPTCY COURT

8 | CENTRAL DISTRICT OF CALIFORNIA

9 | RIVERSIDE DIVISION

10

11 | In re                                   )   Case No. 6:15-bk-10650-SY
                                            )
12 |                                         )
                                            )   Chapter 11
13 |                                         )
                                            )
14 | ANTHONY PAUL MANRIQUE,                  )   **NOTICE OF OBJECTION AND**
                                            )   **OBJECTION TO PROOF OF CLAIM NO.**
15 |                                         )   **3 FILED BY U.S. BANK NATIONAL**
                                            )   **ASSOCIATION; MEMORANDUM OF**
16 |                                         )   **POINTS AND AUTHORITIES;**
                                            )   **DECLARATIONS OF ANTHONY PAUL**
17 |                        Debtor.          )   **MANRIQUE & DANA M. DOUGLAS IN**
                                            )   **SUPPORT THEREOF**
18 |                                         )
                                            )
19 |                                         )   Hearing:
                                            )   Date:       August 20, 2015
20 |                                         )   Time:        1:30 pm
                                            )   Location:   Courtroom 302
21 |                                         )               3420 Twelfth St.
                                            )               Riverside, CA  92501
22 |                                         )
                                            )
23 | ————————————————————

24 | **TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY JUDGE;**

25 | **THE OFFICE OF THE UNITED STATES TRUSTEE; AND ANY OTHER CREDITORS**

26 | **AND PARTIES IN INTEREST:**

27

28



1
**OBJECTION TO CLAIM**

SER 161

1    PLEASE TAKE NOTICE that on August 20, 2015, at 1:30 pm, at the United

2    States Bankruptcy Court located at in Courtroom 302 of the above-entitled Court

3    located at 3420 Twelfth Street in Riverside, California 92501, Anthony Paul

4    Manrique (hereinafter the "Debtor"), in the above-captioned Chapter 11 case, shall,

5    and does hereby submit his Objection to Proof of Claim No. 3 (hereinafter "POC")

6    filed by U.S. Bank National Association, as Trustee for LEHMAN XS TRUST

7    MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N ("US Bank").

8    The Objection is based on the contention that (i) the amount US Bank indicates

9    in the POC that it is owed, or will be owed, include amounts that Debtor has already

10    paid and will continue to pay directly to other entities; (ii) US Bank has failed to

11    provide a requested accounting of the life of the loan that would enable Debtor to be

12    certain of the amounts claimed as principal and interest on the loan; and (iii) the

13    POC does not address or resolve the conflicting claims as to who is the real party in

14    interest on the Note and Deed of Trust.

15    The Objection is based upon this Notice of Objection and Objection, the attached

16    Declarations, all pleadings and records on file in this case, and upon such other

17    evidentiary matters as may be presented to the Court regarding the Objection.

18    PLEASE TAKE FURTHER NOTICE that pursuant to *Local Bankruptcy Rule*

19    *9013-1*, any party opposing the relief sought by the Objection must file a written

20    opposition setting forth the facts and law upon which the opposition is based and

21    must appear at the hearing on the Objection.  Any factual allegations set forth in

22    such written response must be supported by competent and admissible evidence.

23    Any response or opposition to the Objection must be filed with the Court and served

24    Debtor's counsel at least fourteen (14) days prior to the scheduled hearing date on

25    the Objection (not excluding Saturdays, Sundays or legal holidays).  Such

26    responses, if any, must be served on the Debtor's counsel at the address noted in

27    upper left-hand corner of the first page of this Notice. Pursuant to *Local Bankruptcy*

28

**OBJECTION TO CLAIM**

SER 162

DANA M. DOUGLAS
Attorney at Law

1 | *Rule 9013-1*, any response not timely filed and served may be deemed by the Court

2 | to be consent to the granting of the relief requested by the Objection.

3 |       WHEREFORE, Debtor respectfully requests that US Bank amend its POC to the

4 | correct amount it claims to be owed, provide a life of loan history so that the correct

5 | loan amounts can be determined, and provide a verifiable chain of title so that the

6 | actual party in interest to the Note and Deed of Trust can be verified or, alternatively,

7 | that the Court enter an order reducing the US Bank Proof of Claim (Claim No. 3) to the

8 | appropriate amount, and such other and further relief as is just and proper under the

9 | circumstances.

10 |

11 | Dated:  July 22, 2015                  /s/ Dana M. Douglas

12 |                                          Dana M. Douglas
Attorney at Law
*Attorney for Debtor*
Anthony Paul Manrique

**OBJECTION TO CLAIM**

SER 163

1                **MEMORANDUM OF POINTS AND AUTHORITIES**

2                     **I.    Case Background**

3     Anthony Paul Manique (hereinafter "Debtor"), Debtor and Debtor-in-Possession in

4 the above-referenced Chapter 11 case, commenced his bankruptcy case by filing a

5 voluntary petition under Chapter 11 of the Bankruptcy Code on January 26, 2015.

6       In Debtor's Schedule A filed at the commencement of the case he listed several, if

7 not all, of the potential claimants of the mortgage on the residence based upon those

8 parties who had and have asserted an interest in the mortgage and/or the residence

9 and identified the claim as disputed, partly because of the various conflicting claimants

10 and also because Debtor has received conflicting statements from the parties

11 concurrently and separately asserting different balances, payment amounts and

12 interest rates in regard to the loan.

13       On March 6, 2015, U.S. Bank National Association, as Trustee for LEHMAN XS

14 TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N ("US Bank")

15 filed its POC (Claim No. 3) in the amount of $492,647.50 for money loaned and secured

16 by Debtor's residence located at 718 Silverwood Avenue in Upland, California 91786.  A

17 true and correct copy of the US Bank POC is attached hereto as EXHIBIT A.

18      In April, 2015, Debtor tendered a Request for Information under Regulation X of

19 the Mortgage Servicing Act (the "Request") to Nationstar Mortgage LLC seeking, among

20 other things, the name and contact information for the holder of the Note and Deed of

21 Trust within 10 days receipt of the Request and a life of loan history and other

22 information within 30 days of receipt of the Request.  Nationstar has never replied to

23 the Request.  A true and correct copy of the Request is attached hereto as EXHIBIT B.

24         **II.  ERRORS/OMISSIONS IN THE US BANK POC**

25     **A.**      **Escrow Disbursements & Demands For Reimbursement**

26     The POC lists amounts US Bank claims it is owed (beginning on page 7 and

27 continuing thereafter) of $1378.46 and $1378.46 for tax disbursements made, and to

28 be made in 2015, and $609.00 for insurance disbursements made in 2015.  However,



SER 164

1   Debtor tenders the tax and insurance payments directly to the taxing authority and the

2   insurer and, except for a short period in 2012 when he was instructed not to make the

3   payments while his request for mortgage assistance was being considered (the

4   modification request was ultimately denied), Debtor has always paid, thereafter

5   resumed paying, and will continue to pay the taxes and insurance directly as they come

6   due without the sums being escrowed by the mortgage servicer.   The POC includes

7   these sums US Bank despite Debtor having already paid some of the sums and there

8   being no evidence, to Debtor's knowledge, of any such payments having been tendered

9   by US Bank in addition to the payments tendered by Debtor.

10          **B.      Unsupported Claim Amount(s)**

11          Because Nationstar Mortgage LLC has failed or refused to respond to Debtor's

12   multiple request(s) for information related to a life of loan history, payments made and

13   received under Real Estate Settlement Procedures Act, and the POC does not account

14   for how the amount of the secured claim or the purported amount of arrearages and

15   other charges as of the time the case was filed were determined, Debtor is unable to

16   confirm the accuracy of the amounts claimed because Debtor cannot accurately assess

17   whether all of his mortgage payments, which have been tendered to various parties

18   claiming the right to collect payment, have been received and applied on his account.

19          Additionally, the terms of Debtor's Note expressly provide that in the event of an

20   endorsement of the Note to another party, the obligations under the note executed by

21   the borrowers become jointly shared by the originator of the debt instruments, namely

22   Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender, but there has been

23   no accounting of the amount of funds paid by the endorser of the Note to any endorsee

24   or payee on Debtor's Note as described in Paragraph 9 of the Note as executed by

25   Debtor in favor of the loan originator and mortgage correspondent – despite a number of

26   apparent transfers or assignments of the Note that would trigger the originator's

27   obligation to tender such payments. (See page 15 of the POC attached hereto as

28   EXHIBIT A.)



**OBJECTION TO CLAIM**

SER 165

1   Moreover, because Debtor has received conflicting statements from Nationstar

2   Mortgage LLC in regard to the account, he has a valid concern as to the actual amount

3   of the claim and, in the absence of evidence to the contrary, asserts that the amounts

4   stated for the amount of the secured claim and the amount of arrearages at time of

5   filing are not correct.

6       **C.**    **Unresolved, Undocumented & Conflicting Claimant Issues**

7       As noted above, the originator of the Note and Deed of Trust was Countrywide

8   Home Loans d/b/a America's Wholesale Lender.

9       Here the law offices of Pite Duncan, LLP as creditor's authorized agents have filed

10  a proof of claim wherein Nationstar Mortgage LLC is identified as the party to receive

11  payments and notices in regard to the claim and the creditor is identified as U.S. Bank

12  National Association, as Trustee for LEHMAN XS TRUST MORTGAGE PASS-THROUGH

13  CERTIFICATES, SERIES 2007-16N.  However, according to public records, Nationstar

14  Mortgage LLC has claimed a secured interest in Debtor's mortgage loan since July 30,

15  2013, pursuant to an assignment of a deed of trust from Bank of America, N.A., to

16  Nationstar Mortgage LLC.

17      Further, as outlined below, several entities have also claimed an interest in

18  mortgage payments from the debtor at various times, however, none of the entities that

19  have claimed the note includes Bank of America, N.A., as a creditor at any time with

20  authority to assign any interest to Nationstar Mortgage LLC, or anyone else:

21

| Date | Entity claiming the Note |
|---|---|
| 07/17/2007 | PARK GRANADA 10212670.1 SR |
| 02/10/2011 | AURORA MSF LEHMAN(LXS2007-16N) |
| 06/21/2011 | BAC Home Loan Servicing, L.P. |
| 05/01/2012 | U.S. Bank Corporate Trust Services |
| 06/10/2012 | Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-16N |
| 06/30/2013 | LEHMAN BROTHERS HOLDINGS INC. |
| 07/22/2013 | LXS 2007-16N |

27      According to F.R.B.P. 3001(c), a properly filed proof of claim, as prescribed by

28  Official Form 10, consists of (1) a creditor's name and address, (2) basis for claim, (3)


DANA M. DOUGLAS
Attorney at Law

SER 166

1  date debt incurred, (4) amount of claim, (5) classification of claim, and (6) supporting

2  documents, if needed.

3      Further Rule 3001(d) provides: (d) Evidence of Perfection of Security Interest. If a

4  security interest in property of the debtor is claimed, the proof of claim shall be

5  accompanied by evidence that the security interest has been perfected.

6      Here, the Proof of Claim does not provide the address of the creditor, the date the

7  debt was incurred or any supporting documents related to the perfection of the claim.

8  While US Bank claims to have secured claim to a debt instrument and transaction

9  between the Debtor and Countrywide Home Loans, Inc., and Nationstar Mortgage has

10  (previously) claimed to have a secured interest in the debt obligations under Debtor's

11  note as is evidenced by an Assignment of Deed of Trust recorded in the San Bernardino

12  County Recorder's office, the only evidence that US Bank has submitted are copies of

13  Deed of Trust not assigned to it at any time and a copy an unendorsed Note. None of

14  the documents submitted by US Bank evidence a debt or recordation of a lien or show

15  that it is now or has ever been, the owner, or assignee of Debtor's Deed of Trust or Note.

16      Neither US Bank as Trustee of Trust nor NationStar Mortgage LLC has submitted

17  any evidence of title to Debtor's debt instruments nor is there a chain of title evidencing

18  how they have standing to assert a claim in this case and the basis of the secured

19  claim.  While US Bank claims to have a secured claim to a debt instrument and

20  transaction between the Debtor and Countrywide Home Loans, Inc., Nationstar

21  Mortgage LLC has previously claimed to have a secured interest in the debt obligations

22  under Debtor's note as evidenced by an Assignment of Deed of Trust recorded in the

23  San Bernardino County Recorder's office. Here, however, the only evidence that US

24  Bank has submitted are copies of Deed of Trust not assigned to it at any time by any of

25  its record holders, a copy of an unendorsed Note, and a recorded assignment of the

26  Deed of Trust from MERS which does not possess that assignment authority asserted in

27  the document.  What US Bank has provided in the POC is *hearsay* evidence of its

28  secured claim coupled with a purported statement of principal and interest due to them

**OBJECTION TO CLAIM**



SER 167

1  as secured creditors as of petition date, a copy of an account statement without any

2  accounting. Debtor objects to the evidence presented as insufficient, confusing and

3  contradictory.

4      In view of the above, Debtor seeks an order of this Court (i) reducing the

5  Proof of Claim (hereinafter "POC"), Claim No. 3, filed by creditor US Bank in accord with

6  the amounts Debtor has in the past and continues to pay directly to the taxing

7  authority and insurance provider, (ii) requiring US Bank to provide evidence of the

8  secured claim and arrearage amounts as of the date of filing via a loan history and (iii)

9  requiring US Bank to provide a chain of title evidencing its position as secured creditor.

10                    **II.    OBJECTION**

11     Section 502(a) of the Bankruptcy Code provides that "a claim or interest, proof of

12  which is filed under section 501 of this title, is deemed allowed, unless a party in

13  interest . . objects."

14     The prima facie evidentiary effect granted to the filing of a properly completed

15  proof of claim by Federal Rule of bankruptcy procedure 3001(f) only serves to require an

16  objecting party to provide evidence rebutting the claim.  See, e.g. *In re fidelity Holding*

17  *Co., Ltd.*, 837 F. 2d 696, 698 (5th Cir. 1988):

18          "A party objecting to a claim has the initial burden of presenting factual evidence
           tending to defeat the prima facie validity of a proof of claim without the burden of
19          ultimate persuasion.  *In re Distrigas Corp.,* 75 B.R. 770, 772,73 (Bankr. D. Mass.
           1987). Citing King, 3 Collier on Bankruptcy, ¶502-17, 18 (15th Ed. 1988).

20
21     Section 502(b) of the Bankruptcy Code provides a number of grounds on which a

22  portion of a claim may be disallowed, including where "such claim is unenforceable

23  against the debtor and property of the debtor, under any agreement or applicable law for

24  a reason other than because such claim is contingent or unmature."  11 U.S.C. §
    502(b)(1).

25     Under § 502 of the Bankruptcy Code and Bankruptcy Rule 3007, if an objection to

26  claim is made, the Court "is authorized to determine the amount of the claim."  *See, e.g.,*

27

28



1 | *MB Property, L.P. v. Official Creditors for the Estate of AB Liquidating Corp. (In re AB*

2 | *Liquidating Corp.)*, 416 F.3d 961, 962 (9th Cir. 2005) (affirming lower courts' decision

3 | sustaining objection to creditor's proof of claim); *Epstein v. Official Comm. of Unsecured*

4 | *Creditors (In re Piper Aircraft, Corp.)*, 58 F.3d 1573, 1578 (11th Cir. 1995) (same).

5 | Moreover, the legislative history of § 502 provides that "a proof of claim or interest

6 | is *prima facie* evidence of the claim or interest.  Thus, it is allowed under subsection (a)

7 | unless a party, [sic] in interest objects."  House Rep. No. 95-595, 95th Cong., 1st Sess.

8 | 351 (1977); Senate Rep. No. 95-989, 95th Cong., 2d Sess. 62 (1978).  Under these rules,

9 | Debtor objects to US Bank's POC.

10 | ### A. <u>Burden of Proof</u>

11 | A proof of claim constitutes prima facie evidence of the validity and amount of the

12 | claim.  11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f).  However, a claim must not be

13 | allowed if that claim is unenforceable against the debtor and property of the debtor,

14 | under any agreement or applicable law. 11 U.S.C. § 502 (b)(1).  Further, objections to

15 | POCs based on alleged insufficiency of supporting documentation may establish a basis

16 | for finding that claims are not entitled to prima facie validity.  *See* 11 U.S.C. § 502(b);

17 | Fed. R. Bankr. P. 3001(c).

18 | Moreover, once the objector raises "facts tending to defeat the claim by probative

19 | force equal to that of the allegations of the proofs of claim themselves," *Wright v. Holm*

20 | *(In re Holm),* 931 F.2d 620, 623 (9th Cir. 1991), then "the burden reverts to the claimant

21 | to prove the validity of the claim by a preponderance of the evidence." *Ashford v.*

22 | *Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222,

23 | 226 (B.A.P. 9th Cir. 1995), aff'd, 91 F.3d 151 (9th Cir. 1996).

24 | If a claimant cannot produce sufficient evidence to prove his, her, its own claim,

25 | it becomes subject to disallowance.

26 | "If the objecting party rebuts the claimant's prima facie case, it is for the claimant to prove his claim, not for the objector to disprove." *In re Greene*, 71

27 | B.R. 104, 106 (Bankr. S.D.N.Y. 1987).

28 |



**OBJECTION TO CLAIM**

SER 169

1    The presumption treating the proof of claim as prima facie evidence of validity

2   and amount operates to create a mere rebuttable presumption. If rebutted, then the

3   ultimate burden of proof is on the claimant. <u>See</u> *In re Sierra Steel, Inc.*, 96 B.R. at 277.

4    As a result of this shifting burden, "the ultimate burden of persuasion is always

5   on the claimant." *Holm*, 931 F.2d at 623; see also *Fidelity Holding*, 837 F.2d at 698.

6    Additionally, an objection based upon a lack of proper documentation specifically

7   requires the claimant to establish the claim by a preponderance of the evidence or be

8   subject to disallowance. *In re Heath* at 433-35.

9    Debtor disputes that the outstanding balance on the Note and Deed of Trust at

10  the time of filing is the amount claimed by US Bank.  Moreover, Debtor disputes that

11  the amount claimed appropriately includes, at a minimum, property taxes and

12  insurance either at time of filing or on a prospective basis.  Additionally, US Bank has

13  failed to show that it is the party to whom Debtor's payments are to be paid.

14   Debtor believes the POC must be amended to remove erroneous amounts and to

15  provide the basis/calculation for the amounts US Bank claims as due at the time of filing.

16  Debtor also seeks evidence that US Bank holds the recorded interest in the Note and Deed

17  of Trust.  Alternatively, Debtor would ask that the claim be reduced or disallowed and

18  such other and further relief as is just and proper under the circumstances.

19                    **III.    CONCLUSION**

20   WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests

21  that US Bank amend its POC to remove erroneous amounts, provide the basis/calculation

22  for the amounts claimed as due at the time of filing and provide evidence that it

23  appropriately holds the recorded interest in the Note and Deed of Trust, or alternatively

24  that the Court enter an order reducing or disallowing the Proof of Claim (hereinafter

25  "POC"), Claim No. 3, filed by US Bank and such other and further relief as is just and

26  proper under the circumstances.

27

28




SER 170

1    Dated:  July 22, 2015                              /s/ Dana M. Douglas

2                                                       Dana M. Douglas
                                                        Attorney at Law
                                                        *Attorney for Debtor*
3                                                       Anthony Paul Manrique

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**OBJECTION TO CLAIM**

SER 171

**DECLARATION OF ANTHONY PAUL MANRIQUE IN SUPPORT**

I, Anthony Paul Manrique, declare as follows:

1.      I am the Debtor herein.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true.

2.      I commenced my bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on January 26, 2015.

3.      I object to the claim of US Bank as Trustee for LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N ("US Bank") Proof of Claim ("POC") No. 3, in the amount of $492,647.50 for money loaned under a Note and Deed of Trust secured by my residence located at 718 Silverwood Avenue in Upland, California 91786 (the "Residence").  I dispute this claim as I do not believe the balance claimed due on the POC is accurate.  Moreover, prior to commencing the bankruptcy case I was aware of conflicting claims to the rights and obligations under the debt instruments and the POC does not address these conflicts.

4.      On March 6, 2015, US Bank filed its POC.  A true and correct copy of the US Bank POC is attached hereto as EXHIBIT A.

5.      The POC claims US Bank is owed monies to pay the property taxes and insurance for the Residence.  Except for a short period in 2012 when I was instructed not to pay these directly while my loan was being considered for modification, I have always paid the property taxes and insurance directly to those entities.  I continue to pay these expenses directly and have already paid, or will pay when due, the sums US Bank claims it will disburse, or has already disbursed, on my behalf in 2015 for property taxes and insurance.  I object to the POC because is includes amounts I do not owe to US Bank or any party to the debt instruments.

6.      I have made mortgage payments to Countrywide Home Loans and Bank of America, N.A., and have received correspondence from others, to whom I may also have



**OBJECTION TO CLAIM**

SER 172

issued payment, claiming an interest in the loan. Also, the Note is subject to variable rates of interest. I have requested, but have not received, a loan history so that I can be certain all of my payments to the various entities have been received and applied and also to be certain that the interest rates applicable to the principal have also been appropriately applied. In the absence of that information, I object to the POC because the calculations and transactions used to arrive at the amount of the claim as of the date the bankruptcy case was filed may be incorrect and, for this further reason, I believe the POC likely states a claim greater than what I owe.

7.      In addition to my own search in regard to the documents recorded on the title history of the Residence, I have been contacted by many entities that claim to have the right to payment on the loan. I have learned that although US Bank as Trustee for LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N claims to be the creditor, there are many entities that claim, or have claimed, to be the creditor but I have been contacted or received notices from the following:

| Date | Entity claiming the Note |
|------|--------------------------|
| 07/17/2007 | PARK GRANADA 10212670.1 SR |
| 02/10/2011 | AURORA MSF LEHMAN(LXS2007-16N) |
| 06/21/2011 | BAC Home Loan Servicing, L.P. |
| 05/01/2012 | U.S. Bank Corporate Trust Services |
| 06/10/2012 | Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-16N |
| 06/30/2013 | LEHMAN BROTHERS HOLDINGS INC. |
| 07/22/2013 | LXS 2007-16N |

Not included in the group above is Nationstar Mortgage LLC which does not appear to claim to be the creditor in the POC but has a recorded interest on title of the Residence. I object to the POC to the extent that it claims an interest US Bank either does not have at all or which is void because it was received via an assignment from an entity that did not have the interest it purported to transfer.

8.      I am asking that an amended POC be filed addressing these objections or that the Court enter an order reducing or disallowing the US Bank's claim.



**OBJECTION TO CLAIM**

SER 173

1    I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct.

3    Executed on this 22nd day of July, 2015, at Upland, California.

4

5

6                          Anthony Paul Manrique, Debtor

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



14
**OBJECTION TO CLAIM**

1

### DECLARATION OF DANA M. DOUGLAS IN SUPPORT

2    I, Dana M. Douglas, declare as follows:

3    1.    I am an attorney at law licensed in the State of California and authorized

4  to practice before the District Courts in California including the Central District of

5  California, and before this Court.  I am over the age of eighteen (18). I have personal

6  knowledge of the facts set forth herein, and if called as a witness, I could and would

7  testify competently with respect thereto. Where facts are alleged upon information and

8  belief, I believe them to be true.

9    2.    In April, 2015, I prepared and mailed on Debtor's behalf a Request for

10 Information under Regulation X of the Mortgage Servicing Act (the "Request") to

11 Nationstar Mortgage LLC, the party identified in the POC to receive notices at the

12 address specified therein, seeking, among other things, the name and contact

13 information for the holder of the Note and Deed of Trust within 10 days receipt of the

14 Request and a life of loan history and other information within 30 days of receipt of the

15 Request.  The Request was received by Nationstar on May 4, 2015.  A true and correct

16 copy of the Request and the Acknowledgment of Receipt is attached hereto as EXHIBIT

17 B.

18    3.    I have not received any response to the Request.

19    I declare under penalty of perjury under the laws of the United States of

20 America that the foregoing is true and correct.

21    Executed on this 22nd day of July, 2015, at Los Angeles, California.

22

23    /s/ Dana M. Douglas
      Dana M. Douglas
      Attorney at Law

24    *Attorney for Debtor*
      Anthony Paul Manrique

25

26

27

28



15

**OBJECTION TO CLAIM**

SER 175

EXHIBIT A


Proof of Claim 3


U.S. Bank, National Association

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT    Central District of California | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor:<br>Anthony Paul Manrique aka Anthony Manrique | Case Number:<br>6:15-bk-10650-SY |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

U.S. Bank National Association, as Trustee for LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N

| Name and address where notices should be sent:<br>Nationstar Mortgage LLC<br>PO Box 619096<br>Dallas TX 75261   9741<br>Telephone number:  (877) 343-5602     email: | **COURT USE ONLY**<br>❏ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:**_____<br>(*If known*)<br><br>Filed on:_____ |
|---|---|
| Name and address where payment should be sent (if different from above):<br>Nationstar Mortgage LLC<br>PO Box 619094<br>Dallas TX 75261   9741<br>Telephone number:  (877) 343-5602     email: | ❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:**    $   492,647.50

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑Check this box if the claim includes interest or other charges in addition to the principal amount of the claim.  Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**  MONEY LOANED
   (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**<br>__ __ __ __ ******3989 | **3a. Debtor may have scheduled account as:**<br><br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br>__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑Real Estate  ❏Motor Vehicle  ❏Other
**Describe:**  718 Silverwood Avenue, Upland, California 91786

**Value of Property:** $_____

**Annual Interest Rate** 2.750% ❏Fixed  or  ☑Variable
**(when case was filed)**

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$  45,117.94

**Basis for perfection:**  Mortgage/Deed of Trust

**Amount of Secured Claim:** $  492,647.50

**Amount Unsecured:**  $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❏ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❏ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

SER 177

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.  ☑ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Matthew R. Clark (CA SBN 271054)
Title:  ATTORNEY
Company:  PITE DUNCAN, LLP
Address and telephone number (if different from notice address above):
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone number: (858) 750-7600    email: mclark@piteduncan.com

(Signature)                                    (Date) 02/11/2015

*Penalty for presenting fraudulent claim:  Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.*

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law.  In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case.  A separate space is provided for the payment address if it differs from the notice address.  The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5.  Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred.  Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.  If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4.  Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured.  (See Definitions.)  If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5.  Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority.  (See Definitions.)  A claim may be partly priority and partly non-priority.  For example, in some of the categories, the law limits the amount entitled to priority.

**6.  Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7.  Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d).  If the claim is based on delivering health care goods or services, limit disclosing confidential health care information.  Do not send original documents, as attachments may be destroyed after scanning.

**8.  Date and Signature:**
The individual completing this proof of claim must sign and date it.  FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief.  Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration.  Print the name and title, if any, of the creditor or other person authorized to file this claim.  State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

SER 178

_____DEFINITIONS_____        _____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq*.), and any applicable orders of the bankruptcy court.

B 10A (Attachment A) (12/11)

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | |
|---|---|
| **Name of debtor:** Anthony Paul Manrique aka Anthony Manrique | **Case number:** 6:15-bk-10650-SY |
| **Name of creditor:** U.S. Bank National Association, as Trustee for LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N | **Last four digits** of any number you use to identify the debtor's account ******3989 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. **Principal due**          (1)   $ 446,127.09

2. **Interest due**

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 7.125 % | 5/1/2012 | 7/31/2012 | $7,946.64 |
| 3.375 % | 8/1/2012 | 7/31/2013 | $15,056.79 |
| 3 % | 8/1/2013 | 7/31/2014 | $13,383.81 |
| 2.75 % | 8/1/2014 | 1/26/2015 | $5,985.79 |
| **Total interest due as of the petition date** | | | $42,373.03 |

Copy total here ▶   (2)   $42,373.03

3. **Total principal and interest due**      (3)   $488,500.12

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. **Late charges** | | (1) | $ 0.00 |
| 2. **Non-sufficient funds (NSF) fees** | | (2) | $ 0.00 |
| 3. **Attorney's fees** | 9/11/14 | (3) | $ 500.00 |
| 4. **Filing fees and court costs** | | (4) | $ 0.00 |
| 5. **Advertisement costs** | | (5) | $ 0.00 |
| 6. **Sheriff/auctioneer fees** | | (6) | $ 0.00 |
| 7. **Title costs** | 7/8/14, 9/22/14 | (7) | $ 1,993.00 |
| 8. **Recording fees** | 9/11/14 | (8) | $ 92.20 |
| 9. **Appraisal/broker's price opinion fees** | | (9) | $ 0.00 |
| 10. **Property inspection fees** | 4/9/14, 5/5/14, 6/2/14, 7/23/14, 9/10/14, 10/8/14, 11/26/14, 12/24/14, 1/14/15 | (10) | $ 150.00 |
| 11. **Tax advances (non-escrow)** | | (11) | $ 0.00 |
| 12. **Insurance advances (non-escrow)** | | (12) | $ 0.00 |
| 13. **Escrow shortage or deficiency** (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $ 1,747.00 |
| 14. **Property preservation expenses. Specify:** | | (14) | $ 0.00 |
| 15. **Other. Specify:** Postpetition Bankruptcy Attorney's Fees | 2/6/15 | (15) | $ 750.00 |
| 16. **Other. Specify:** Mailing Costs | 9/17/14 | (16) | $ 13.16 |
| 17. **Other. Specify:** | | (17) | $ 0.00 |
| 18. **Total prepetition fees, expenses, and charges.** Add all of the amounts listed above. | | (18) | $5,245.36 |

SER 180

B 10 (Attachment A) (12/11)                                                      Page 2

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☐ No

☒ Yes    Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with
applicable nonbankruptcy law

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1. | **Installment payments due** | Date last payment received by creditor | | | 5/11/2012 | | | |
| | | Number of installment payments due | | | (1) | 32 | | |
| 2. | **Amount of installment payments due** | 2 | installments | From 6/1/2012 | To 7/1/2012 | @ | $2,648.88 | = $5,297.76 |
| | | 12 | installments | From 8/1/2012 | To 7/1/2013 | @ | $1,254.73 | = $15,056.76 |
| | | 12 | installments | From 8/1/2013 | To 7/1/2014 | @ | $1,115.32 | = $13,383.84 |
| | | 6 | installments | From 8/1/2014 | To 1/1/2015 | @ | $1,022.37 | = $6,134.22 |

| | | |
|---|---|---|
| **Total installment payments due as of the petition date** | **$39,872.58** | Copy total here ▶ (2) $39,872.58 |

| | | |
|---|---|---|
| 3. | **Calculation of cure amount** | <u>Add</u> total prepetition fees, expenses, and charges | Copy total from Part 2 here ▶ + <u>$5,245.36</u> |
| | | <u>Subtract</u> total of unapplied funds (funds received but not credited to account) | - $ 0.00 |
| | | <u>Subtract</u> amounts for which debtor is entitled to a refund | - $ 0.00 |
| | | **Total amount necessary to cure default as of the petition date** | (3) <u>$45,117.94</u> |

Copy total onto Item 4
of Proof of Claim form

Attached are redacted copies of any documents that support the claim, such as promissory notes,
purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages,
and security agreements in support of right to seek a lift of the automatic stay and foreclose if
necessary.

SER 181

**Steven W. Pite** *CA/NV/WA*
**David E. McAllister**
*AZ/CA/HI/OR/UT/WA*
**Casper J. Rankin**
*AZ/CA/OR/ID/WA*
**Eddie R. Jimenez** *CA/NV/TX*
**Christopher McDermott** *CA*

**Josephine E. Salmon**
*AK/AZ/CA/NY*
**Gagan G. Vaideeswaran** *CA*
**Megan E. Lees** *CA*

**Joseph C. Delmotte** *CA*
**Bryan S. Fairman** *CA*
**Anh P. Nguyen** *TX*
**Philip Giles** *AZ/CA*
**Ace C. Van Patten** *ID/NV*

**Jesse Baker** *OR/UT/WA*
**Todd Garan** *CA*
**Matthew R. Clark, III**
*CA/NY*
**Arnold L. Graff** *CA/UT/WI*

**Robert P. Zahradka** *CA*
**Greg P. Campbell** *CA*
**Gina J. Kim** *CA*
**Justin S. Moyer** *CA*
**Drew A. Callahan** *CA*
**Jonathan C. Cahill** *CA*

## PROOF OF CLAIM DISCLOSURES

### IN RE: **MANRIQUE, ANTHONY PAUL AKA ANTHONY MANRIQUE**
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

CASE NO. 6:15-bk-10650-SY

CREDITOR:  U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR LEHMAN XS
TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N

| First Post Petition Payment | Principal & Interest | Escrow | Total |
|---|---|---|---|
| 2/1/2015 | $1,115.32 | $280.49 | $1,395.81 |

1. The amount of the post-petition payments is subject to change per the terms of the Note and Deed of Trust/Mortgage.
2. This Proof of Claim shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004 notwithstanding Pite Duncan, LLP's participation in this proceeding. Moreover, the within party does not authorize Pite Duncan, LLP, either expressly or impliedly through Pite Duncan, LLP's participation in this proceeding, to act as its agent for purpose of service under Fed. R. Bankr. P. 7004.
3. Please be on notice that the Post-Petition Attorneys' Fees and Costs listed in Part 2 of the Mortgage Proof of Claim Attachment include the post-petition preparation and filing of this Proof of Claim; obtaining and reviewing the Chapter 11 Plan; and the preparation, filing and service of a Request for Courtesy Notice to monitor this bankruptcy. These post-petition fees are included in the Proof of Claim so that the subject loan is current upon completion of the Plan. If the Debtor(s) object to these fees being included in the Proof of Claim, please contact Steven Pite at (858)-750-7600 in order to have these fees and costs removed from the Proof of Claim.

# Annual Escrow Account Disclosure Statement

2501 S State Hwy 121 Business
Suite 100
Lewisville, Texas 75067

| Loan Number | |
|---|---|
| Analysis Date | February 5, 2015 |
| **Previous Payment** | |
| Principal & Interest | $ 1,115.32 |
| Escrow | $ 295.77 |
| **Total** | $ 1,411.09 |
| **New Payment** | |
| Effective Date | February 1, 2015 |
| Principal & Interest | $ 1,115.32 |
| Escrow | $ 280.49 |
| **Total** | **$ 1,395.81** |

ANTHONY PAUL MANRIQUE
ALISA ARLENE MANRIQUE

718 SILVERWOOD AVE
UPLAND, CA  91786

The purpose of the Coming Year Escrow Projection is to determine the lowest balance "Low Point" to which your escrow account will decline over the upcoming year.  The purpose of the Low Balance Summary is to compare the projected and allowable low point amounts. If the projected low point is greater than the allowable low point, there is a surplus.  If the projected low point is less than the allowable low point, there is a shortage and/or deficiency which will be recovered by an adjustment to your monthly payment over a specified number of months. The adjustment amount(s) appears in the Low Balance Summary and New Payment information.

**Our records indicate that you have filed a bankruptcy.** This statement is sent for informational purposes only and is not an attempt to collect a debt.  It does not alter or affect the terms of your bankruptcy proceedings. Please disregard the payment information if it conflicts with any order or requirement of the court.

If you filed a Chapter 13, any unpaid amounts prior to the filing of your bankruptcy petition may be paid through in and in accordance with your bankruptcy plan. If you are a Chapter 13 debtor whose plan requires you to make regular post petition payments directly to the Chapter 13 trustee, any payment should be remitted to the trustee directly and not to Nationstar Mortgage LLC.

| Escrow Accounts Summary | |
|---|---|
| Tax | $ 2,756.92 |
| Insurance | $ 609.00 |
| Lender-Placed Insurance | $ - |
| Mortgage Insurance | $ - |
| **Annual Total** | **$ 3,365.92** |
| **Approximate Monthly Deposit** | **$ 280.49** |
| *Monthly Deposit Without Mortgage Insurance* | *$ 280.49* |
| **RESPA Cushion (About Two Monthly Deposits)\*** | **$ 560.99** |

| Escrow Included in Proof of Claims | |
|---|---|
| Bankruptcy Filing Date | January 26, 2015 |
| Total Escrow Funds Advanced by Your Servicer at Filing Date | $ 649.02 |
| **Plus** Balance Required at Filing to Maintain RESPA Minimum | $ 1,097.98 |
| **Minus** Escrow Account Balance at Filing Date | $ - |
| **Total Shortage at Filing Date** | **$ 1,747.00** |

This column shows your new monthly escrow deposits over the next escrow cycle.

These columns show when each of your escrow accounts is expected to be paid during the next escrow cycle.

This column shows what your escrow balance would be without any additional funds.

This column shows the calculation of the amount of funds needed to maintain your RESPA cushion\* through the next escrow cycle.

## Escrow Balance Projection

| Month | Escrow Payment | Tax Disbursements | Insurance Disbursements | LPI Disbursements | Mortgage Insurance Disbursements | Balance | Required Balance |
|---|---|---|---|---|---|---|---|
| | | | | | **Beginning Balance** | $ - | $ 1,097.98 |
| Feb 2015 | $ 280.49 | $ - | $ - | $ - | $ - | $ 280.49 | $ 1,378.47 |
| Mar 2015 | $ 280.49 | $ - | $ - | $ - | $ - | $ 560.98 | $ 1,658.96 |
| Apr 2015 | $ 280.49 | 1,378.46 | $ - | $ - | $ - | $ (536.99) | $ 560.99 * |
| May 2015 | $ 280.49 | $ - | $ - | $ - | $ - | $ (256.50) | $ 841.48 |
| Jun 2015 | $ 280.49 | $ - | $ - | $ - | $ - | $ 23.99 | $ 1,121.97 |
| Jul 2015 | $ 280.49 | $ - | $ - | $ - | $ - | $ 304.48 | $ 1,402.46 |
| Aug 2015 | $ 280.49 | $ - | $ - | $ - | $ - | $ 584.97 | $ 1,682.95 |
| Sep 2015 | $ 280.49 | $ - | $ - | $ - | $ - | $ 865.46 | $ 1,963.44 |
| Oct 2015 | $ 280.49 | $ - | $ - | $ - | $ - | $ 1,145.95 | $ 2,243.93 |
| Nov 2015 | $ 280.49 | $ - | 609.00 | $ - | $ - | $ 817.44 | $ 1,915.42 |
| Dec 2015 | $ 280.49 | 1,378.46 | $ - | $ - | $ - | $ (280.53) | $ 817.45 |
| Jan 2016 | $ 280.49 | $ - | $ - | $ - | $ - | $ (0.04) | $ 1,097.94 |
| **Totals** | **3,365.88** | $ 2,756.92 | 609.00 | $ - | $ - | | |
| | | | | | **Balance Required at Filing to Maintain RESPA Cushion\*** | | **$ 1,097.98** |

\* - The cushion allowed by federal law (RESPA) is two times your monthly escrow payment excluding any mortgage insurance payments, unless your state's laws specify a lower amount. The highlighted value in the Required Balance column indicates where the RESPA cushion limit is set--this is lowest balance your Escrow account will reach during the next Escrow cycle and all of the other values in the column are based on it.

SER 183

2501 S State Hwy 121 Business
Suite 100
Lewisville, Texas 75067

# Annual Escrow Account
# Disclosure Statement

2/6/2015

| | | Escrow Account Transactions Prior to Bankruptcy Filing | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| 4/4/2014 | Escrow Advance Recovery | $ - | $ - | $ (649.02) | $ - | $ 649.02 | $ 649.02 |
| 4/4/2014 | Escrow Debit Adj. | $ - | $ - | $ - | $ 649.02 | $ - | $ 649.02 |
| 10/28/2014 | Escrow Advance - Insurance | $ 609.00 | $ - | $ - | $ - | $ 609.00 | $ 1,258.02 |
| 10/28/2014 | Hazard Insurance Disbursed | $ - | $ - | $ - | $ 609.00 | $ - | $ 1,258.02 |
| 1/5/2015 | Hazard Insurance Deposit | $ - | $ - | $ (609.00) | $ - | $ 609.00 | $ 1,258.02 |
| 1/5/2015 | Escrow Advance Recovery | $ - | $ - | $ 609.00 | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | | $ - | $ - | $ - | $ - | $ - | $ 649.02 |
| | Subtotals | $ 609.00 | $ - | $ (40.02) | $ 649.02 | $ - | $ 649.02 |

SER 184

2501 S State Hwy 121 Business
Suite 100
Lewisville, Texas 75067

# Annual Escrow Account
# Disclosure Statement

| | | Escrow Account Transactions Prior to Bankruptcy Filing | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| | | | | | | $          - | $          649.02 |
| Subtotals | | $          609.00 | $          - | $          (40.02) | $          649.02 | $          - | $          649.02 |

SER 185

2501 S State Hwy 121 Business
Suite 100
Lewisville, Texas 75067

# Annual Escrow Account
# Disclosure Statement

2/6/2015

| | | Escrow Account Transactions Prior to Bankruptcy Filing | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| Totals | | $ 609.00 | $ - | $ (40.02) | $ 649.02 | $ - | $ 649.02 |

SER 186

2501 S State Hwy 121 Business
Suite 100
Lewisville, Texas 75067

# Annual Escrow Account
# Disclosure Statement

2/6/2015

| Escrow Account Transactions Prior to Bankruptcy Filing | | | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| | | | | | | $ - | $ 649.02 |
| Totals | | $ 609.00 | $ - | $ (40.02) | $ 649.02 | $ - | $ 649.02 |

SER 187

Prepared by: VERONICA RIOS

LOAN █████████

# PAYMENT ADVANTAGE
## FIXED/ADJUSTABLE RATE NOTE
### (LIBOR One Year Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. FOR A LIMITED TIME I WILL HAVE A PAYMENT OPTION THAT IS LESS THAN THE FULL AMOUNT OF INTEREST DUE. IF I CHOOSE THIS OPTION, THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED.**
**THIS NOTE CONTAINS A PREPAYMENT PENALTY.**

| JUNE 27, 2007 | EL CAJON | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

718 SILVERWOOD AVENUE, UPLAND, CA 91786-4353
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 388,000.00          ("Principal"), plus interest, to the order of Lender. The Principal may increase as provided under the terms of this Note but will not exceed          115  percent of the Principal amount I originally borrowed. This is called the "Maximum Negative Amortization Cap." If I default under this Note or the Security Instrument, then default charges may be added to the Maximum Negative Amortization Cap to be exceeded. Lender is Countrywide Home Loans, Inc. dba America's Wholesale Lender
.
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or its successors or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Fixed Interest Rate

Interest will be charged on unpaid Principal until the full amount has been paid. Interest will initially accrue at a yearly rate of  7.125 %. This is my initial fixed interest rate and is the rate for determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

### (B) Adjustable Interest Rate

The initial fixed interest rate I owe will change to an adjustable interest rate on the first          day of JULY, 2012          and the adjustable interest rate will change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

### (C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Rate Change Date is called the "Current Index."



If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Adjustable Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new adjustable interest rate by adding 2.250 % (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new adjustable interest rate until the next Interest Rate Change Date. My adjustable interest rate will never be greater than 12.125 % or lower than the Margin.

**(E) Limits on Interest Rate Changes**

The interest rate in effect at the first Interest Rate Change Date will not be greater than 12.125 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Interest Rate Change Date by more than 2 percentage points from the rate of interest in effect for the preceding 12 months.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on AUGUST 01, 2007 . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If I still owe amounts under this Note on JULY 01, 2037 , I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 10219, Van Nuys, CA 91410-0219 or at a different place if required by the Note Holder.

**(B) Minimum Payment**

The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. The Minimum Payment is calculated three (3) different ways during the loan term:

(i) Until JULY 01, 2017 ("Recast Date") or until the Maximum Negative Amortization Cap is reached, whichever is earlier, the Minimum Payment will be calculated using the then-current interest rate (either fixed or adjustable as described in Section 2) minus 5.000 percentage points. The result of this calculation is called the "Minimum Payment Rate." The Minimum Payment Rate can never be lower than 1%. Since the Minimum Payment Rate is less than the interest rate applied to my unpaid Principal balance, the Minimum Payment will be insufficient to pay the interest portion of the monthly payment and no portion is applied to Principal. **When I make a Minimum Payment, which is based on the Minimum Payment Rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."**

(ii) If the unpaid Principal balance reaches the Maximum Negative Amortization Cap prior to the Recast Date, my new Minimum Payment will be the amount that would pay only the interest portion of the monthly payment based upon the then-current interest rate, which changes in accordance with Section 2. This is the Minimum Payment in effect until the Recast Date.

(iii) After the Recast Date and for the remainder of the loan term, the Minimum Payment will be the monthly payment amount necessary to pay the loan off, in full, at the Maturity Date in substantially equal payments based on the then-current interest rate, which changes in accordance with Section 2.

**(C) Initial Monthly Minimum Payment**

Each of my initial monthly Minimum Payments until the first Interest Rate Change Date will be in the amount of U.S. $1,458.50 .

**(D) Monthly Payment Changes**

Changes in my monthly payment will be the result of changes in the unpaid Principal balance of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 2 and 3 of this Note.

**(E)  Additions to My Unpaid Principal**

For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

**(F)  Payment Options**

Until the Recast Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") if they are **greater** than the Minimum Payment. The Payment Options are calculated using the interest rate in accordance with Section 2. The following Payment Options may be provided:

(i)  **Interest Only Payment:** the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)  **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii)  **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are **greater** than the Minimum Payment. If the Maximum Negative Amortization Cap is reached, then the Payment Options available will be the Amortized Payment and the 15 Year Amortized Payment. Upon the Recast Date I will no longer have Payment Options and I will be required to pay the Amortized Payment, which becomes the Minimum Payment as described in Section 3(B)(iii).

**4.  NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction that could result from my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000 % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

LOAN #: ▮▮▮▮▮▮

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees. If I default under this Note or the Security Instrument then default charges may cause the Maximum Negative Amortization Cap to be exceeded.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. DOCUMENT CORRECTION**

In the event that Note Holder at any time discovers that this Note, Security Instrument, Addenda, Rider or any other document related to this loan is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan, or otherwise contains an error, such as a clerical mistake, calculation error, computer error, printing error, electronic transmission error, or similar error, I agree, upon notice from Note Holder, to re-execute any documents that are necessary to replace or correct any such documents and return them within ten (10) days of receipt. I also agree that I will not hold Lender responsible for any damages which result from any such error.

**12. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests

SER 191

LOAN #: ████████

transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument described in Section 12(A) above shall then cease to be in effect, and Paragraph 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  - Borrower
ANTHONY PAUL MANRIQUE

_____  - Borrower
ALISA ARLENE MANRIQUE

_____  - Borrower

_____  - Borrower

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC., A NEW YORK CORPORATION
DOING BUSINESS AS AMERICA'S WHOLESALE LENDER

BY: _____
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

Prepared by: VERONICA RIOS

**Countrywide Home Loans, Inc. dba America's Wholesale Lender**

DATE: 06/27/2007
BORROWER: ANTHONY PAUL MANRIQUE
CASE #:
LOAN #: ▮▮▮▮▮▮
PROPERTY ADDRESS: 718 SILVERWOOD AVENUE
                  UPLAND, CA 91786-4353

Branch #▮▮▮▮▮▮
1455 FRAZEE ROAD #102
SAN DIEGO, CA 92108
Phone: (619)688-5100
Br Fax No.: (619)688-9258

# PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated   JUNE 27, 2007        , and is incorporated into and amends and supplements the Note of the same date (the "Note") given by me to
Countrywide Home Loans, Inc. dba America's Wholesale Lender
(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "Borrower's Right to Prepay" is replaced with the following new section:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note.

**My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.**

● Multistate Prepayment Penalty Addendum
1E296-XX (09/06)(d/l)                          Page 1 of 2

LOA███████████

If within the first TWELVE months after the execution of this Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original Principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeds twenty (20) percent of the original Principal amount of this Note. Interest will be calculated using the rate in effect at the time of prepayment.

All other terms and conditions of the above referenced Note remain in full force and effect.

_____     Borrower
ANTHONY PAUL MANRIQUE

_____     Borrower
ALISA ARLENE MANRIQUE

_____     Borrower

_____     Borrower

● Multistate Prepayment Penalty Addendum
1E296-XX (09/06)                    Page 2 of 2

SER 194



Recording Requested By:
J. FOX

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
VERONICA RIOS

Recorded In Official Records, County of San Bernardino

**LARRY WALKER**
Auditor/Controller — Recorder

602 Southland Title of San Diego

7/06/2007
8:00 AM
BN

Doc#:

| Titles: 1 | Pages: 22 |
|---|---|

| Fees | 73.00 |
| Taxes | 0.00 |
| Other | 0.00 |
| **PAID** | **$73.00** |

———————— [Space Above This Line For Recording Data] ————————

[Escrow/Closing #]                    [Doc ID #]

# DEED OF TRUST
MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  JUNE 27, 2007          , together with all Riders to this document.

**(B) "Borrower"** is
ANTHONY PAUL MANRIQUE, AND ALISA ARLENE MANRIQUE, HUSBAND AND WIFE AS
JOINT TENANTS

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

VMP ®  -6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc
CONV/VA

Form 3005  1/01

SER 195

DOC ID #: ███████████

Borrower's address is
718 SILVERWOOD AVENUE, UPLAND, CA 91786-4353
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
Countrywide Home Loans, Inc. dba America's Wholesale Lender
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
**(D) "Trustee"** is
ReconTrust Company, N.A
225 West Hillcrest Dr., MSN TO-02, Thousand Oaks, CA 91360
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this
Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. ████████
**(F) "Note"** means the promissory note signed by Borrower and dated JUNE 27, 2007 . The
Note states that Borrower owes Lender
THREE HUNDRED EIGHTY EIGHT THOUSAND and 00/100

Dollars (U.S. $ 388,000.00 ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than JULY 01, 2037 .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

SER 196

DOC ID #: ███████████

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY of SAN BERNARDINO :
[Type of Recording Jurisdiction]   [Name of Recording Jurisdiction]

LOT(S) 3 OF TRACT NO. 6654, IN THE CITY OF UPLAND, COUNTY SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 84 PAGE(S) 90 AND 91, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Parcel ID Number: ███████████   which currently has the address of
718 SILVERWOOD AVENUE, UPLAND ,
[Street/City]
California 91786-4353 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(CA) (0207)   CHL (08/05)   Page 3 of 16   Form 3005  1/01

SER 197

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

SER 198

DOC II

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

SER 199

DOC ID

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

SER 200

DOC ID ████████████

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

SER 201

DOC ID #

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

SER 202

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

SER 203

DOC ID ██████████████

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

SER 204

DOC ID █████████████

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

SER 205

DOC ████████████████

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

SER 206

DOC ███████████████

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

-6A(CA) (0207)          CHL (08/05)          Page 13 of 16          Form 3005  1/01

SER 207

DOC ID ████████████

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

SER 208

DOC ID ████████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
ANTHONY PAUL MANRIQUE                                          -Borrower

_____ (Seal)
ALISA ARLENE MANRIQUE                                           -Borrower

_____ (Seal)
                                                               -Borrower

_____ (Seal)
                                                               -Borrower

SER 209

DOC ID #

State of California
County of *San Bernardino*

On *10/29/07* before me, *Ana Brown Notary Public*
personally appeared

*Anthony Paul Manrique*

*Alice Arlene Manrique*

_____ , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



ANA BROWN
Commission #
Notary Public - California
Riverside County
My Comm. Expires Dec 6, 2009

-6A(CA) (0207)     CHL (08/05)          Page 16 of 16                         Form 3005  1/01

SER 210

# PAYMENT ADVANTAGE
# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One Year Index - Rate Caps)

[Escrow/Closing #]          [Doc ID #]

THIS FIXED/ADJUSTABLE RATE RIDER is made this TWENTY-SEVENTH day of
JUNE, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower")
to secure Borrower's Payment Advantage Fixed/Adjustable Rate Note (the "Note") to
Countrywide Home Loans, Inc. dba America's Wholesale Lender

("Lender") of the same date and covering the property described in the Security Instrument and located at:

718 SILVERWOOD AVENUE
UPLAND, CA 91786-4353
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE FIXED INTEREST RATE TO AN
ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT THE ADJUSTABLE INTEREST
RATE CAN CHANGE AT ANY ONE TIME. FOR A LIMITED TIME THERE WILL BE A PAYMENT
OPTION THAT IS LESS THAN THE FULL AMOUNT OF INTEREST DUE. IF THIS PAYMENT
OPTION IS CHOSEN, THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE
AMOUNT ORIGINALLY BORROWED.**

### THE NOTE CONTAINS A PREPAYMENT PENALTY.

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

### A. INTEREST AND PAYMENTS
The Note provides for changes in the interest rate and the monthly payments, as follows:

• Payment Advantage Fixed/Adjustable Rate One Year LIBOR Rider
1E680-XX (12/06)(d/i)                    Page 1 of 6

SER 211

DOC █████████████

## 2. INTEREST

### (A) Fixed Interest Rate

Interest will be charged on unpaid Principal until the full amount has been paid. Interest will initially accrue at a yearly rate of      7.125 %. This is my initial fixed interest rate and is the rate for determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

### (B) Adjustable Interest Rate

The initial fixed interest rate I owe will change to an adjustable interest rate on the first            day of JULY, 2012          and the adjustable interest rate will change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

### (C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Adjustable Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new adjustable interest rate by adding      2.250 % (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new adjustable interest rate until the next Interest Rate Change Date. My adjustable interest rate will never be greater than      12.125 % or lower than the Margin.

### (E) Limits on Interest Rate Changes

The interest rate in effect at the first Interest Rate Change Date will not be greater than      12.125 % or less than      2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Interest Rate Change Date by more than 2 percentage points from the rate of interest in effect for the preceding 12 months.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

DOC ID #: ███████████

I will make my monthly payments on the FIRST                day of each month beginning on
AUGUST 01, 2007            . I will make these payments every month until I have paid all the Principal
and interest and any other charges described below that I may owe under this Note. Each monthly payment
will be applied as of its scheduled due date and will be applied to interest before Principal. If I still owe amounts
under this Note on   JULY 01, 2037            , I will pay those amounts in full on that date, which is
called the "Maturity Date."
        I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

**(B)  Minimum Payment**
        The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. The
Minimum Payment is calculated three (3) different ways during the loan term:
        (i)   Until   JULY 01, 2017            ("Recast Date") or until  the Maximum  Negative
Amortization  Cap is reached, whichever is earlier, the Minimum Payment will be calculated using the
then-current interest rate (either fixed or adjustable as described in Section 2) minus        5.000
percentage points. The result of this calculation is called the "Minimum Payment Rate." The  Minimum
Payment Rate can never be lower than 1%. Since the Minimum Payment Rate is less than the interest rate
applied to my unpaid Principal balance, the Minimum Payment will be insufficient to pay the interest portion
of the monthly payment and no portion is applied to Principal. **When I make a Minimum Payment, which is
based on the Minimum Payment Rate that is less than the rate of interest due, the unpaid interest is
added to the Principal amount. This is known as "deferred interest" or "negative amortization."**
        (ii)  If the unpaid Principal balance reaches the Maximum Negative Amortization Cap prior to the Recast
Date, my new Minimum Payment will be the amount that would pay only the interest portion of the monthly
payment based upon the then-current interest rate, which changes in accordance with Section 2. This is the
Minimum Payment in effect until the Recast Date.
        (iii)  After the Recast Date and for the remainder of the loan term, the Minimum Payment will be the
monthly payment amount necessary to pay the loan off, in full, at the Maturity Date in substantially equal
payments based on the then-current interest rate, which changes in accordance with Section 2.

**(C)  Initial Monthly Minimum Payment**
        Each of my initial monthly Minimum Payments until the first Interest Rate Change Date will be in the amount
of U.S. $ 1,458.50       .

**(D)  Monthly Payment Changes**
        Changes in my monthly payment will be the result of changes in the unpaid Principal balance of my loan and
in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of
my monthly payment in accordance with Sections 2 and 3 of this Note.

SER 213

DOC ID ███████████

**(E) Additions to My Unpaid Principal**

For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Payment Options**

Until the Recast Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") if they are **greater** than the Minimum Payment. The Payment Options are calculated using the interest rate in accordance with Section 2. The following Payment Options may be provided:

    (i)    **Interest Only Payment:** the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

    (ii)    **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

    (iii)    **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are **greater** than the Minimum Payment. If the Maximum Negative Amortization Cap is reached, then the Payment Options available will be the Amortized Payment and the 15 Year Amortized Payment. Upon the Recast Date I will no longer have Payment Options and I will be required to pay the Amortized Payment, which becomes the Minimum Payment as described in Section 3(B)(iii).

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

    (A)    Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument shall read as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by

SER 214

DOC ID # ███████████████

this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B)**   When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument described in Section 12(A) above shall then cease to be in effect, and Paragraph 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this

SER 215

DOC I █████████████████

Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Payment Advantage Fixed/Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____     -Borrower
ANTHONY PAUL MANRIQUE

_____     -Borrower
ALISA ARLENE MANRIQUE

_____     -Borrower

_____     -Borrower

• Payment Advantage Fixed/Adjustable Rate One Year LIBOR Rider
1E680-XX (12/06)                    Page 6 of 6

SER 216



Recorded in Official Records, County of San Bernardino

**8/14/2012 12:55 PM FV**

**DENNIS DRAEGER**
ASSESSOR - RECORDER - CLERK

C Priority Mail

Recording Requested By:
**Bank of America**
Prepared By: **Danilo Cuenca**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
**800-444-4302**
When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

DocID#
Property Address:
**718 Silverwood Ave**
**Upland, CA 91786-4353**

Doc#:

| Titles: | 1 | Pages: | 2 |
|---|---|---|---|
| Fees | | | 21.00 |
| Taxes | | | 0.00 |
| Other | | | 0.00 |
| PAID | | | $21.00 |

SPVLt
loan #
acc.

This space for Recorder's use

# ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE LXS 2007-16N TRUST FUND** whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER** |
| Original Borrower(s): | **ANTHONY PAUL MANRIQUE, AND ALISA ARLENE MANRIQUE, HUSBAND AND WIFE AS JOINT TENANTS** |
| Original Trustee: | **RECONTRUST COMPANY, N.A.** |
| Date of Deed of Trust: | **6/27/2007** |
| Original Loan Amount: | **$388,000.00** |

Recorded in **San Bernardino County, CA** on: 7/6/2007, book **N/A**, page **N/A** and instrument number

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

~~AUG 0 3 2012~~

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.



By: _____
Faith DeJesus
Assistant Secretary



SER 217

State of **California**
County of **Ventura**

On ___AUG 0 3 2012___ before me, _____**Kathy Serrano**_____, Notary Public, personally appeared
___**FAITH DE JESUS**___

, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____**Kathy Serrano**_____ (Seal)
My Commission Expires: _____**12/27/15**_____

KATHY SERRANO
Commission ████████
Notary Public - California
Los Angeles County
My Comm. Expires Dec 27, 2015

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

A true and correct copy of the foregoing document entitled (*specify*): <u>Proof of Claim</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>March 6, 2015</u>      , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**ATTORNEY FOR DEBTOR:**
Dana M. Douglas  dmddouglas@hotmail.com

**TRUSTEE:**
Abram Feuerstein, esq   abram.s.feuerstein@usdoj.gov

**U.S. TRUSTEE:**
U.S. Trustee  ustpregion16.rs.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) <u>March 6, 2015, I s</u>erved the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**DEBTOR:**

Anthony Paul Manrique
Aka Anthony Manrique
718 Silverwood Ave.
Upland, CA 91786

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 6, 2015   BRIANNE M. FLOQUET | /s/ BRIANNE M. FLOQUET |
|---|---|
| *Date*                 *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

EXHIBIT B

Request for Information

SER 220



DANA M. DOUGLAS
Attorney at Law

Tel 1+ 818.360.8295
Fax 1+ 213.270.9456
4712 Admiralty Way, No. 1001
Marina del Rey, CA 90292
dana@danamdouglaslaw.com
www.danamdouglaslaw.com

April 17, 2015


*VIA CERTIFIED MAIL/RETURN RECEIPT REQUESTED*

Nationstar Mortgage LLC
Post Office Box 619096
Dallas, Texas  75261-9741

*Re: Loan No: 0618603989 – 718 Silverwood Ave., Upland CA 91786 – Request for Information
Pursuant to § 1024.36 of Regulation X*

Dear Sirs,

This is a Request for Information related to your servicing of the mortgage loan referenced above. All
references herein are to Regulation X of the Mortgage Servicing Act as amended by the Consumer
Financial Protection Bureau pursuant to the Dodd Frank Act.

Pursuant to Section 1024.36(c) of Regulation X, you must within five (5) days (excluding public
holidays, Saturdays and Sundays) provide me with a response to this request acknowledging receipt
of this information request.

Pursuant to Section 1024.36(d)(ii)(2)(A), not later than ten (10) days (excluding public holidays,
Saturdays and Sundays) after you receive this request for information you must provide us with the
identity of and address or other relevant contact information requested herein, and pursuant to
Section 1024.36(d0(iiO(2)(B), you must respond not later than thirty (30) days (excluding legal
public holidays, Saturdays and Sundays) after you receive this request for information.

Please provide the following information within the time periods noted herein:
1.  The identity of and address for the current owner of the mortgage loan identified herein;
2.  The identity of and address for the master servicer of the mortgage loan identified herein;
3.  The identity and address for the current servicer of the mortgage loan identified herein;
4.  An exact reproduction of the life of loan mortgage transactional history for this loan.
5.  A detailed summary of all corporate advances made against the mortgage loan identified
    herein that you consider to be recoverable against the obligors of the mortgage loan
    identified herein;
6.  A detailed summary of all corporate advances made against the mortgage loan identified
    herein that you consider to be non-recoverable against the obligors of the mortgage loan
    identified herein;
7.  Copies of all property inspection reports for the mortgage loan identified herein;
8.  Copies of all broker price opinions for the mortgage loan identified herein;
9.  A current and itemized statement of the amount needed to pay-off the mortgage loan
    identified herein in full;
10. A current and itemized statement of the amount needed to reinstate to a current status the
    mortgage loan identified herein;
11. A copy of all information you have provided to any consumer reporting agency with respect

SER 221

to the status of the mortgage loan identified herein with the 12 month period prior to your receipt of this request for information;

12. A detailed copy of your last two analyses of the escrow account of the mortgage loan identified herein;

13. A copy of the most current mortgage note for the mortgage loan identified herein with endorsement to the current mortgagee;

14. Copies of all loss mitigation rules, policies or procedures that are applicable to the mortgage loan identified herein.

While we look forward to receipt of all of the information outlined above, we are particularly interested in receiving item 4, an exact reproduction of the life of loan mortgage transactional history for this loan, at your earliest opportunity.

Thank you, in advance, for your prompt response to this matter.

Very truly yours,



mortgage

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Nationstar Mortgage
PO BOX 619096
Dallas, TX 75261 - 9741

961A 6000 9832 5117 0004 80

2. Article Number
(Transfer from service label)

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Larry Harry_  ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Larry Harry   0 4 MAY 2015

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

SER 223

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 11024 Balboa Blvd., No. 431, Granada Hills, CA 91344.

A true and correct copy of the foregoing document entitled (*specify*):  <u>DEBTOR'S OBJECTION TO THIRD PROOF OF CLAIM – U.S. BANK, N.A.</u>  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>7/22/2015</u> , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Matthew R Clark    ch11ecf@aldridgepite.com, mrc@ecf.inforuptcy.com, mclark@aldridgepite.com
- Michael Daniels    BkECFnotifications@nationstarmail.com
- Dana M Douglas    dmddouglas@hotmail.com
- Abram Feuerstein    abram.s.feuerstein@usdoj.gov
- Cassandra J Richey    cmartin@pralc.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On (*date*) <u>7/22/2015</u> , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon. Scott Yun
US Bankruptcy Court – Central District of CA
3420 Twelfth St., Ste. 345
Riverside, CA  92501-3819

☒ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>7/22/2015</u> , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 6/5/2015 | DM Douglas | /s/ DM Douglas |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**VIA US MAIL**

American Express
PL Box 981535
El Paso, TX 79998

Chaffey Credit Union
PO Box 700
Upland, CA 91785-0700

HC Credit
HC Processing Center
PO Box 802
Springdale, AR 72765-0802

Lehman Bros. Holdings, Inc., et al.
Additional Claimants: NationStar
US Bank, BAC/Countrywide/AWL
101 Hudson St., 38th Flr.
Jersey City, NJ 07302

Nationstar Mortgage, LLC
PO Box 619096
Dallas, TX  75261-9741

Synchrony Bank/Care Credit
ATTN: Bankruptcy Dept.
PO Box 965061
Orlando, FL 32896-5061

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF SERVICE**

SER 225

**United States Bankruptcy Court**
**Central District of California**
Riverside
**Judge Scott Yun, Presiding**
**Courtroom 302 Calendar**

Thursday, August 20, 2015                                          **Hearing Room   302**

<u>1:30 PM</u>
**6:15-10650**    **Anthony Paul Manrique**                                         **Chapter 11**

| Telephonic Hearing |

**#1.00**    Debtor's Objection to Claim #3 filed by U.S. Bank
National Association

**Matthew R Clark to appear by telephone (858)750-7717**

Docket      45

**Matter Notes:**

**GRANTED:** _____    **DENIED:** _____

**CONT'D. TO:** ___*10/1/15 @ 1:30pm*___

**Briefing filed:** _____

**Opposition filed:** _____

**Reply filed:** _____

**WITHDRAWN:** _____

**Order Lodged by:** _____

**Tentative Ruling:**

Continue to October 1, 2015 at 1:30 p.m. for debtor to cure the service
defects. The debtor failed to give 30 days notice of the hearing on an
objection to claim and failed to serve U.S. Bank under FRBP 7004(h).

APPEARANCES WAIVED.

| **Party Information** |

**Debtor(s):**

Anthony Paul Manrique                              Represented By

SER 226

1  Matthew R. Clark (SBN 271054)
   mclark@aldridgepite.com
2  Todd S. Garan (SBN 236878)
   tgaran@aldridgepite.com
3  **ALDRIDGE PITE, LLP**
   4375 Jutland Drive, Suite 200
4  P.O. Box 17933
   San Diego, CA 92177-0933
5  Telephone: (858) 750-7600
   Facsimile: (619) 590-1385
6
   Attorneys for *Secured Creditor*
7  U.S. Bank National Association, as Trustee for
   Lehman XS Trust Mortgage Pass-Through
8  Certificates, Series 2007-16N

9              **UNITED STATES BANKRUPTCY COURT**

10        **CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

11  | In re | Case No.6:15-bk-10650-SY |
    
12  ANTHONY PAUL MANRIQUE,          Chapter 11

13  Debtor.                          **RESPONSE TO DEBTOR'S
                                     OBJECTION TO PROOF OF CLAIM**
14                                   **NO. 3 FILED BY U.S. BANK
                                     NATIONAL ASSOCIATION**
15

16

17

18        U.S. Bank National Association, as Trustee for Lehman XS Trust Mortgage Pass-

19  Through Certificates, Series 2007-16N ("U.S. Bank") by and through its mortgage loan servicer

20  Nationstar Mortgage, LLC ("Nationstar") (collectively the "Creditor") respectfully submits the

21  following opposition to Anthony Paul Manrique ("Debtor") *Objection to Proof of Claim No. 3*

22  *Filed by U.S. Bank National Association* [Dkt. No. 41] (the "Response"). This Response is

23  supported by the points and authorities cited herein, the Declaration of Nationstar filed

24  concurrently herewith, and the record currently before the Court.

25  /././

26  /././

27  /././

28  /././

SER 227

# I.    **INTRODUCTION**

Anthony Paul Manrique ("<u>Debtor</u>") filed this Objection to Claim to challenge Creditor's rights to enforce its first position security interest encumbering the real property located at 718 Silverwood Avenue, Upland, California 91786 (the "<u>Property</u>"). Although he does not dispute having received over three-hundred and eighty thousand dollars to finance the purchase of the Property, he contends that he is not required to repay the amounts he borrowed. Contrary to Debtor's allegations, there can be no material dispute regarding the enforceability of the note at issue in this Objection to Claim and/or Creditor's rights to assert a claim in this case. Debtor's Objection to Claim must be overruled on several grounds. First, U.S. Bank is the note holder with standing to assert a claim against this estate. This is established by U.S. Bank's possession of the endorsed in blank note. Second, U.S. Bank rightfully established an escrow account due to the Debtor's failure to maintain certain escrow items and properly included an escrow shortage in the Proof of Claim. Finally, Debtor's requests for the Proof of Claim to remove "erroneous amounts" and to provide the basis/calculation for the amounts is nothing more than a fishing expedition as the Objection to Claim does not allege and/or provide any evidence suggesting the amounts in U.S. Bank's Proof of Claim are inaccurate. For the reasons set forth more fully herein, Debtor's Objection to Claim must be overruled.

# II. FACTUAL AND PROCEDURAL SUMMARY[1]

## A.    THE LOAN

On June 27, 2007, Debtor and Alisa Arlene Manrique (collectively, the "<u>Borrowers</u>") executed a promissory note (the "<u>Note</u>") in the original principal sum of $388,000.00, which was made payable to Countrywide Home Loans, Inc. dba America's Wholesale Lender ("<u>Lender</u>"). (*See* Declaration of Nationstar ("<u>Declaration</u>"), ¶5; **Exhibit A**,). The Note is secured by a deed of trust (the "<u>Deed of Trust</u>") encumbering the "<u>Property</u>"). (*See* Declaration, ¶7; **Exhibit B**). The Note and Deed of Trust are collectively referred to hereinafter as the "<u>Loan</u>."

---

[1] Pursuant to Rules 201(b) and 201(d) of the Federal Rules of Evidence, which are made applicable to this proceeding by Rule 9017 of the Federal Rules of Bankruptcy Procedure, Creditor requests that the Court take judicial notice of the documents and other records on file in this case, as referenced herein by Docket Number. References to the dockets are in the following format: BK Dkt. [Number].

**RESPONSE TO DEBTOR'S OBJECTION TO PROOF OF CLAIM**

SER 228

1    Creditor currently holds possession of the Note, which is indorsed and payable in blank.

2    (*See* Declaration, ¶6; **Exhibit A**).

3    The Deed of Trust was assigned to U.S. Bank (*See* Declaration, **Exhibit C**)

4    **B.**  **THE BANKRUPTCY CASE**

5    On January 26, 2015, Debtor commenced this case by filing a voluntary petition for relief

6 under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy

7 Code"). (*See* BK Dkt. 1). Despite the pendency of this case for almost a year, Debtor has yet to

8 obtain Court approval of a disclosure statement, much less confirm a plan of reorganization. (*See*

9 *generally* BK Dkt.)

10    On March 6, 2015, Creditor filed a Proof of Claim (the "Claim") in this case on account

11 of the Loan. (*See* Claims Register, Claim No. 3-1). The Claim reflects that, as of the date of this

12 bankruptcy filing, Debtor failed to make (32) monthly mortgage payments and owed a total of

13 $491,897.50 on the Loan. (*See id.*)

14    On July 22, 2015, Debtor filed his Notice of Objection and Objection to Proof of Claim

15 No. 3 Filed by U.S. Bank National Association ("Objection to Claim").  The Objection to Claim

16 seeks a determination regarding the a determination regarding the validity of the Claim and a

17 request for reimbursement of escrow advances made by Creditor for real property taxes and

18 hazard advances.

19                         **III.**  **LEGAL STANDARD**

20    A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and

21 amount. Fed. R. Bankr. P. 3001(f). It is well settled that a proof of claim is deemed allowed

22 unless a party in interest objects under 11 U.S.C. § 502(a). *Lundell v. Anchor Const. Specialists,*

23 *Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). Upon objection, the proof of claim provides "some

24 evidence as to its validity and amount" and is "strong enough to carry over a mere formal

25 objection without more." *Id.* (citing *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir.

26 1991)(quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15 ed. 1991)). To defeat

27 the claim, the objector must come forward with sufficient evidence and "show facts tending to

28 defeat the claim by probative force equal to that of the allegations of the proofs of claim

**RESPONSE TO DEBTOR'S OBJECTION TO PROOF OF CLAIM**

SER 229

themselves." *Id.* (citing *In re Holm*, 931 F.2d at 623).

## IV.    ARGUMENT

### A.    DEBTOR HAS NOT REBUTTED THE PRESUMPTIVE VALIDITY OF THE CLAIM

#### 1.   *The Claim is Presumptively Valid*

As an initial matter, the record reflects that the Claim was filed in accordance with Federal Rule of Bankruptcy Procedure 3001.[2] More specifically, the Claim was: (1) filed on the Court's Official B10 Form, as required by Rule 3001(a); (2) executed by U.S. Bank's authorized agent (i.e., its counsel), thereby satisfying Rule 3001(b); (3) accompanied by a duplicate of the writing on which the Claim is based (i.e., the Note) in accordance with Rule 3001(c)(1); and (4) accompanied by evidence that U.S. Bank's security interest in the Property has been perfected (i.e., a copy of the recorded Deed of Trust), thereby satisfying Rule 3001(d). Because the Claim was filed in accordance with Rule 3001, it constitutes *prima facie* evidence of both the validity and amount of the claim. *See* Fed. R. Bankr. P. 3001(f). Debtor has not presented any evidence in support of the Objection that is sufficient to rebut the presumptive validity of the Claim.

#### 2.   *The Constitutional Standing Principles Do Not Apply to Creditor*

Admittedly, the Ninth Circuit Bankruptcy Panel (the "Panel") has held that "standing is a prerequisite to the evidentiary benefits of Rule 3001(f)." *See Veal v. Am. Home Mortgage Servicing, Inc. (In re Veal)*, 450 B.R. 897, 922 (9th Cir. BAP 2011). Nevertheless, this Court is not bound by the decisions of the Panel. *See CASC Corp. v. Milner (In re Locke)*, 180 B.R. 245, 254 (Bankr. C. D. Cal. 1995) (stating that BAP decisions are not binding on bankruptcy courts). Creditor submits that the constitutional standing requirements do not supplement the evidentiary presumptions contained in Rule 3001(f). Reaching this conclusion requires an analysis of constitutional standing principles. Article III of the Constitution confines the federal courts to

---

[2] Effective December 1, 2011, Federal Rule of Bankruptcy Procedure 3001(c) was amended "to prescribe with greater specificity the supporting information required to accompany certain proofs of claims and, in cases in which the debtor is an individual, the consequences of failing to provide the required information." *See* Fed. R. Bankr. P. 3011, advisory committee's notes. As part of this amendment, the prior subdivision (c) was re-designated as subdivision (c)(1) and subdivision (c)(2) was added to require additional information to accompany proofs of claim filed in cases in which the debtor is an individual. Because amended Rule 3001(c) was not in effect at the time Creditor filed its Claim, the additional requirements under the new version of the rule do not apply to the Claim.

1    adjudicating actual "cases" or "controversies." *Allen v. Wright*, 468 U.S. 737, 750 (1984). It

2    requires a litigant to have standing to invoke the power of a federal court. *Id.* "In essence the

3    question of standing is whether the litigant is entitled to have the court decide the merits of the

4    dispute or of particular issues." *Id.* at 750-51 (citation omitted).

5           Without question, the filing of a proof of claim subjects a claimant to the jurisdiction of

6    the bankruptcy court. *See e.g., In re Skyline Lumber Co.*, 311 F.Supp. 112 (W.D. Va. 1970). This

7    being said, the filing of a claim does not amount to a creditor's invocation of the court's power to

8    decide a case or controversy. To the contrary, the claim is deemed allowed if not objected to, *see*

9    11 U.S.C. § 502(a), and an actual dispute does not arise unless and until an interested party

10   objects to the claim. *See United States v. Levoy (In re Levoy)*, 182 B.R. 827, 834 (9th Cir. BAP

11   1995) (noting that it is the objection which initiates a contested matter, governed by Fed. R.

12   Bankr. P. 9014); *see also In re State Line Hotel, Inc.*, 323 B.R. 703, 710 (9th Cir. BAP 2005),

13   *vacated on other grounds and remanded*, 242 F. App'x 460 (9th Cir. 2007) (declining to find

14   that the filing of an objection to claim is akin to an answer because it is the objection that

15   initiates the contested matter). Since Debtor is the party invoking the Court's power to decide a

16   case or controversy, the constitutional and prudential standing doctrines apply to Debtor, not

17   Creditor. Holding otherwise would eliminate Rule 3001(f)'s presumption with respect to the

18   *validity* of a claim filed in accordance with the rule. In light of the foregoing, Creditor is entitled

19   to the *prima facie* presumption established by Rule 3001(f). Because Debtor has failed to submit

20   any evidence to rebut this presumption, the Objection should be overruled.

21

22   **B.      THE OBJECTION SHOULD BE OVERRULED BECAUSE CREDITOR HAS
           STANDING TO ENFORCE THE NOTE**

23          Even if the Court were inclined to follow the finding in *Veal* that standing is a

24   prerequisite to the presumptions under Rule 3001(f), the Objection is nevertheless baseless

25   because Creditor has standing to file a claim in this case. The starting point for reaching this

26   conclusion is section 501 of the Bankruptcy Code, which authorizes a "creditor" to file a proof of

27   claim. *See* 11 U.S.C. § 501(a). A "creditor" is defined under the Bankruptcy Code as, among

28   other things, an "entity that has a 'claim' against the debtor that arose at the time of or before the

1    order for relief concerning the debtor." *See* 11 U.S.C. § 101(10). In turn, the Bankruptcy Code

2    defines "claim" as a "*right to payment*, whether or not such right is reduced to judgment,

3    liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

4    equitable, secured, or unsecured." *See* 11 U.S.C. § 101(5)(A) (emphasis added). Thus, as a

5    matter of bankruptcy law, Creditor is entitled to assert a claim in this case if it has a "right to

6    payment" from Debtor.

7          Ultimately, state substantive law controls the rights of note and lienholders in bankruptcy

8    proceedings. *See United States v. Butner*, 440 U.S. 48, 54-55 (1979) (nature and extent of

9    property interests in bankruptcy are determined by applicable state law). Therefore, the Court

10    must look to California law to determine whether U.S. Bank has a "right to payment" from

11    Debtor. The provisions of the California Commercial Code, Cal. Comm. Code § 1101, *et seq.*,

12    govern the rights of parties to negotiable instruments. For the reasons explained below, U.S.

13    Bank has a "right to payment" under the Note pursuant to the California Commercial Code.

14         *1.  The Note is a Negotiable Instrument*

15          Under California law, a "negotiable instrument" is defined as:

16

17         …an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it is all of the following:

18

19         (1)    Is payable to bearer or to order at the time it is issued or first comes into possession of a holder.

20         (2)    Is payable on demand or at a definite time.

21         (3)    Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in

22                addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain,

23                orprotect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or

24                dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

25    *See* Cal. Comm. Code § 3104(a); *see also Growth Equities Corp. v. Freed*, 227 Cal. App. 3d

26    506, 509, 277 Cal. Rptr. 848, 850 (Cal. Ct. App. 1991) (citing Cal. Comm. Code § 3104(a)(1)).

27    The Note unquestionably satisfies each of these elements. First, the Note satisfies the

28    requirements of Cal. Comm. Code § 3104(a)(1) as it was indorsed in blank. Second, the Note

SER 232

1   satisfies the requirements of section 3104(a)(2) because it is payable at a definite time (i.e., the

2   Note specifically provides that it is due and payable on July 1, 2037). Finally, the Note complies

3   with section 3104(a)(3) as it does not require Debtor or his spouse to undertake any act aside

4   from the payment of money (with the exception of maintaining and protecting real property to

5   secure payment, which is expressly allowed under the statute). *See* Cal. Comm. Code § 3106

6   (providing that "[a] promise is not made conditional…by a reference to another writing for a

7   statement of rights with respect to collateral, prepayment, or acceleration…").

8           *2.   Creditor Qualifies as a "Holder"*

9           Having established that the Note is a negotiable instrument under California law, U.S.

10  Bank turns its analysis to its rights under the California Commercial Code. As a negotiable

11  instrument, the Note may be enforced by any person[3] that qualifies as the "holder." *See* Cal.

12  Comm. Code § 3301. A person in possession of an instrument qualifies as the "holder" of the

13  instrument if the instrument is payable to that person or is payable to the bearer. *See* Cal. Comm.

14  Code § 1201(21)(a). An instrument is payable to the bearer if it does not state a payee. *See* Cal

15  Comm. Code § 3109(a)(2). Here, the Note is payable to bearer because it does not state a payee.

16  Because U.S. Bank is in possession of the bearer instrument, it qualifies as a "holder" and is

17  entitled to enforce the Note. *See* Cal. Comm. Code §§ 3301, 1201(a)(21)(a). It follows that U.S.

18  Bank has standing to file a claim in this case. *See Veal,* 450 B.R. at 922 (holding that "a 'person

19  entitled to enforce the note,' as defined in U.C.C. § 3–301, has the requisite standing to file a

20  proof of claim in a bankruptcy case."). Importantly, the ownership interest in the Loan does not

21  alter this analysis. Rather, Debtor's payment to the loan servicer discharges his obligations under

22  the Note notwithstanding what entity has an ownership interest in the Loan. *See* Cal. Comm.

23  Code § 3602(a) (providing that an instrument is paid to the extent payments are made to the

24  entity entitled to enforce it); Cal. Comm. Code § 3301 ("A person may be a person entitled to

25  enforce the instrument even though the person is not the owner of the instrument…").

26  /././/

27  _____

28      [3] Cal. Comm. Code § 1201(27) defines "person" as "an individual, corporation, business trust, estate, trust,
partnership, limited liability company, association, joint venture, government, governmental subdivision, agency or
instrumentality, public corporation or any other legal or commercial entity."

### 3. The Indorsement on the Note Is Valid

The indorsement on the Note is presumptively valid and authorized. More specifically, the California Commercial Code provides, in pertinent part:

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the *burden of establishing* validity is on the person claiming validity, but the signature is *presumed* to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature…

Cal. Comm. Code § 3308(a) (emphasis added). "Burden of establishing" means "the burden of persuading the triers of fact that the existence of the fact is more probable than its non-existence." Cal. Comm. Code § 1201(8). "Presumed" means "that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its non-existence." Cal. Comm. Code § 1201(31).

Assuming *arguendo* that Debtor had properly denied the authenticity of the indorsements on the Note, they are nevertheless presumptively valid. Notably, this is not an action to enforce the liability of indorsers on the Note. *See* Cal. Comm. Code § 3415(a)(describing the obligations and potential liability of the indorser of a promissory note). As a consequence, the evidentiary presumption prescribed by section 3308(a) is applicable in this case. *See* Cal. Comm. Code § 3308(a) ("If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer."). Stated another way, the indorsements on the Note are presumptively authentic and authorized, and Debtor has the burden of introducing evidence that would support a finding that they were not. *See* Cal. Comm. Code § 1201(31). Debtor has not satisfied his burden of rebutting this evidentiary presumption.

/././

/././

SER 234

*4. The Assignment is Irrelevant*

Pursuant to the Objection to Claim, Debtor contends that the assignment "does not represent the chain of title." (*See* Opposition, p. 2). Debtor's focus on the assignment of the Deed of Trust is misguided. Indeed, "the critical issue for…purposes of judging allowance of a claim is who is the 'person entitled to enforce the Note.'" *Allen v. U.S. Bank, N.A. (In re Allen)*, 472 B.R. 559, 569 (9th Cir. BAP 2012). The determination of whether Creditor is a "person entitled to enforce" the Note is governed exclusively by the California Commercial Code, which does not require an assignment of a trust deed as a condition to qualifying as a "person entitled to enforce" a promissory note. *See* Cal. Comm. Code § 3301. In any event, the assignment of the Note to Creditor carried with it the beneficial interest under the Deed of Trust, even without a separate assignment of the Deed of Trust. *See* Cal. Civ. Code § 1084 ("The transfer of a thing transfers also all its incidents, unless expressly excepted…").; Cal. Civ. Code, § 2936 ("The assignment of a debt secured by mortgage carries with it the security"); *Santens v. Los Angeles Finance Co.*, 91 Cal. App. 2d 197, 201, 204 P.2d 619 (4th Dist. 1949) ("the transfer of the note carried with it the security"). As a consequence, the validity of any assignment of the Deed of Trust has no bearing on the determination of whether Creditor has the right to enforce the Note and/or Deed of Trust.

**C.    CREDITOR HAS THE CONTRACTUAL RIGHT TO ADVANCE FUNDS FOR REAL PROPERTY TAXES AND HAZARD INSURANCE**

Pursuant to paragraphs 3 and 9 of the Deed of Trust and the Real Estate Settlement Procedures Act ("RESPA"), U.S. Bank is entitled to establish an escrow account for future insurance and/or real estate taxes on the Property. (*See* Declaration, ¶7; **Exhibit B, ¶ 3, 9**). The Deed of Trust also entitles Bank to maintain a minimum balance, or "RESPA cushion," equal to approximately 1/6 of the amount disbursed on the Debtor's loan by U.S. Bank and/or its loan servicer for insurance and taxes. (*See id.*) It further provides, in pertinent part, that:

> If there is a shortage of [F]unds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

1  (*See id*). In the bankruptcy context, pre-petition escrow shortage amounts constitute a pre-

2  petition "claim" within the meaning of 11 U.S.C. § 101(5). *In re Rodriguez,* 629 F.3d 136, 142

3  (3d Cir.2010), *cert. denied* --- U.S. ---, 132 S.Ct. 573 (2011).

4  Once Debtor filed his instant bankruptcy case, his mortgage account underwent an annual

5  escrow account analysis to: (1) determine the appropriate target balances; (2) compute the

6  monthly payments for the next escrow account computation year and any deposits needed to

7  establish or maintain the account; and (3) determine whether shortages, surpluses or deficiencies

8  existed. To calculate the Escrow Shortage, U.S. Bank (through its authorized servicer,

9  Nationstar) utilized the regulations promulgated by the Secretary of the Department of Housing

10  and Urban Development, which are set forth in 24 CFR § 3500.1 *et seq*.

11  The regulations provide that, in conducting an escrow account analysis, "[t]he

12  servicer…assumes that the borrower will make monthly payments equal to one-twelfth of the

13  estimated total annual escrow account disbursements." 24 C.F.R. § 3500.17(d)(1)(i)(A). Then the

14  servicer "examines the monthly trial balances and adds to the first monthly balance an amount

15  just sufficient to bring the lowest monthly trial balance to zero." 24 C.F.R. § 3500.17(d)(1)(i)(B).

16  It then "adds to the monthly balances the permissible cushion." 24 C.F.R. § 3500.17(d)(1)(i)(C).

17  An escrow shortage is defined as the "amount by which a current escrow account balance falls

18  short of the target balance at the time of escrow analysis."  24 C.F.R. § 3500.17(b). Ultimately,

19  the target balance and permissible cushion for an escrow account should equal (or be less than)

20  one-sixth of the estimated total annual escrow disbursements, or two monthly escrow payments

21  (excluding PMI). (*See* 24 C.F.R. § 3500.17(d)(1)(i)).

22  In the present case, the Proof of Claim also contained an Annual Escrow Account

23  Disclosure Statement, which reflected the total escrow shortage as of the Debtors' bankruptcy

24  filing date was $1,747.00 (the "Escrow Shortage"). This Escrow Shortage was calculated in

25  accordance with the foregoing regulations by adding $649.02, which comprised the servicer

26  escrow advance balance as of the Debtors' bankruptcy filing date, plus $1,097.98, which is the

27  minimum escrow balance for this Loan required by RESPA.

28  /././

- 10 -                                    CASE NO. 6:15-bk-10650-SY

**RESPONSE TO DEBTOR'S OBJECTION TO PROOF OF CLAIM**

SER 236

1    In sum, Nationstar determined that there was an escrow shortage on the Debtor's loan in

2    the amount of $1,747.00, which is the amount included in the Proof of Claim. The inclusion of

3    the Escrow Shortage in its Proof of Claim was permissible, *see In re Rodriguez,* 629 F.3d at 142

4    (3d Cir.2010), and Debtor is indisputably obligated to pay the amount pursuant to the terms of

5    the Deed of Trust and federal law. The Debtor has otherwise failed to provide any evidence

6    refuting the remaining balances set forth in the Proof of Claim.

7                        **V.    CONCLUSION**

8    For the reasons set forth herein, the Objection to Claim must be overruled and Debtor

9    should be ordered to pay Creditor's reasonable attorneys' fees and costs.

10    **WHEREFORE**, Creditor respectfully requests:

11    1.    That the Court overrule the Objection to Claim and allow the Claim in its entirety;

12    2.    Reasonable attorneys' fees and costs, subject to proof; and

13    3.    Such other and further relief as the Court deems just and proper.

14                        Respectfully submitted,

15                        ALDRIDGE PITE, LLP

16

17    Dated:  September 23, 2015        /s/ Matthew R. Clark (CA SBN 271054)
                                        MATTHEW R. CLARK
18                                      Attorneys for U.S. Bank National
                                        Association, as Trustee for Lehman  XS
19                                      Trust Mortgage Pass-Through Certificates,
                                        Series 2007-16N
20

21

22

23

24

25

26

27

28

- 11 -                    CASE NO. 6:15-bk-10650-SY
**RESPONSE TO DEBTOR'S OBJECTION TO PROOF OF CLAIM**

SER 237

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

A true and correct copy of the foregoing document entitled (*specify*): <u>Response to Debtor's Objection to Proof of Claim</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>September 23, 2015</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Debtor's Attorney:** Dana M. Douglas  dmddouglas@hotmail.com

**U.S. Trustee:** ustpregion16.rs.ecf@usdoj.gov; abram.s.feuerstein@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) <u>September 23, 2015</u> I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Anthony Paul Manrique
718 Silverwood Ave.
Upland, CA 91786

Honorable Scott H. Yun
Central District of California - Riverside Division
3470 Twelfth Street
Riverside, CA 92501

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 23, 2015 | JUSTIN WADE | /s/ JUSTIN WADE |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1  Matthew R. Clark (SBN 271054)
   mclark@aldridgepite.com
2  Todd S. Garan (SBN 236878)
   tgaran@aldridgepite.com
3  **ALDRIDGE PITE, LLP**
   4375 Jutland Drive, Suite 200
4  P.O. Box 17933
   San Diego, CA 92177-0933
5  Telephone: (858) 750-7600
   Facsimile: (619) 590-1385
6
   Attorneys for *Secured Creditor*
7  U.S. Bank National Association, as Trustee for
   Lehman XS Trust Mortgage Pass-Through
8  Certificates, Series 2007-16N

9              **UNITED STATES BANKRUPTCY COURT**

10        **CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

11  In re                                │  Case No.6:15-bk-10650-SY

12  ANTHONY PAUL MANRIQUE AKA            │  Chapter 11
    ANTHONY MANRIQUE,
13                                       │  **DECLARATION OF NATIONSTAR**
                Debtors.                 │  **MORTGAGE LLC IN SUPPORT OF**
14                                       │  **ITS RESPONSE TO DEBTOR'S**
                                         │  **OBJECTION TO PROOF OF CLAIM**
15                                       │  **NO. 3 FILED BY U.S. BANK**
                                         │  **NATIONAL ASSOCIATION**
16
17
18  / / /
19  / / /
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

                              - 1 -              CASE NO. 6:15-bk-10650-SY
                          **DECLARATION**

SER 239

1    I, Hazel Salinas            , declare:

2    1.    I am over 18 years of age and am employed as a Assistant Secretary   of

3    Nationstar Mortgage LLC ("Nationstar").   In such capacity, I am authorized to make this

4    declaration regarding the loan described below (the "Loan").  If called to testify in this matter, I

5    would testify under oath as to the following:

6    2.    I have access to and am familiar with Nationstar's books and records regarding

7    the Loan, including Nationstar's servicing records and copies of the applicable Loan documents.

8    I am familiar with the manner in which Nationstar maintains its books and records, including

9    computer records relating to the servicing of the Loan.  Nationstar's records are made at or near

10   the time of the occurrence of the matters set forth in such records, by an employee or

11   representative with knowledge of the acts or events recorded.  Such records are obtained, kept

12   and maintained by Nationstar in the regular course of Nationstar's business.  Nationstar relies on

13   such records in the ordinary course of its business.

14   3.    Nationstar has the contractual right and responsibility to service the Loan on U.S.

15   Bank National Association, as Trustee for Lehman XS Trust Mortgage Pass-Through

16   Certificates, Series 2007-16N's ("U.S. Bank") behalf.

17   4.    As the loan servicer, Nationstar acts as an agent for U.S. Bank and is generally

18   responsible for the administration of the Loan until the loan is paid in full, assigned to another

19   creditor, or the servicing rights are transferred. Administering the Loan includes, among other

20   things, sending monthly payment statements, collecting monthly payments, maintaining records

21   of payments and balances, collecting and paying taxes and insurance (and managing escrow and

22   impound funds), remitting monies to U.S. Bank, following up on loan delinquencies, home loan

23   workouts and home retention programs, and other general customer service functions. Further, in

24   the event of a default under the terms of the Loan, Nationstar is authorized by U.S. Bank and

25   under applicable law to enforce the terms of the Loan.

26   /./.

27   /./.

28   /./.

- 2 -
DECLARATION                                    CASE NO. 6:15-bk-10650-SY

SER 240

1    5.    According to Nationstar's books and records, the Loan is evidenced by a

2    promissory note executed by Anthony Paul Manrique and Alisa Arlene Manrique ("Debtors")

3    and dated June 27, 2007, in the original principal amount of $388,000.00 (the "Note"),  which

4    was made payable to Countrywide Home Loans, Inc. dba America's Wholesale Lender

5    ("Lender"). *See* Exhibit A.

6    6.    Nationstar's records reflect that U.S. Bank holds possession of the original Note.

7    The Note is indorsed and payable in blank. *See* Exhibit A.

8    7.    The Note is secured by a deed of trust (the "Deed of Trust") encumbering the real

9    property commonly known as 718 Silverwood Avenue, Upland, California 91786 (the

10   "Property"). The Deed of Trust reflects that it was duly recorded. *See* Exhibit B.

11   8.    Copies of the Note and Deed of Trust which are attached hereto as Exhibits A and

12   B are true and correct copies of said documents contained in Nationstar's business records.

13   9.    The Deed of Trust was assigned to U.S. Bank.  A copy of the Assignment of

14   Deed of Trust is attached hereto as Exhibit C.

15   10.   On or about March 6, 2015, U.S. Bank filed a Proof of Claim against Debtors'

16   bankruptcy estate (the "Proof of Claim"). The Proof of Claim identified Nationstar as the entity

17   where payments and notices should be sent, contained arrearage and payoff figures consistent

18   with this declaration, and contained a copy of the Note.

19   /././

20   /././

21   /././

22   /././

23   /././

24   /././

25   /././

26   /././

27   /././

28   /././

- 3 -

**DECLARATION**

CASE NO. 6:15-bk-10650-SY

11.    As of January 26, 2015, the amount necessary to cure the default owed under the Note and Deed of Trust was $45,117.94, as follows:

| Payments | | | |
|---|---|---|---|
| **Number of Payments** | **Payment Amount** | **Payment Dates** | **Total** |
| 2 | $2,648.88 | 06/01/12 to 07/01/12 | $5,297.76 |
| 12 | $1,254.73 | 08/01/12 to 07/01/13 | $15,056.76 |
| 12 | $1,115.32 | 08/01/13 to 07/01/14 | $13,383.84 |
| 6 | $1,022.37 | 08/01/14 to 12/01/14 | $6,134.22 |
| **Corporate Advances/Lender Paid Expenses (Itemized)** | | | |
| Attorney's fees incurred 9/14/2014 | | | $500.00 |
| Title Costs incurred 7/8/14 and 9/22/14 | | | $1,993.00 |
| Recording fees incurred 9/11/14 | | | $92.20 |
| Property inspection fees | | | $150.00 |
| Escrow shortage | | | $1,747.00 |
| Mailing Costs | | | $13.16 |
| Bankruptcy Attorney's Fees | | | $750.00 |
| *Less Suspense:* | | | $0.00 |
| **Contractual Reinstatement as of January 26, 2015:** | | | **$45,117.94** |

12.    As of January 26, 2015, the total amount owed under the Note and Deed of Trust was approximately $492,647.50, as follows:

| **DESCRIPTION** | **AMOUNT** |
|---|---|
| Unpaid Principal Balance | $446,127.09 |
| Interest | $42,373.03 |
| Corporate Advances/Lender Paid Expenses | $4,147.38 |
| **Total Due as of August 5, 2015:** | **$492,647.50** |

13.    The Proof of Claim also contained an Annual Escrow Account Disclosure Statement, which reflected the total escrow shortage as of the Debtors' bankruptcy filing date was $1,747.00 (the "Escrow Shortage"). This Escrow Shortage was calculated by adding $649.02, which comprised the servicer escrow advance balance as of the Debtors' bankruptcy filing date, plus $1,097.98, which is the minimum escrow balance for this Loan required by RESPA.

/ / /

/ / /

/ / /

/ / /

/ / /

SER 242

14.     The Proof of Claim also contains Post-Petition Attorneys' Fees and Costs listed in Part 2 of the Mortgage Proof of Claim Attachment include the post-petition preparation and filing of this Proof of Claim; obtaining and reviewing the Chapter 11 Plan; and the preparation, filing and service of a Request for Courtesy Notice to monitor this bankruptcy. These post-petition fees are included in the Proof of Claim so that the subject loan is current upon completion of the Plan

15.     Nationstar has retained counsel to represent it in this matter, and is thereby incurring attorneys' fees and expenses in this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __19__ day of September , 2015, at Lewisville___ , Texas____ .

_____
*Signature of Declarant*

Hazel Salinas
_____
*Typed Name of Declarant*

SER 243

Prepared by: VERONICA RIOS

LOAN

# PAYMENT ADVANTAGE
# FIXED/ADJUSTABLE RATE NOTE
### (LIBOR One Year Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. FOR A LIMITED TIME I WILL HAVE A PAYMENT OPTION THAT IS LESS THAN THE FULL AMOUNT OF INTEREST DUE. IF I CHOOSE THIS OPTION, THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED.**
**THIS NOTE CONTAINS A PREPAYMENT PENALTY.**

| JUNE 27, 2007 | EL CAJON | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

718 SILVERWOOD AVENUE, UPLAND, CA 91786-4353
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 388,000.00          ("Principal"), plus interest, to the order of Lender. The Principal may increase as called under the terms of this Note but will not exceed          115  percent of the Principal amount I originally borrowed. This is called the "Maximum Negative Amortization Cap." If I default under this Note or the Security Instrument, then default charges may be the Maximum Negative Amortization Cap to be exceeded. Lender is
Countrywide Home Loans, Inc. dba America's Wholesale Lender
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or its successors or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

### (A)  Fixed Interest Rate
Interest will be charged on unpaid Principal until the full amount has been paid. Interest will initially accrue at a yearly rate of  7.125 %. This is my initial fixed interest rate and is the rate for determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

### (B)  Adjustable Interest Rate
The initial fixed interest rate I owe will change to an adjustable interest rate on the first          day of JULY, 2012          and the adjustable interest rate will change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

### (C)  Index
Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Rate Change Date is called the "Current Index."





If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Adjustable Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new adjustable interest rate by adding      2.250 % (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new adjustable interest rate until the next Interest Rate Change Date. My adjustable interest rate will never be greater than      12.125 % or lower than the Margin.

**(E) Limits on Interest Rate Changes**

The interest rate in effect at the first Interest Rate Change Date will not be greater than      12.125 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Interest Rate Change Date by more than 2 percentage points from the rate of interest in effect for the preceding 12 months.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the first       day of each month beginning on AUGUST 01, 2007      . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If I still owe amounts under this Note on JULY 01, 2037      , I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

**(B) Minimum Payment**

The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. The Minimum Payment is calculated three (3) different ways during the loan term:

(i)   Until JULY 01, 2017       ("Recast Date") or until the Maximum Negative Amortization Cap is reached, whichever is earlier, the Minimum Payment will be calculated using the then-current interest rate (either fixed or adjustable as described in Section 2) minus      5.000 percentage points. The result of this calculation is called the "Minimum Payment Rate." The Minimum Payment Rate can never be lower than 1%. Since the Minimum Payment Rate is less than the interest rate applied to my unpaid Principal balance, the Minimum Payment will be insufficient to pay the interest portion of the monthly payment and no portion is applied to Principal. **When I make a Minimum Payment, which is based on the Minimum Payment Rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."**

(ii)   If the unpaid Principal balance reaches the Maximum Negative Amortization Cap prior to the Recast Date, my new Minimum Payment will be the amount that would pay only the interest portion of the monthly payment based upon the then-current interest rate, which changes in accordance with Section 2. This is the Minimum Payment in effect until the Recast Date.

(iii)   After the Recast Date and for the remainder of the loan term, the Minimum Payment will be the monthly payment amount necessary to pay the loan off, in full, at the Maturity Date in substantially equal payments based on the then-current interest rate, which changes in accordance with Section 2.

**(C) Initial Monthly Minimum Payment**

Each of my initial monthly Minimum Payments until the first Interest Rate Change Date will be in the amount of U.S. $1,458.50      .

**(D) Monthly Payment Changes**

Changes in my monthly payment will be the result of changes in the unpaid Principal balance of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 2 and 3 of this Note.

EXHIBIT A

LOAN #

**(E)   Additions to My Unpaid Principal**

For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

**(F)   Payment Options**

Until the Recast Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") if they are **greater** than the Minimum Payment. The Payment Options are calculated using the interest rate in accordance with Section 2. The following Payment Options may be provided:

(i)   **Interest Only Payment:** the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)   **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii)   **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are **greater** than the Minimum Payment. If the Maximum Negative Amortization Cap is reached, then the Payment Options available will be the Amortized Payment and the 15 Year Amortized Payment. Upon the Recast Date I will no longer have Payment Options and I will be required to pay the Amortized Payment, which becomes the Minimum Payment as described in Section 3(B)(iii).

**4.   NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction that could result from my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000 % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

**(B)   Default**

If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

SER 246

EXHIBIT A

LOAN #:

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees. If I default under this Note or the Security Instrument then default charges may cause the Maximum Negative Amortization Cap to be exceeded.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  DOCUMENT CORRECTION**

In the event that Note Holder at any time discovers that this Note, Security Instrument, Addenda, Rider or any other document related to this loan is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan, or otherwise contains an error, such as a clerical mistake, calculation error, computer error, printing error, electronic transmission error, or similar error, I agree, upon notice from Note Holder, to re-execute any documents that are necessary to replace or correct any such documents and return them within ten (10) days of receipt. I also agree that I will not hold Lender responsible for any damages which result from any such error.

**12.  SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

(A)  Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests

SER 247

LOAN #: ▇▇▇▇▇▇▇

transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B)** When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument described in Section 12(A) above shall then cease to be in effect, and Paragraph 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
ANTHONY PAUL MANRIQUE                                                    - Borrower

_____
ALISA ARLENE MANRIQUE                                                    - Borrower

_____
                                                                          - Borrower

_____
                                                                          - Borrower

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC., A NEW YORK CORPORATION
DOING BUSINESS AS AMERICA'S WHOLESALE LENDER

BY: _____
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

Prepared by: VERONICA RIOS

**Countrywide Home Loans, Inc. dba America's Wholesale Lender**

DATE:       06/27/2007
BORROWER: ANTHONY PAUL MANRIQUE
CASE #:
LOAN #:     ████████████
PROPERTY ADDRESS: 718 SILVERWOOD AVENUE
                  UPLAND, CA 91786-4353

# PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated   JUNE 27, 2007          , and is incorporated into and amends and supplements the Note of the same date (the "Note") given by me to
Countrywide Home Loans, Inc. dba America's Wholesale Lender
(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "Borrower's Right to Prepay" is replaced with the following new section:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note.

My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

● Multistate Prepayment Penalty Addendum
1E296-XX (09/06)(d/l)                          Page 1 of 2

**EXHIBIT A**

LOA

If within the first TWELVE months after the execution of this Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original Principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeds twenty (20) percent of the original Principal amount of this Note.  Interest will be calculated using the rate in effect at the time of prepayment.

All other terms and conditions of the above referenced Note remain in full force and effect.

_____     Borrower
ANTHONY PAUL MANRIQUE

_____     Borrower
ALISA ARLENE MANRIQUE

_____     Borrower

_____     Borrower

**EXHIBIT B**



RECORDING REQUESTED BY:
SOUTHLAND TITLE OF SAN DIEGO

Recording Requested By:
J. FOX

ARLENEMANR AP

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
VERONICA RIOS

*Recorded in Official Records, County of San Bernardino*

**LARRY WALKER**
Auditor/Controller – Recorder

602 Southland Title of San Diego

Doc#: **2007 – 0398688**

7/06/2007
8:00 AM
BN

| Titles: | 1 | Pages: | 22 |
|---|---|---|---|
| Fees | | | 73.00 |
| Taxes | | | 0.00 |
| Other | | | 0.00 |
| PAID | | | $73.00 |

———————— [Space Above This Line For Recording Data] ————————

[Escrow/Closing #]                    [Doc ID #]

## DEED OF TRUST
MIN

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated JUNE 27, 2007 , together with all Riders to this document.
**(B) "Borrower"** is
ANTHONY PAUL MANRIQUE, AND ALISA ARLENE MANRIQUE, HUSBAND AND WIFE AS JOINT TENANTS

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

VMP® -6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291    Form 3005 1/01
CONV/VA




SER 251

EXHIBIT B

DOC ID #: ████████

Borrower's address is
718 SILVERWOOD AVENUE, UPLAND, CA 91786-4353
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
Countrywide Home Loans, Inc. dba America's Wholesale Lender
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
**(D) "Trustee"** is
ReconTrust Company, N.A
225 West Hillcrest Dr., MSN TO-02, Thousand Oaks, CA 91360
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this
Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated JUNE 27, 2007 . The
Note states that Borrower owes Lender
THREE HUNDRED EIGHTY EIGHT THOUSAND and 00/100

Dollars (U.S. $ 388,000.00 ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than JULY 01, 2037 .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

SER 252

DOC ID #:

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY          of          SAN BERNARDINO          :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
LOT(S) 3 OF TRACT NO. 6654, IN THE CITY OF UPLAND, COUNTY SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 84 PAGE(S) 90 AND 91, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Parcel ID Number: 1007221120000                    which currently has the address of
                    718 SILVERWOOD AVENUE, UPLAND
                    [Street/City]
California 91786-4353 ("Property Address"):
        [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(CA) (0207)          CHL (08/05)          Page 3 of 16          Form 3005 1/01

SER 253

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

SER 254

**EXHIBIT B**

DOC I␢

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

SER 255

**EXHIBIT B**

DOC ID

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

SER 256

EXHIBIT B

DOC ID ███████████

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

SER 257

**EXHIBIT B**

DOC ID #

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

SER 258

DOC ID # ████████████

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

SER 259

DOC ID ▮▮▮▮▮▮▮▮▮▮▮

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

SER 260

DOC ID

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

SER 261

DOC ███████████████████

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

SER 262

EXHIBIT B

DOC ██████████████████████

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

   **21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

   Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

   Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

   NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

   **22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

SER 263

**EXHIBIT B**

DOC ID

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

SER 264

**EXHIBIT B**

DOC ID ████████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
ANTHONY PAUL MANRIQUE                    -Borrower

_____ (Seal)
ALISA ARLENE MANRIQUE                    -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

SER 265

DOC ID #

State of California
County of San Bernardino

On 10/29/07 _____ before me, Ana Brown Notary Public _____
} ss.
personally appeared

Anthony Paul Manrique
Alice Arlene Manrique

_____ , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



_____ (Seal)

ANA BROWN
Commission # 1627136
Notary Public - California
Riverside County
My Comm. Expires Dec 6, 2009

VMP® -6A(CA) (0207)    CHL (08/05)    Page 16 of 16    Form 3005  1/01

SER 266

**EXHIBIT B**

# PAYMENT ADVANTAGE
# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One Year Index - Rate Caps)

[Escrow/Closing #]        [Doc ID #]

THIS FIXED/ADJUSTABLE RATE RIDER is made this TWENTY-SEVENTH day of
JUNE, 2007       , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower")
to secure Borrower's Payment Advantage Fixed/Adjustable Rate Note (the "Note") to
Countrywide Home Loans, Inc. dba America's Wholesale Lender

("Lender") of the same date and covering the property described in the Security Instrument and located at:

718 SILVERWOOD AVENUE
UPLAND, CA 91786-4353
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE FIXED INTEREST RATE TO AN
ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT THE ADJUSTABLE INTEREST
RATE CAN CHANGE AT ANY ONE TIME. FOR A LIMITED TIME THERE WILL BE A PAYMENT
OPTION THAT IS LESS THAN THE FULL AMOUNT OF INTEREST DUE. IF THIS PAYMENT
OPTION IS CHOSEN, THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE
AMOUNT ORIGINALLY BORROWED.**

### THE NOTE CONTAINS A PREPAYMENT PENALTY.

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

**A.   INTEREST AND PAYMENTS**
The Note provides for changes in the interest rate and the monthly payments, as follows:

• Payment Advantage Fixed/Adjustable Rate One Year LIBOR Rider
1E680-XX (12/06)(d/i)              Page 1 of 6



**EXHIBIT B**

DOC

## 2.   INTEREST
### (A)   Fixed Interest Rate
Interest will be charged on unpaid Principal until the full amount has been paid. Interest will initially accrue at a yearly rate of    7.125 %. This is my initial fixed interest rate and is the rate for determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

### (B)   Adjustable Interest Rate
The initial fixed interest rate I owe will change to an adjustable interest rate on the first                 day of JULY, 2012              and the adjustable interest rate will change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

### (C)   Index
Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Rate Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D)   Calculation of Adjustable Interest Rate Changes
Before each Interest Rate Change Date, the Note Holder will calculate my new adjustable interest rate by adding    2.250 % (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new adjustable interest rate until the next Interest Rate Change Date. My adjustable interest rate will never be greater than    12.125 % or lower than the Margin.

### (E)   Limits on Interest Rate Changes
The interest rate in effect at the first Interest Rate Change Date will not be greater than    12.125 % or less than    2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Interest Rate Change Date by more than 2 percentage points from the rate of interest in effect for the preceding 12 months.

## 3.   PAYMENTS
### (A)   Time and Place of Payments
I will make a payment every month.

SER 268

DOC ID #: ▮▮▮▮▮▮▮▮▮

I will make my monthly payments on the  FIRST             day of each month beginning on
AUGUST 01, 2007              . I will make these payments every month until I have paid all the Principal
and interest and any other charges described below that I may owe under this Note. Each monthly payment
will be applied as of its scheduled due date and will be applied to interest before Principal. If I still owe amounts
under this Note on   JULY 01, 2037           , I will pay those amounts in full on that date, which is
called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

**(B)  Minimum Payment**
The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. The
Minimum Payment is calculated three (3) different ways during the loan term:

(i)  Until   JULY 01, 2017              ("Recast Date") or until  the Maximum  Negative
Amortization  Cap is reached, whichever is earlier, the Minimum Payment will be calculated using the
then-current interest rate (either fixed or adjustable as described in Section 2) minus      5.000
percentage points. The result of this calculation is called the "Minimum Payment Rate." The  Minimum
Payment Rate can never be lower than 1%. Since the Minimum Payment Rate is less than the interest rate
applied to my unpaid Principal balance, the Minimum Payment will be insufficient to pay the interest portion
of the monthly payment and no portion is applied to Principal. **When I make a Minimum Payment, which is
based on the Minimum Payment Rate that is less than the rate of interest due, the unpaid interest is
added to the Principal amount. This is known as "deferred interest" or "negative amortization."**

(ii)  If the unpaid Principal balance reaches the Maximum Negative Amortization Cap prior to the Recast
Date, my new Minimum Payment will be the amount that would pay only the interest portion of the monthly
payment based upon the then-current interest rate, which changes in accordance with Section 2. This is the
Minimum Payment in effect until the Recast Date.

(iii)  After the Recast Date and for the remainder of the loan term, the Minimum Payment will be the
monthly payment amount necessary to pay the loan off, in full, at the Maturity Date in substantially equal
payments based on the then-current interest rate, which changes in accordance with Section 2.

**(C)  Initial Monthly Minimum Payment**
Each of my initial monthly Minimum Payments until the first Interest Rate Change Date will be in the amount
of U.S. $ 1,458.50        .

**(D)  Monthly Payment Changes**
Changes in my monthly payment will be the result of changes in the unpaid Principal balance of my loan and
in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of
my monthly payment in accordance with Sections 2 and 3 of this Note.

SER 269

**EXHIBIT B**

DOC ID █████████████

**(E)  Additions to My Unpaid Principal**

For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

**(F)  Payment Options**

Until the Recast Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") if they are **greater** than the Minimum Payment. The Payment Options are calculated using the interest rate in accordance with Section 2. The following Payment Options may be provided:

(i)    **Interest Only Payment:** the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)    **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are **greater** than the Minimum Payment. If the Maximum Negative Amortization Cap is reached, then the Payment Options available will be the Amortized Payment and the 15 Year Amortized Payment. Upon the Recast Date I will no longer have Payment Options and I will be required to pay the Amortized Payment, which becomes the Minimum Payment as described in Section 3(B)(iii).

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

(A)    Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by

SER 270

**EXHIBIT B**

DOC ID # ███████████████

this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)   When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument described in Section 12(A) above shall then cease to be in effect, and Paragraph 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this

DOC I ███████████████

Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Payment Advantage Fixed/Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____    -Borrower
ANTHONY PAUL MANRIQUE

_____    -Borrower
ALISA ARLENE MANRIQUE

_____    -Borrower

_____    -Borrower

• Payment Advantage Fixed/Adjustable Rate One Year LIBOR Rider
1E680-XX (12/06)                    Page 6 of 6



**EXHIBIT**

Recorded in Official Records, County of San Bernardino

8/14/2012
12:55 PM
FV

# DENNIS DRAEGER
ASSESSOR - RECORDER - CLERK

**C Priority Mail**

Recording Requested By:
**Bank of America**
Prepared By: **Danilo Cuenca**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
**800-444-4302**
When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**



DocID#

Property Address:
**718 Silverwood Ave**
**Upland, CA 91786-4353**
CA0-ADT 19220367 7/25/2012

Doc#: **2012-0325783**

| Titles: | 1 | Pages: | 2 |
|---|---|---|---|
| Fees | | | 21.00 |
| Taxes | | | 0.00 |
| Other | | | 0.00 |
| PAID | | | $21.00 |



SPVH
loan #
acc:

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE LXS 2007-16N TRUST FUND** whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER** |
| Original Borrower(s): | **ANTHONY PAUL MANRIQUE, AND ALISA ARLENE MANRIQUE, HUSBAND AND WIFE AS JOINT TENANTS** |
| Original Trustee: | **RECONTRUST COMPANY, N.A.** |
| Date of Deed of Trust: | **6/27/2007** |
| Original Loan Amount: | **$388,000.00** |

Recorded in **San Bernardino County, CA** on: **7/6/2007**, book **N/A**, page **N/A** and instrument number **2007-0398688**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

~~AUG 0 3 2012~~

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
Faith DeJesus
Assistant Secretary



SER 273

State of **California**
County of **Ventura**

On _____AUG 0 3 2012_____ before me, _____**Kathy Serrano**_____, Notary Public, personally appeared
_____**FAITH DE JESUS**_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____**Kathy Serrano**_____    (Seal)
My Commission Expires: _____**12/27/15**_____

KATHY SERRANO
Commission # 1962571
Notary Public – California
Los Angeles County
My Comm. Expires Dec 27, 2015

SER 274

# LOAN POLICY OF TITLE INSURANCE

Issued by **Transnation Title Insurance Company**

 **LandAmerica Transnation**

*Transnation Title Insurance Company is a member of the LandAmerica family of title insurance underwriters.*

**Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 17 of the Conditions.**

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, TRANSNATION TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures as of Date of Policy and, to the extent stated in Covered Risks 11, 13, and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.
5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental pr⸍⸍⸍⸍⸍⸍⸍
       if a notice, describin⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍ ng forth the violation or intention to enforce, but only to the exten⸍
6. An enforcement action b⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍ vered by Covered Risk 5 if a notice of the enforcement action, desc⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍⸍ ⸍⸍⸍⸍⸍⸍⸍ any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage
   (a) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
   (b) failure of any person or Entity to have authorized a transfer or conveyance;
   (c) the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
   (d) failure to perform those acts necessary to create a document by electronic means authorized by law;
   (e) a document executed under a falsified, expired, or otherwise invalid power of attorney;
   (f) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
   (g) a defective judicial or administrative proceeding.
10. The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.
11. The lack of priority of the lien of the Insured Mortgage upon the Title
    (a) as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is either
       (i) contracted for or commenced on or before Date of Policy; or
       (ii) contracted for, commenced, or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance; and
    (b) over the lien of any assessments for street improvements under construction or completed at Date of Policy.

Dana M. Douglas (SBN 220053)
Attorney at Law
11024 Balboa Blvd., No.431
Granada Hills, CA 91344
818-360-8295 office
213-270-9456 fax
*dana@danamdouglaslaw.com*

Attorney for Debtor
Anthony Paul Manrique

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

In re                                          )   Case No. 6:15-bk-10650-SY
                                               )
                                               )   Chapter 11
                                               )
                                               )
ANTHONY PAUL MANRIQUE,                         )   **AMENDED NOTICE OF HEARING ON**
                                               )   **OBJECTION TO PROOF OF CLAIM NO.**
                                               )   **3 FILED BY U.S. BANK NATIONAL**
                                               )   **ASSOCIATION**
                                               )
                            Debtor.            )   ***Continued Hearing Date:***
                                               )   Date:      October 22, 2015
                                               )   Time:      1:30 pm
                                               )   Location:  Courtroom 302
                                               )             3420 Twelfth St.
                                               )             Riverside, CA  92501
                                               )
                                               )
                                               )
                                               )
                                               )

**TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY JUDGE;**

**THE OFFICE OF THE UNITED STATES TRUSTEE; AND ANY OTHER CREDITORS**

**AND PARTIES IN INTEREST:**



1

**NOTICE OF HEARING ON OBJECTION TO CLAIM**

SER 276

1  PLEASE TAKE NOTICE that the hearing on Debtor's Objection to Proof of Claim No.

2  3 Filed by U.S. Bank National Association is continued to October 22, 2015, at 1:30

3  pm, at the United States Bankruptcy Court located at in Courtroom 302 of the above-

4  entitled Court located at 3420 Twelfth Street in Riverside, California 92501, wherein

5  Anthony Paul Manrique (hereinafter the "Debtor"), in the above-captioned Chapter 11

6  case, shall, and does hereby submit his Objection to Proof of Claim No. 3 (hereinafter

7  "POC") filed by U.S. Bank National Association, as Trustee for LEHMAN XS TRUST

8  MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N ("US Bank").

9  The Objection is based on the contention that (i) the amount US Bank indicates

10 in the POC that it is owed, or will be owed, include amounts that Debtor has already

11 paid and will continue to pay directly to other entities; (ii) US Bank has failed to

12 provide a requested accounting of the life of the loan that would enable Debtor to be

13 certain of the amounts claimed as principal and interest on the loan; and (iii) the

14 POC does not address or resolve the conflicting claims as to who is the real party in

15 interest on the Note and Deed of Trust.

16 The Objection is based upon this Notice of Objection, the Objection and

17 Declarations included herewith, all pleadings and records on file in this case, and upon

18 such other evidentiary matters as may be presented to the Court regarding the

19 Objection.

20 PLEASE TAKE FURTHER NOTICE that pursuant to *Local Bankruptcy Rule*

21 *9013-1*, any party opposing the relief sought by the Objection must file a written

22 opposition setting forth the facts and law upon which the opposition is based and

23 must appear at the hearing on the Objection. Any factual allegations set forth in

24 such written response must be supported by competent and admissible evidence.

25 Any response or opposition to the Objection must be filed with the Court and served

26 Debtor's counsel at least fourteen (14) days prior to the scheduled hearing date on

27 the Objection (not excluding Saturdays, Sundays or legal holidays). Such

28 responses, if any, must be served on the Debtor's counsel at the address noted in



2

**NOTICE OF HEARING ON OBJECTION TO CLAIM**

SER 277

1  upper left-hand corner of the first page of this Notice. Pursuant to *Local Bankruptcy*

2  *Rule 9013-1*, any response not timely filed and served may be deemed by the Court

3  to be consent to the granting of the relief requested by the Objection.

4        WHEREFORE, Debtor again respectfully requests that US Bank amend its POC

5  to the correct amount it claims to be owed, provide a life of loan history so that the

6  correct loan amounts can be determined, and provide a verifiable chain of title so that

7  the actual party in interest to the Note and Deed of Trust can be verified or,

8  alternatively, that the Court enter an order reducing the US Bank Proof of Claim (Claim

9  No. 3) to the appropriate amount, and such other and further relief as is just and

10  proper under the circumstances.

11

12  Dated:  September 26, 2015           /s/ Dana M. Douglas

13                                    Dana M. Douglas
                                  Attorney at Law

14                                    *Attorney for Debtor*
                                  Anthony Paul Manrique

15

16

17

18

19

20

21

22

23

24

25

26

27

28



3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 11024 Balboa Blvd., No. 431, Granada Hills, CA 91344.

A true and correct copy of the foregoing document entitled (*specify*):  __AMENDED NOTICE OF DEBTOR'S OBJECTION TO THIRD PROOF OF CLAIM – U.S. BANK, N.A. (with Objection)__  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 9/27/2015 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Matthew R Clark    ch11ecf@aldridgepite.com, mrc@ecf.inforuptcy.com, mclark@aldridgepite.com
- Michael Daniels    BkECFnotifications@nationstarmail.com
- Dana M Douglas    dmddouglas@hotmail.com
- Abram Feuerstein    abram.s.feuerstein@usdoj.gov
- Cassandra J Richey    cmartin@pralc.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*)  9/28/2015 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Scott Yun
US Bankruptcy Court – Central District of CA
3420 Twelfth St., Ste. 345
Riverside, CA  92501-3819

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  ### , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9/28/2015 | DM Douglas | /s/ DM Douglas |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

SER 279

**VIA US MAIL**

Lehman Bros. Holdings, Inc., et al.
Additional Claimants: NationStar
US Bank, BAC/Countrywide/AWL
101 Hudson St., 38th Flr.
Jersey City, NJ 07302

Nationstar Mortgage, LLC
ATTN:  Jim Bray, Pres-CEO
P.O. Box 619098
Dallas, TX  75261-9741

Nationstar Mortgage, LLC
US Bank, N.A.
c/o Aldridge|Pite LLP
4375 Jutland Dr., Ste. 200
San Diego, CA  92117

**VIA US MAIL; CERTIFIED**

U.S. Bank National Association
ATTN:  Richard K. Davis, COB-CEO-Pres
425 Walnut Street
Cincinnati, OH 45202

**United States Bankruptcy Court**
**Central District of California**
Riverside
Judge Scott Yun, Presiding
Courtroom 302 Calendar

---

Thursday, October 01, 2015                                        **Hearing Room      302**

---

1:30 PM
**6:15-10650    Anthony Paul Manrique**                                        **Chapter 11**

Telephonic Hearing

**#1.00**    CONT'D Debtor's Objection to Claim #3 filed
by U.S. Bank National Association

**FR. 8/20/15**

**Dana M Douglas to appear by telephone (818)360-8295**
**Matthew R Clark to appear by telephone (858)750-7717**

Docket      45

**Matter Notes:**

**GRANTED:** _____    **DENIED:** _____

**CONT'D. TO:** _10/29/15 @ 1:30 pm_

-10/15/15: Reply
due
-10/22/15: ~~Reply~~
supp. brief
due by US Bank

**Briefing filed:** _____

**Opposition filed:** _____

**Reply filed:** _____

**WITHDRAWN:** _____

**Order Lodged by:** _____

**Tentative Ruling:**

No tentative.

---

**Party Information**

---

**Debtor(s):**

Anthony Paul Manrique                              Represented By
                                                  Dana M Douglas

SER 281

1  Dana M. Douglas (SBN 220053)
   Attorney at Law
2  11024 Balboa Blvd., No.431
   Granada Hills, CA 91344
3  818-360-8295 office
   213-270-9456 fax
4  dana@danamdouglaslaw.com

5  Attorney for Debtor
   Anthony Paul Manrique

6

7

8

| FILED & ENTERED |
|---|
| OCT 16 2015 |

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY Mason    DEPUTY CLERK**

9            UNITED STATES BANKRUPTCY COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                RIVERSIDE DIVISION

12

13  In re                          )  Case No. 6:15-bk-10650-SY
                                    )
14                                  )
                                    )  Chapter 11
15                                  )
                                    )
16  ANTHONY PAUL MANRIQUE,          )  **SCHEDULING ORDER IN RE**
                                    )  **OBJECTION TO CLAIM**
17                                  )
                                    )  ***Hearing:***
18                                  )  Date:    October 1, 2015
                                    )
19                     Debtor.      )  ***Continued Hearing:***
                                    )  Date:    October 29, 2015
20                                  )  Time:    1:30 pm
                                    )  Location:  Courtroom 302
21                                  )           3420 Twelfth Street
                                    )           Riverside, CA  92501
22  _____)

23

24       A hearing took place at the above time and place to consider the Debtor's

    Objection to Proof of Claim No. 3 filed by US Bank (the "Objection").
25

26  / / /

27  / / /

28



SER 282

1        Appearances are noted on the record. The Court considered the Debtor's Report

2    and after oral colloquy with counsel present at the hearing, there being no objections

3    and for good cause appearing:

4    **IT IS HEREBY ORDERED** that

5    (1)    The Status Conference is continued to **1:30 pm** on **October 29, 2015**;

6    (2)    The Court set the following briefing schedule for the Objection:

7        (a)    Debtor's Reply to Creditor's Response to Objection is due

8    **October 15, 2015**;

9        (b)    Creditor's further written Response, if any, is due

10   **October 22, 2015**;

11   (3)    The hearing on the Objection is also continued to **October 29, 2015**.

12       ###

13

14

15

16

17

18

19

20

21

22

23

24

25

26   Date: October 16, 2015

27   Scott H. Yun
     United States Bankruptcy Judge

28



SER 283

1  Dana M. Douglas  (SBN 220053)
   Attorney at Law
2  11024 Balboa Blvd., No. 431
   Granada Hills, CA 91344
3  MAILING ADDRESS
   4712 Admiralty Way #1001
4  Marina del Rey, CA  90292
   Telephone: 818-360-8295
5  Facsimile:  213-270-9456
   *dana@danamdouglaslaw.com*
6
   Attorney for Debtor
7  Anthony Paul Manrique

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  RIVERSIDE DIVISION

11  In re:                          )   Case No. 6:15-10650-SY
                                    )
12    ANTHONY PAUL MANRIQUE,        )   Chapter 11
                                    )
13      Debtor and Debtor in Possession.  )   **NOTICE OF HEARING ON MOTION TO**
                                    )   **RECONSIDER ORDER DENYING**
14                                  )   **OBJECTION TO CLAIM**
                                    )
15                                  )   **Hearing:**
                                    )   Date:      March 17, 2016
16                                  )   Time:      1:30 pm
                                    )   Location:  Courtroom 302
17                                  )             3420 Twelfth St.
                                    )             Riverside, CA  92501
18                                  )
                                    )
19  _____ )

20  TO THE HONORABLE SCOTT YUN, U.S. BANKRUPTCY JUDGE, U.S. BANK NATIONAL

21  ASSOCIATION AND NATIONSTAR MORTGAGE, LLC, OTHER INTERESTED PARTIES,

22  BY AND THROUGH THEIR ATTORNEYS OF RECORD:

23        Debtor Anthony Paul Manrique hereby submits his Motion for Relief From and

24  Request New Hearing/Trial on Order Denying Objection to Claim ("Motion for

25  Reconsideration").

26        On March 17, 2016, at 1:30 pm or as soon as possible thereafter, Debtor will ask

27  the Court, pursuant to Federal Rules of Civil Procedure (F.R.C.P.) Rule 60 for relief from

28

                                    1
                 **NOTICE OF HEARING ON MOTION FOR RECONSIDERATION**



SER 284

1  the order entered November 16, 2015, and a new trial/hearing pursuant to F.R.C.P.

2  Rule 59.

3      The Motion is based upon this Notice of Motion and the previously served Motion,

4  Memorandum of Points & Authorities along with attached Declarations, all pleadings

5  and records on file in this case, and upon such other evidentiary matters as may be

6  presented to the Court regarding the Objection.

7      PLEASE TAKE FURTHER NOTICE that pursuant to *Local Bankruptcy Rule*

8  *9013-1*, any party opposing the relief sought by the Motion must file a written

9  opposition setting forth the facts and law upon which the opposition is based and

10  must appear at the hearing on the Motion.  Any factual allegations set forth in such

11  written response must be supported by competent and admissible evidence.  Any

12  response or opposition to the Motion must be filed with the Court and served

13  Debtor's counsel at least fourteen (14) days prior to the scheduled hearing date on

14  the Motion (not excluding Saturdays, Sundays or legal holidays).  Such responses, if

15  any, must be served on the Debtor's counsel at the address noted in upper left-hand

16  corner of the first page of this Notice. Pursuant to *Local Bankruptcy Rule 9013-1*,

17  any response not timely filed and served may be deemed by the Court to be consent

18  to the granting of the relief requested by the Motion.

19

20  Dated:    February 4, 2016          By:   /s/ Dana M. Douglas

21                                          Dana M. Douglas
                                          *Attorney for Debtor*
22                                          Anthony Paul Manrique

23

24

25

26

27

28



2

**NOTICE OF HEARING ON MOTION FOR RECONSIDERATION**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 11024 Balboa Blvd., No. 431, Granada Hills, CA 91344.

A true and correct copy of the foregoing document entitled (*specify*):  NOTICE OF HEARING ON MOTION FOR RECONSIDERATION OF OBJECTION TO CLAIM  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 2/4/2016 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Matthew R Clark    ch11ecf@aldridgepite.com, mrc@ecf.inforuptcy.com, mclark@aldridgepite.com
- Michael Daniels    BkECFnotifications@nationstarmail.com
- Dana M Douglas    dmddouglas@hotmail.com
- Abram Feuerstein    abram.s.feuerstein@usdoj.gov
- Cassandra J Richey    cmartin@pralc.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) 2/4/2016 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Scott Yun
US Bankruptcy Court – Central District of CA
3420 Twelfth St., Ste. 345
Riverside, CA  92501-3819

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___###___ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/4/2016 | DM Douglas | /s/ DM Douglas |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                     **F 9013-3.1.PROOF SERVICE**
SER 266

**VIA US MAIL**

Lehman Bros. Holdings, Inc., et al.
Additional Claimants: NationStar
US Bank, BAC/Countrywide/AWL
101 Hudson St., 38th Flr.
Jersey City, NJ 07302

Nationstar Mortgage, LLC
PO Box 619096
Dallas, TX  75261-9741

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF SERVICE**

Matthew R. Clark (SBN 271054)
mclark@aldridgepite.com
Todd S. Garan (SBN 236878)
tgaran@aldridgepite.com
**ALDRIDGE PITE, LLP**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for *Secured Creditor*
U.S. Bank National Association, as Trustee for
Lehman  XS Trust Mortgage Pass-Through
Certificates, Series 2007-16N

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No.6:15-bk-10650-SY |
| ANTHONY PAUL MANRIQUE, | Chapter 11 |
| Debtor. | **OPPOSITION TO DEBTOR'S MOTION FOR RECONSIDERATION OF ORDER DENYING OBJECTION TO CLAIM** |
| | **Hearing Date:**<br>Date:   **March 17, 2016**<br>Time:  1:30 p.m.<br>Place:  Courtroom 302<br>         3420 Twelfth Street<br>         Riverside, CA 92501 |

U.S. Bank National Association, as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-16N; Nationstar Mortgage LLC as servicer (collectively the "Creditor") respectfully submits the following opposition (the "Opposition") to the Motion for Reconsideration of Order Denying Objection to Claim filed by Debtor, Anthony Paul Manrique ("Debtor").

## I.      INTRODUCTION

Debtor filed a Motion for Reconsideration of the Order Overruling his Objection to Claim.  The gravamen of Debtor's Motion is that the following constitutes grounds to vacate the Court's order under Rule 60(b): Rule 60(b)(1) Inadvertent mistake by the Court; Rule 60(b)(2) newly discovery evidence; and Rule 60(b)(3) Misrepresentation by Creditor.  In support of these

SER 288

1   grounds, Debtor's Motion attaches two documents related to the securitization of the Loan, the

2   same argument Debtor made related to negotiability of the Note, same evidentiary objections

3   made prior to the hearing on the Objection to Claim, as well as an objection to judicial notice

4   that was either already made or should have been made prior to the hearing on the Objection to

5   Claim.  For the reasons discussed below; however, Debtor's Motion fails to both legally and

6   factually support grounds for reconsider under Rule 60(b)(1),(2) or (3).  Indeed, the vast majority

7   if Debtor's Motion is more properly characterized as a "second bite at the apple," which is not

8   the relief warranted under Rule 60(b).  Further, Debtor's Motion is deficient under Rule 60(b)(6)

9   because Debtor has failed to demonstrate both injury and extraordinary circumstances beyond his

10  control that prevented him from proceeding with the action in a proper fashion prior to the

11  hearing on the Objection to Claim.  Accordingly, Creditor respectfully requests this Court deny

12  Debtor's Motion.

13  ## II.  FACTUAL AND PROCEDURAL SUMMARY

14  **A.    THE LOAN**

15      On June 27, 2007, Debtor and Alisa Arlene Manrique (collectively, the "Borrowers")

16  executed a promissory note (the "Note") in the original principal sum of $388,000.00, which was

17  made payable to Countrywide Home Loans, Inc. dba America's Wholesale Lender ("Lender").

18  A copy of the Note is attached hereto as Exhibit A incorporated herein by this reference; (*See*

19  *also, Claims Register, Claim No. 3-1*).

20      The Note is secured by a deed of trust (the "Deed of Trust") encumbering the real

21  property located at 718 Silverwood Avenue, Upland, California 91786 (the "Property").  *Id*.  A

22  copy of the Deed of Trust is attached hereto as Exhibit B incorporated herein by this reference;

23  (*See also, Claims Register, Claim No. 3-1*).  The Note and Deed of Trust are collectively referred

24  to hereinafter as the "Loan."

25      Subsequently, the Loan and Deed of Trust were assigned and transferred to Creditor.  The

26  Note is endorsed in blank.  A copy of the Assignment of Deed of Trust is attached hereto as

27  Exhibit C incorporated herein by this reference; (*See also, Claims Register, Claim No. 3-1*).

28  /././.

**OPPOSITION TO DEBTOR'S MOTION FOR RECONSIDERATION**

SER 289

**B.** **THE BANKRUPTCY CASE**

On January 26, 2015, Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

On March 6, 2015, Creditor filed a Proof of Claim (the "Claim") in this case on account of the Loan. (*See* Claims Register, Claim No. 3-1).

On July 27, 2015, Debtor filed his Notice of Objection and Objection to Proof of Claim No. 3 Filed by U.S. Bank National Association ("Objection to Claim"). *See, Docket Number 45*.

On September 23, 2015, Creditor filed a Response to Debtor's Objection to Claim. *See, Docket Number 51*.

On or about October 15, 2015, Debtor filed a Reply and Evidentiary Objections to Creditor's Response to the Objection to Claim. *See, Docket Numbers 59 and 60*.

On or about October 18, 2015, Debtor filed an additional Reply in response to Creditor's Response to the Objection to Claim. *See, Docket Number 62*.

On October 29, 2015, a hearing was held on Debtor's Objection to Claim, and the Court overruled Debtor's Objection to Creditor's Claim. *See, Docket Number 65*.

On November 16, 2015, the Court entered the Order overruling Debtor's Objection. *See, Docket Number 68*.

On January 15, 2016, Debtor filed the instant Motion for Reconsideration and supporting documents (collectively, "Motion"). *See, Docket Numbers 75 and 76*.

The hearing on Debtor's Motion was set for March 17, 2016 at 1:30 p.m. in the above entitled Court. *See, Docket Number 78*.

### III.    ARGUMENT

**A.    DEBTOR HAS FAILED TO DEMONSTRATE SUFFICIENT GROUNDS FOR THE COURT TO RECONSIDER THE ORDER PURSUANT TO FED. R. BANKR. P. 9024**

Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure contemplate motions for reconsideration. *In re Captain Blythers, Inc.*, 311 B.R. 530, 539 (9th Cir. 2004); *In re Curry and Sorensen, Inc.*, 57 B.R. 824, 826-27 (9th Cir. BAP 1986).  Instead,

**OPPOSITION TO DEBTOR'S MOTION FOR RECONSIDERATION**

SER 290

1  the Rules recognize two types of motion to obtain post-judgment relief: a motion to alter or

2  amend judgment pursuant to Fed. R. Civ. P. 59(e) and a motion for relief from judgment under

3  Fed. R. Civ. P. 60.  Where the time for appeal has expired, a motion for reconsideration should

4  be construed as a Motion for Relief from a judgment under Rule 60(b).  *See, In re Cleanmaster*

5  *Industries, Inc.*, 106 B.R. 628, 630 (9th Cir. BAP 1989) (citation omitted).  Relief under Rule

6  60(b) is an extraordinary remedy and not a substitute for direct appeal of a judgment. When an

7  error of law is alleged, the proper vehicle for attack on that error is a direct appeal. *In re Design*

8  *Classics, Inc.*, 788 F.2d 1384 (8th Cir. 1986). When a moving party fails to specify the rule

9  under which it makes a post judgment motion, the characterization is left to the court with the

10  risk that the moving party may lose the opportunity to present the merits of the underlying

11  motion to the appellate court. *In re Barger*, 219 B.R. 238 (8th Cir. BAP 1998). The Debtor's

12  Motion appears seeks relief under Fed. R. Civ. P. 60.

13  **1. <u>Legal Standard</u>**.

14  Rule 60 of the Federal Rules of Civil Procedure, which is made applicable to bankruptcy

15  cases by Rule 9024 of the Federal Rules of Bankruptcy Procedure, provides in pertinent part:

16
17  On motion and just terms, the court may relieve a party or its legal representative
    from a final judgment, order, or proceeding for the following reasons:

18  (1) mistake, inadvertence, surprise, or excusable neglect;

19  (2) newly discovered evidence that, with reasonable diligence, could not have
    been discovered in time to move for a new trial under Rule 59(b);
20

21  (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or
    misconduct by an opposing party;

22  (4) the judgment is void;

23  (5) the judgment has been satisfied, released, or discharged; it is based on an
    earlier judgment that has been reversed or vacated; or applying it
24    prospectively is no longer equitable; or

25  (6) any other reason that justifies relief.

26
27  Fed. R. Civ. P. 60. Rule 60(b) compliments the discretionary power that bankruptcy

28  courts have as courts of equity "to reconsider, modify or vacate their previous orders so long as

no intervening rights have become vested in reliance on the orders." *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007)(citations omitted).

In the present matter, Debtor's Motion is asserting that the Court's Order Overruling the Debtor's Objection to Creditor's Claim should be reconsidered on the following grounds under Rule 60(b): Rule 60(b)(1) Inadvertent mistake by the Court; Rule 60(b)(2) newly discovery evidence; and Rule 60(b)(3) Misrepresentation by Creditor. *See, Motion, Pg.5:2-4*. For the reasons set forth below, Creditor asserts Debtor's Motion fails to substantiate the applicable elements for reconsideration the Order on the Objection to Claim, and thus, Debtor's Motion should be denied.

**2. Debtor has Failed to Provide Sufficient Legal or Factual Grounds To Show The Court's Order Should Be Reconsidered Because of Newly Discovered Evidence Pursuant to 60(b)(2)**

The Debtor's Motion does not set forth sufficient facts or evidence to show that Debtor can meet any the requirements set forth under Rule 60(b)(2) for the Court to vacate the Order based on newly discovered evidence. Evidence is newly discovered within the meaning of Rule 60(b)(2) if:

> (1) the moving party can show the evidence relied on in fact constitutes newly discovered evidence within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case.

*See, Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003). (*quoting Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc*., 833 F.3d 208, 211 (9th Cir. 1987) (internal quotes omitted). Moreover, the evidence must become available only after judgment and be both admissible and probative. 12 JAMES WM. MOORE, ET. AL., Moore's Federal Practice 59.03[5][a][iii] (3rd ed. 2005).

As "newly discovered evidence" under Rule 60(b)(2), Debtor has attached a copy of a prospectus supplement dated August 30, 2007, and a copy of Form 8-K, dated August 31, 2007. *See, Docket Number 76, Exhibits A and B*. The Motion goes on to describe various aspects of

**OPPOSITION TO DEBTOR'S MOTION FOR RECONSIDERATION**

SER 292

1   the securitization transactions and parties based upon these documents.  *See, Docket Number 75,*

2   *Pg.5-9:7-9.*  Debtor's Motion; however, has failed to provide any evidence explaining how this

3   this "newly discovered" evidence was available to Debtor only *after* a ruling on the Objection to

4   Claim, despite Debtor exercising due diligence prior to the ruling on the Objection to Claim.

5        Creditor asserts this information is not new and was available to Debtor prior to the

6   hearing on the Objection to Claim. Creditor's Proof of Claim was filed on March 6, 2015, more

7   than 4 months prior to Debtor filing his Objection to Creditor's Claim.  Also, the very documents

8   have been available on and can be reviewed and retrieved from the Securities and Exchange

9   Commission's ("<u>SEC</u>") EDGAR website and are a matter of public record.[1]   Thus, this

10  information was absolutely available to Debtor upon reasonable diligence not only prior to

11  Debtor filing his Objection to Claim, but certainly prior to the hearing on the Objection to Claim.

12  As such, Debtor's Motion fails to establish these elements under Rule 60(b)(2), and the Motion

13  should be denied.

14       Finally, Debtor's Motion fails to demonstrate that the "newly discovered" evidence is of

15  such probative magnitude that production of it earlier would have been likely to change the

16  disposition of the Court's ruling.  Creditor asserts that it would not, and Creditor Objects to

17  Debtor's Exhibits A and B on the grounds of Relevance.  *See, Federal Rules of Evidence, Rule*

18  *401.*  Debtor's Motion sets forth certain aspects of the trust transactions, and applicable parties

19  and asserts that Creditor's Proof of Claim was also required to attach additional documentation

20  evidencing the various trust transactions.  *See, Motion, Pg.16-17:21-8.*  However, neither the

21  Motion nor the "newly discovered" evidence changes the fact the Creditor provided sufficient

22  evidence establishing that it is the holder of the Note by virtue of its possession of the blank

23  endorsed Note. *See, Docket Number 51.*

24       Even assuming *arguendo* that evidence had been previously available, it is unlikely the

25  Court would have ruled any differently.  Indeed, in order for Creditor to qualify as a creditor and

26

27

28  [1]   Indeed, one only need visit the SEC's EDGAR website at:
     http://www.sec.gov/edgar/searchedgar/companysearch.html, then input the either the name of the Trust, or file
     number (here, Docket Number 76, Exhibit A shows the file Number as 333-139693-05) and these particular
     documents can be viewed.

be entitled to file a Proof of Claim, Creditor was required to prove it had the right to payment under the Note as a holder thereof, and hence, the right to enforce the Note. *See, Veal v. American Home Mortgage Servicing, Inc.* (*In re Veal*), 450 B.R. 897, 920, 922 (B.A.P. 9th Cir. 2011). Creditor satisfied this requirement. Creditor's status as "holder" is important because it identifies of the proper party to be paid in order to satisfy and discharge the Debtor's obligation. *See, In re Veal*, 450 B.R. at 909. If Debtor makes a payment to the holder of the Note, Debtor's obligations under the Note are discharged to the extent paid. *See, Id.* at 910. The right to enforce the Note as a holder is intended to provide the maker with a relatively simple manner of determining to whom the obligation is owed. *See, Id.* at 912. Thus, under established rules, Debtor should be indifferent as to who owns or has an interest in the Note and it is irrelevant whether the Note has been factionalized or securitized. *See, Id.* at 912.

Debtor has not provided any "newly discovered" evidence within the meaning of Rule 60(b)(2) to refute Creditor's status as holder of the Note. Instead, Debtor merely attached voluminous and largely irrelevant securitization documents that were available to Debtor long before Debtor filed his Objection to Claim or the hearing on same, and explained some details related to securitization process and/or parties. As such, the Motion's "newly discovered" evidence is not truly new, and the trust information is not probative in light of Creditor's previous evidence establishing it as the Holder of Note and right to enforce its Claim in the instant Bankruptcy case. Based on the foregoing, the Debtor has failed to meet his burden under Rule 60(b)(2).

### 3. Debtor's Assertion Related to Note Negotiability Does Not Provide Grounds for Reconsideration Under Rule 60(b)

Creditor asserts this argument is meritless and should be disregarded because Debtor's Motion fails to articulate a substantive legal or factual basis for relief under Rule 60(b). The only possible grounds under Rule 60 that Debtor may be trying to assert based upon this brief reference in the Motion is maybe under Rule 60(b)(1) based upon an "Inadvertent Mistake by the Court…." *See, Motion, Pg.5:4.* Certainly no excusable neglect is being argued by the Debtor.

However, for Debtor to properly plead relief under Rule 60(b)(1) for mistake, the Motion would have to show that the mistake is attributable to special circumstances and not simply an

1    erroneous legal ruling, which would be more appropriately addressed on appeal.  *See, McMillan*

2    *v. MBank Fort Worth, N.A.*, 4 F.3d 362, 367 (5th Cir. 1993) (quoting *Chick Kam Choo v. Exxon*

3    *Corp.*, 699 f.2d 693, 695 (5th Cir.), cert. denied, 464 U.S. 826, 104 S.Ct. 98, 78 L.Ed.2d 103

4    (1983)).  Debtor's Motion fails to do this.

5           Moreover, Debtor's Motion cannot not be used as a means to revisit the same issues

6    already ruled upon by the Court, or which advance supporting facts that were otherwise available

7    when the issues were originally briefed.  *See, In re Negrete,* 183 B.R. 195, 197 (9th Cir. BAP

8    1995), aff'd 103 F.3d 139 (9th Cir. 1996).  In short, "[s]uch motions should not be used as a

9    substitute for a timely appeal."  *Id*.  In his Reply to Creditor's Response, Debtor previously

10    asserted the Note was not a negotiable instrument because the principal balance could increase

11    [*See, Docket Number 59:Pgs.13-15*]; however, this argument was rejected by the Court.  Further,

12    the cases now cited by Debtor in the Motion are not even applicable or on point to this specific

13    issue.  Thus, not only has Debtor's Motion failed to articulate any legal or factual grounds for

14    relief under Rule 60(b)(1), this particular issue should have been addressed on appeal, if at all,

15    and Debtor did not timely file an appeal.  Thus, the Motion fails to show that a mistake was

16    made within the meaning of Rule 60(b)(1) and not simply an erroneous legal ruling, and relief

17    should be denied.

18           **4.    Debtor has Failed to Provide Sufficient Legal or Factual Grounds To Show The
19                   Court's Order Should Be Reconsidered Because of Fraud or Misrepresentation
                     Pursuant to 60(b)(3)**

20           To prevail under Rule 60(b)(3), Debtor would have to show by clear and convincing

21    evidence that Creditor engaged in fraud or misrepresentation that prevented the Debtor from

22    fully and fairly presenting his case.  See, *In re Greiner v. City of Champlin*, 152 F.3d 787 (8th

23    Cir. 1998); *In re Babb*, 440 B.R. 523, 525-526 (Bankr. 2010).

24           Creditor asserts that Debtor's Motion is devoid of any legal basis, or any clear and

25    convincing evidence specifically detailing how Creditor committed fraud or misrepresentation

26    that prevented the Debtor from fully and fairly presenting his Objection to Claim.  The Motion

27    makes an assertion that Creditor's Proof of Claim should have attached documentation related to

28    the various securitization transactions, which for the reasons discussed above, are not probative

**OPPOSITION TO DEBTOR'S MOTION FOR RECONSIDERATION**

SER 295

1   to the evidence already establishing Creditor standing to enforce its claim in this case as a Holder

2   of the Note.   At no time does the Motion sufficiently articulate or set forth new evidence

3   explaining how Creditor committed a misrepresentation that impacted Debtor's ability to

4   respond to the Objection to Claim in a timely manner.  While Debtor's Motion reasserts the same

5   evidentiary objections made in pleadings filed prior to the hearing on the Objection to Claim,

6   that were overruled by the Court, as well as continuing to dispute the Loan documents on various

7   grounds, for the reasons discussed below, those arguments do not constitute clear and convincing

8   evidence of fraud or misrepresentation and should similarly be rejected.   As such, Debtor's

9   Motion failed to articulate any legal or factual grounds for relief under Rule 60(b)(3), and the

10  Motion should be denied.

11          **5.   The Remainder of Debtor's Motion Does Not Provide Grounds for
              Reconsideration Under Rule 60(b)**

12

13          The remainder of Debtor's Motion, for the most part, merely re-asserts Debtor's

14  Objections to Creditor's evidence filed in support of its Response to Debtor's Objection to

15  Claim, as well as the same and/or similar objections having to do with requests for Judicial

16  Notice.  However, as discussed below, Debtor's Motion still does not substantively support a

17  finding that the Motion should be granted under Rule 60(b).

18          The Evidentiary Objections set forth in the Motion are the exact same as those set forth in

19  Debtor's Evidentiary Objections filed in support of his Reply to Creditor's Response to the

20  Objection to Calim, which were overruled by the Court at the hearing.  *See, Motion, Pg.10-*

21  *13:17-13; Docket Number 59*.  While the objections to Judicial Notice in the Motion were not

22  expressly raised in Debtor's Reply or Evidentiary Objections to Creditor's Response to the

23  Objection to Claim, these objections or arguments could have been or should have been made

24  prior to or at the hearing on the Objection to Claim.  Debtor simply continues to dispute the

25  documents referenced in the Proof of Claim, but no probative "newly discovered" evidence

26

27  within the meaning of Rule 60(b)(2) in support of these assertions has been provided.  As such,

28

**OPPOSITION TO DEBTOR'S MOTION FOR RECONSIDERATION**

SER 296

1    Creditor asserts Debtor's Motion cannot be used as a means to revisit the same issues already

2    ruled upon by the Court, or which advance supporting facts that were otherwise available when

3    the issues were originally briefed. *See, In re Negrete, supra,* 183 B.R. at 197 (9th Cir. BAP

4    1995), aff'd 103 F.3d 139 (9th Cir. 1996).

5        Further, as discussed above, for Debtor to properly plead relief under Rule 60(b)(1) for

6    mistake, the Motion would have to show the mistake is attributable to special circumstances and

7    not simply an erroneous legal ruling, which would be more appropriately addressed on appeal.

8    *See, McMillan v. MBank Fort Worth, N.A.*, 4 F.3d 362, 367 (5th Cir. 1993) (quoting *Chick Kam*

9    *Choo v. Exxon Corp.*, 699 f.2d 693, 695 (5th Cir.), cert. denied, 464 U.S. 826, 104 S.Ct. 98, 78

10   L.Ed.2d 103 (1983)). Debtor's Motion fails to do this.

11       Debtor should not be permitted to use the Motion as means for a second bite at the apple

12   or "…as a substitute for a timely appeal." *Id*. If Debtor had an issue with the Court's ruling on

13   his evidentiary objections, or even a legal issue, he should have timely filed an appeal. Thus, the

14   Motion fails to substantively provide legal or factual grounds for granting relief under Rule

15   60(b)(1).

16       Finally, Creditor asserts that Debtor's Motion also fails to establish that grounds exist to

17   grant the Motion under Rule 60(b)(6). Subsection (b)(6) of Rule 60 should be used sparingly as

18   an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary

19   circumstances prevented a party from taking timely action to prevent or correct an erroneous

20   judgment. *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007). Accordingly, a party

21   who moves for such relief "must demonstrate both injury and circumstances beyond his control

22   that prevented him from proceeding with...the action in a proper fashion." *Id.* (citation omitted).

23       Creditor asserts Debtor's motion is completely devoid of evidence or facts to suggest that

24   extraordinary circumstances existed to prevent Debtor from taking timely action to prosecute its

25   Objection to Claim or prevent the Court's denial of its Objection to Creditor's Claim. Indeed,

26   the "newly discovered" evidence is in fact not new, but has been available on the SEC's EDGAR

**OPPOSITION TO DEBTOR'S MOTION FOR RECONSIDERATION**

SER 297

1   website long before Debtor prior to Debtor filing its Objection to Creditor's Claim, and

2   nonetheless not probative.

3       Further, the remaining information, Objections and arguments set forth in Debtor's

4   Motion were either raised in Debtor's pleadings prior to the hearing on the Objection to Claim,

5   or could have been timely raised since they pertained to information already before the Debtor

6

7   and the Court.   As such, the Motion has failed to legally and factually articulate how

8   extraordinary circumstances existed to prevent Debtor from taking timely action to prosecute its

9   Objection to Claim or prevent the Court's denial of its Objection to Creditor's Claim.

10  Accordingly, Debtor has failed to meet his burden that relief is appropriate under Rule 60(b)(6).

11                          **IV.    CONCLUSION**

12      For the reasons set forth herein, the Debtor's Motion fails to state any legal or factual

13  grounds for Reconsidering and/or Vacating its Order Denying Debtor's Objection to Creditor's

14  Claim pursuant to Rule 60(b), and therefore the Motion should be denied.

15      **WHEREFORE**, Creditor respectfully requests:

16      1.      That the Court Deny the Debtor's Motion for Reconsideration in its entirety;

17      2.      Creditor's reasonable attorneys' fees and costs, subject to proof; and

18      3.      Such other and further relief as the Court deems just and proper.

19                          Respectfully submitted,

20                          ALDRIDGE PITE, LLP

21

22  Dated:  March 2, 2016          /s/ Todd S. Garan (CA SBN 236878)_____
                                   TODD S. GARAN
23                                 Attorneys for U.S. Bank National
24                                 Association, as Trustee for Lehman  XS
                                   Trust Mortgage Pass-Through Certificates,
25                                 Series 2007-16N; Nationstar Mortgage LLC,
                                   as servicer
26

27

28

**OPPOSITION TO DEBTOR'S MOTION FOR RECONSIDERATION**

SER 298

Prepared by: VERONICA RIOS

LOAN ██████████

# PAYMENT ADVANTAGE
## FIXED/ADJUSTABLE RATE NOTE
### (LIBOR One Year Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. FOR A LIMITED TIME I WILL HAVE A PAYMENT OPTION THAT IS LESS THAN THE FULL AMOUNT OF INTEREST DUE. IF I CHOOSE THIS OPTION, THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED.**
**THIS NOTE CONTAINS A PREPAYMENT PENALTY.**

| | | |
|---|---|---|
| JUNE 27, 2007 | EL CAJON | CALIFORNIA |
| [Date] | [City] | [State] |

718 SILVERWOOD AVENUE, UPLAND, CA 91786-4353
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 388,000.00     ("Principal"), plus interest, to the order of Lender. The Principal may increase as provided under the terms of this Note but will not exceed     115  percent of the Principal amount I originally borrowed. This is called the "Maximum Negative Amortization Cap." If I default under this Note or the Security Instrument, then default charges may cause the Maximum Negative Amortization Cap to be exceeded. Lender is
Countrywide Home Loans, Inc. dba America's Wholesale Lender
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or its successors or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Fixed Interest Rate

Interest will be charged on unpaid Principal until the full amount has been paid. Interest will initially accrue at a yearly rate of
 7.125 %. This is my initial fixed interest rate and is the rate for determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

### (B) Adjustable Interest Rate

The initial fixed interest rate I owe will change to an adjustable interest rate on the first      day of
JULY, 2012     and the adjustable interest rate will change on that day every 12ᵗʰ month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

### (C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Rate Change Date is called the "Current Index."



LOAN #

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Adjustable Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new adjustable interest rate by adding    2.250 % (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new adjustable interest rate until the next Interest Rate Change Date. My adjustable interest rate will never be greater than    12.125 % or lower than the Margin.

**(E)  Limits on Interest Rate Changes**

The interest rate in effect at the first Interest Rate Change Date will not be greater than    12.125 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Interest Rate Change Date by more than 2 percentage points from the rate of interest in effect for the preceding 12 months.

## 3.  PAYMENTS

**(A)  Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the first    day of each month beginning on AUGUST 01, 2007    . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If I still owe amounts under this Note on JULY 01, 2037    , I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B)  Minimum Payment**

The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. The Minimum Payment is calculated three (3) different ways during the loan term:

(i)    Until JULY 01, 2017    ("Recast Date") or until the Maximum Negative Amortization Cap is reached, whichever is earlier, the Minimum Payment will be calculated using the then-current interest rate (either fixed or adjustable as described in Section 2) minus    5.000 percentage points. The result of this calculation is called the "Minimum Payment Rate." The Minimum Payment Rate can never be lower than 1%. Since the Minimum Payment Rate is less than the interest rate applied to my unpaid Principal balance, the Minimum Payment will be insufficient to pay the interest portion of the monthly payment and no portion is applied to Principal. **When I make a Minimum Payment, which is based on the Minimum Payment Rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."**

(ii)    If the unpaid Principal balance reaches the Maximum Negative Amortization Cap prior to the Recast Date, my new Minimum Payment will be the amount that would pay only the interest portion of the monthly payment based upon the then-current interest rate, which changes in accordance with Section 2. This is the Minimum Payment in effect until the Recast Date.

(iii)    After the Recast Date and for the remainder of the loan term, the Minimum Payment will be the monthly payment amount necessary to pay the loan off, in full, at the Maturity Date in substantially equal payments based on the then-current interest rate, which changes in accordance with Section 2.

**(C)  Initial Monthly Minimum Payment**

Each of my initial monthly Minimum Payments until the first Interest Rate Change Date will be in the amount of U.S. $1,458.50    .

**(D)  Monthly Payment Changes**

Changes in my monthly payment will be the result of changes in the unpaid Principal balance of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 2 and 3 of this Note.

SER 300

LOAN #

**(E)  Additions to My Unpaid Principal**

For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

**(F)  Payment Options**

Until the Recast Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") if they are **greater** than the Minimum Payment. The Payment Options are calculated using the interest rate in accordance with Section 2. The following Payment Options may be provided:

(i)  **Interest Only Payment:** the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)  **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii)  **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are **greater** than the Minimum Payment. If the Maximum Negative Amortization Cap is reached, then the Payment Options available will be the Amortized Payment and the 15 Year Amortized Payment. Upon the Recast Date I will no longer have Payment Options and I will be required to pay the Amortized Payment, which becomes the Minimum Payment as described in Section 3(B)(iii).

**4.  NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction that could result from my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000 % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

SER 301

LOAN # : ▮▮▮▮▮

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees. If I default under this Note or the Security Instrument then default charges may cause the Maximum Negative Amortization Cap to be exceeded.

## 8.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all the amounts owed under this Note.

## 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.   DOCUMENT CORRECTION

In the event that Note Holder at any time discovers that this Note, Security Instrument, Addenda, Rider or any other document related to this loan is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan, or otherwise contains an error, such as a clerical mistake, calculation error, computer error, printing error, electronic transmission error, or similar error, I agree, upon notice from Note Holder, to re-execute any documents that are necessary to replace or correct any such documents and return them within ten (10) days of receipt. I also agree that I will not hold Lender responsible for any damages which result from any such error.

## 12.   SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests

SER 302

LOAN # :

transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B)** When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument described in Section 12(A) above shall then cease to be in effect, and Paragraph 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  - Borrower
ANTHONY PAUL MANRIQUE

_____  - Borrower
ALISA ARLENE MANRIQUE

_____  - Borrower

_____  - Borrower

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC., A NEW YORK CORPORATION
DOING BUSINESS AS AMERICA'S WHOLESALE LENDER

BY: _____
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

Prepared by: VERONICA RIOS

**Countrywide Home Loans, Inc. dba America's Wholesale Lender**

DATE:        06/27/2007
BORROWER: ANTHONY PAUL MANRIQUE
CASE #:
LOAN #:        ███████████
PROPERTY ADDRESS: 718 SILVERWOOD AVENUE
                  UPLAND, CA 91786-4353

```
Branch #███████
1455 FRAZEE ROAD #102
SAN DIEGO, CA 92108
Phone: (619)688-5100
Br Fax No.: (619)688-9258
```

# PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated    JUNE 27, 2007        , and is incorporated into and amends and supplements the Note of the same date (the "Note") given by me to
Countrywide Home Loans, Inc. dba America's Wholesale Lender
(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "Borrower's Right to Prepay" is replaced with the following new section:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note.

My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

● Multistate Prepayment Penalty Addendum
1E296-XX (09/06)(d/l)                        Page 1 of 2

LOA█████████

If within the first TWELVE months after the execution of this Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original Principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeds twenty (20) percent of the original Principal amount of this Note.  Interest will be calculated using the rate in effect at the time of prepayment.

All other terms and conditions of the above referenced Note remain in full force and effect.

_____    Borrower
ANTHONY PAUL MANRIQUE

_____    Borrower
ALISA ARLENE MANRIQUE

_____    Borrower

_____    Borrower



Recording Requested By:
J. FOX

Recorded in Official Records, County of San Bernardino

**LARRY WALKER**
Auditor/Controller – Recorder

602 Southland Title of San Diego

7/06/2007
8:00 AM
BN

Doc#:

| Titles: 1 | | Pages: 22 |
|---|---|---|
| Fees | | 73.00 |
| Taxes | | 0.00 |
| Other | | 0.00 |
| PAID | | $73.00 |

MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423
Prepared By:
VERONICA RIOS

——————————— [Space Above This Line For Recording Data] ———————————

[Escrow/Closing #]                    [Doc ID #]

# DEED OF TRUST
MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated JUNE 27, 2007 , together with all Riders to this document.
**(B) "Borrower"** is
ANTHONY PAUL MANRIQUE, AND ALISA ARLENE MANRIQUE, HUSBAND AND WIFE AS JOINT TENANTS

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

VMP®-6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc    Form 3005  1/01
CONV/VA

SER 306

DOC ID #:

Borrower's address is
718 SILVERWOOD AVENUE, UPLAND, CA 91786-4353
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
Countrywide Home Loans, Inc. dba America's Wholesale Lender
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
**(D) "Trustee"** is
ReconTrust Company, N.A
225 West Hillcrest Dr., MSN TO-02, Thousand Oaks, CA 91360
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
**(F) "Note"** means the promissory note signed by Borrower and dated JUNE 27, 2007 . The Note states that Borrower owes Lender
THREE HUNDRED EIGHTY EIGHT THOUSAND and 00/100

Dollars (U.S. $ 388,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JULY 01, 2037 .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] 1-4 Family Rider
[ ] VA Rider    [ ] Biweekly Payment Rider    [ ] Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

SER 307

DOC ID #: [REDACTED]

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY      of      SAN BERNARDINO      :
[Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]

LOT(S) 3 OF TRACT NO. 6654, IN THE CITY OF UPLAND, COUNTY SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 84 PAGE(S) 90 AND 91, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Parcel ID Number [REDACTED]      which currently has the address of
718 SILVERWOOD AVENUE, UPLAND
[Street/City]

California 91786-4353 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(CA) (0207)      CHL (08/05)      Page 3 of 16      Form 3005 1/01

SER 308

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

SER 309

DOC I█████████████

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

SER 310

DOC ID ▮▮▮▮▮▮▮▮▮▮▮▮

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

SER 311

DOC ID ██████████████

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

SER 312

DOC ID #

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

SER 313

DOC ID #▮▮▮▮▮▮▮▮▮▮

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

DOC ID █████████

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

SER 315

DOC ID ███████████

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

VMP®-6A(CA) (0207)          CHL (08/05)          Page 11 of 16                    Form 3005  1/01

SER 316

DOC █████████████████████

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

SER 317

DOC ████████████████

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

SER 318

DOC ID █████████████

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

SER 319

DOC ID ▮▮▮▮▮▮▮▮▮▮▮▮

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
ANTHONY PAUL MANRIQUE                    -Borrower

_____ (Seal)
ALISA ARLENE MANRIQUE                    -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

VMP®  -6A(CA) (0207)          CHL (08/05)          Page 15 of 16          Form 3005  1/01

SER 320

DOC ID # ████████████

State of California
County of _San Bernardino_

On _10/29/07_ _____ before me, _Ana Brown Notary Public_ } ss.

personally appeared

_Anthony Paul Manrique_

_Alice Arlene Manrique_

_____ , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



ANA BROWN
Commission # ███████
Notary Public - California
Riverside County
My Comm. Expires Dec 6, 2009

VMP®  -6A(CA) (0207)        CHL (08/05)        Page 16 of 16        Form 3005  1/01

SER 321

# PAYMENT ADVANTAGE
# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One Year Index - Rate Caps)

[Escrow/Closing #]          [Doc ID #]

THIS FIXED/ADJUSTABLE RATE RIDER is made this TWENTY-SEVENTH day of JUNE, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Payment Advantage Fixed/Adjustable Rate Note (the "Note") to Countrywide Home Loans, Inc. dba America's Wholesale Lender

("Lender") of the same date and covering the property described in the Security Instrument and located at:

718 SILVERWOOD AVENUE
UPLAND, CA 91786-4353
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT THE ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME. FOR A LIMITED TIME THERE WILL BE A PAYMENT OPTION THAT IS LESS THAN THE FULL AMOUNT OF INTEREST DUE. IF THIS PAYMENT OPTION IS CHOSEN, THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED.**

### THE NOTE CONTAINS A PREPAYMENT PENALTY.

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A.   INTEREST AND PAYMENTS
The Note provides for changes in the interest rate and the monthly payments, as follows:

SER 322

DOC ████████████

## 2.  INTEREST

### (A)  Fixed Interest Rate

Interest will be charged on unpaid Principal until the full amount has been paid. Interest will initially accrue at a yearly rate of     7.125 %. This is my initial fixed interest rate and is the rate for determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

### (B)  Adjustable Interest Rate

The initial fixed interest rate I owe will change to an adjustable interest rate on the first           day of JULY, 2012            and the adjustable interest rate will change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

### (C)  Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D)  Calculation of Adjustable Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new adjustable interest rate by adding     2.250 % (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new adjustable interest rate until the next Interest Rate Change Date. My adjustable interest rate will never be greater than     12.125 % or lower than the Margin.

### (E)  Limits on Interest Rate Changes

The interest rate in effect at the first Interest Rate Change Date will not be greater than     12.125 % or less than     2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Interest Rate Change Date by more than 2 percentage points from the rate of interest in effect for the preceding 12 months.

## 3.  PAYMENTS

### (A)  Time and Place of Payments

I will make a payment every month.

SER 323

DOC ID #: ███████████

I will make my monthly payments on the **FIRST** day of each month beginning on **AUGUST 01, 2007** . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If I still owe amounts under this Note on **JULY 01, 2037** , I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

**(B)  Minimum Payment**
The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. The Minimum Payment is calculated three (3) different ways during the loan term:

(i)   Until  **JULY 01, 2017**   ("Recast Date") or until  the Maximum  Negative Amortization  Cap is reached, whichever is earlier, the Minimum Payment will be calculated using the then-current interest rate (either fixed or adjustable as described in Section 2) minus **5.000** percentage points. The result of this calculation is called the "Minimum Payment Rate." The  Minimum Payment Rate can never be lower than 1%. Since the Minimum Payment Rate is less than the interest rate applied to my unpaid Principal balance, the Minimum Payment will be insufficient to pay the interest portion of the monthly payment and no portion is applied to Principal. **When I make a Minimum Payment, which is based on the Minimum Payment Rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."**

(ii)   If the unpaid Principal balance reaches the Maximum Negative Amortization Cap prior to the Recast Date, my new Minimum Payment will be the amount that would pay only the interest portion of the monthly payment based upon the then-current interest rate, which changes in accordance with Section 2. This is the Minimum Payment in effect until the Recast Date.

(iii)   After the Recast Date and for the remainder of the loan term, the Minimum Payment will be the monthly payment amount necessary to pay the loan off, in full, at the Maturity Date in substantially equal payments based on the then-current interest rate, which changes in accordance with Section 2.

**(C)   Initial Monthly Minimum Payment**
Each of my initial monthly Minimum Payments until the first Interest Rate Change Date will be in the amount of U.S. $ **1,458.50** .

**(D)   Monthly Payment Changes**
Changes in my monthly payment will be the result of changes in the unpaid Principal balance of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 2 and 3 of this Note.

SER 324

DOC ID ████████

**(E)   Additions to My Unpaid Principal**

For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

**(F)   Payment Options**

Until the Recast Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") if they are **greater** than the Minimum Payment. The Payment Options are calculated using the interest rate in accordance with Section 2. The following Payment Options may be provided:

(i)     **Interest Only Payment:** the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)    **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are **greater** than the Minimum Payment. If the Maximum Negative Amortization Cap is reached, then the Payment Options available will be the Amortized Payment and the 15 Year Amortized Payment. Upon the Recast Date I will no longer have Payment Options and I will be required to pay the Amortized Payment, which becomes the Minimum Payment as described in Section 3(B)(iii).

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

(A)   Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by

SER 325

DOC ID # █████████████████

this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B)**   When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 2 above, Paragraph 18 of the Security Instrument described in Section 12(A) above shall then cease to be in effect, and Paragraph 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this

DOC I█████████████████

Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Payment Advantage Fixed/Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____     -Borrower
ANTHONY PAUL MANRIQUE

_____     -Borrower
ALISA ARLENE MANRIQUE

_____     -Borrower

_____     -Borrower

• Payment Advantage Fixed/Adjustable Rate One Year LIBOR Rider
1E680-XX (12/06)                    Page 6 of 6

SER 327



Recording Requested By:
**Bank of America**
Prepared By: **Danilo Cuenca**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
**800-444-4302**
When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

DocID#
Property Address:
**718 Silverwood Ave**
**Upland, CA 91786-4353**

**Recorded in Official Records, County of San Bernardino**     8/14/2012
                                                               12:55 PM
                                                               FV

# DENNIS DRAEGER
## ASSESSOR – RECORDER – CLERK

**C Priority Mail**

Doc#:

| Titles: | 1 | Pages: | 2 |
|---|---|---|---|
| Fees | | | 21.00 |
| Taxes | | | 0.00 |
| Other | | | 0.00 |
| PAID | | | $21.00 |

SDVH
loan #
acc:

This space for Recorder's use

# ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE LXS 2007-16N TRUST FUND** whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER** |
| Original Borrower(s): | **ANTHONY PAUL MANRIQUE, AND ALISA ARLENE MANRIQUE, HUSBAND AND WIFE AS JOINT TENANTS** |
| Original Trustee: | **RECONTRUST COMPANY, N.A.** |
| Date of Deed of Trust: | **6/27/2007** |
| Original Loan Amount: | **$388,000.00** |

Recorded in **San Bernardino County**, CA on: **7/6/2007**, book **N/A**, page **N/A** and instrument number

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

AUG 0 3 2012

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**



By: _____
~~Faith DeJesus~~
Assistant Secretary



SER 328

State of **California**
County of **Ventura**

On ___AUG 0 3 2012___ before me, _____Kathy Serrano_____, Notary Public, personally appeared
_____FAITH DE JESUS_____
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____Kathy Serrano_____ (Seal)
My Commission Expires: _____12/27/15_____

KATHY SERRANO
Commission
Notary Public - California
Los Angeles County
My Comm. Expires Dec 27, 2015

SER 329

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 4375 Jutland Drive, Suite 200, San Diego, CA 92117.

A true and correct copy of the foregoing document entitled: OPPOSITION TO DEBTOR'S MOTION FOR RECONSIDERATION OF ORDER DENYING OBJECTION TO CLAIM; ALONG WITH SUPPORTING DOCUMENTS will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On March 3, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Michael Daniels    BkECFnotifications@nationstarmail.com
- **Debtor's Attorney**: Dana M Douglas    dmddouglas@hotmail.com
- **United States Trustee:** Abram Feuerstein    abram.s.feuerstein@usdoj.gov
- Cassandra J Richey    cmartin@pralc.com
- **United States Trustee:** (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On March 3, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

- **Debtor:** Anthony Paul Manrique, 718 Silverwood Ave., Upland, CA 91786
- **Judge:** Hon. Scott H. Yun, 3420 Twelfth Street, Suite 345, Riverside, CA 92501-3819

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 3, 2016 | Megan Pellow | /s/ *Megan Pellow* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

SER-350

1    Matthew R. Clark (SBN 271054)
     mclark@aldridgepite.com
2    Todd S. Garan (SBN 236878)
     tgaran@aldridgepite.com
3    **ALDRIDGE PITE, LLP**
     4375 Jutland Drive, Suite 200
4    P.O. Box 17933
     San Diego, CA 92177-0933
5    Telephone: (858) 750-7600
     Facsimile: (619) 590-1385
6
     Attorneys for *Secured Creditor*
7    U.S. Bank National Association, as Trustee for
     Lehman  XS Trust Mortgage Pass-Through
8    Certificates, Series 2007-16N; Nationstar Mortgage
     LLC as servicer
9

10                   **UNITED STATES BANKRUPTCY COURT**

11           **CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

| | |
|---|---|
| In re | Case No.6:15-bk-10650-SY |
| ANTHONY PAUL MANRIQUE, | Chapter 11 |
| Debtor. | **OBJECTION TO DEBTOR'S LATE FILED REQUEST FOR JUDICIAL NOTICE AND MOTION TO STRIKE THE SAME** |
| | **Hearing Date:**<br>Date:   **March 17, 2016**<br>Time:   **1:30 p.m.**<br>Place:   **Courtroom 302**<br>        **3420 Twelfth Street**<br>        **Riverside, CA 92501** |

20          U.S. Bank National Association, as Trustee for Lehman XS Trust Mortgage Pass-

21    Through Certificates, Series 2007-16N; Nationstar Mortgage LLC as servicer ("Creditor")

22    respectfully submits the following Objection to the Request for Judicial Notice [Dkt. No.88]

23    filed Debtor, Anthony Paul Manrique ("Debtor") in support of his *Motion for Reconsideration of*

24    *Order Denying Objection to Claim* (the "Motion").

25    /./././

26    /././/

27    /./././

28    /./././

                                                    - 1 -          CASE NO. 6:15-bk-10650-SY
                    **OBJECTION TO DEBTOR'S REQUEST FOR JUDICIAL NOTICE**

SER 331

/././

**A. <u>CREDITOR OBJECTS TO DEBTOR'S REQUEST FOR JUDICIAL NOTICE AS IT WAS FILED AFTER THE TIME FOR ANY REPLY PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(F)(2) AND ON THE GROUNDS THAT THE CASE CITED THEREIN IS NOT RELEVANT OR GERMANE TO THE LEGAL ISSUES BEFORE THE COURT</u>.**

Debtor filed his Motion pursuant to Local Bankruptcy Rule ("**LBR**") 9013-1. The currently scheduled hearing on Debtor's Motion is March 17, 2016 at 1:30 p.m. in the above entitled Court. Pursuant to LBR 9013-1(f)(1), Creditor's Opposition to the Debtor's Motion was due to filed on or before March 3, 2016, and Creditor timely filed its Opposition to Debtor's Motion. *See, Docket Number 85.* LBR 9013-1(f)(2); however, provides that any reply to an Opposition must be filed and served not later than <u>7 days</u> prior to the hearing on the Motion. See, LBR 9013-1(f)(2). On March 15, 2016, just two days prior to the scheduled hearing, Debtor filed a Request for Judicial Notice with respect to a recent California Supreme Court Case. *See, Docket Number 88.* Thus, Creditor respectfully Objects to Debtor's Request for Judicial Notice because it is untimely.

In addition, Creditor Objects to Debtor's Request for Judicial Notice on the grounds that the case cited therein is not relevant or germane to the legal issues before this Court.

Therefore, Debtor's late filed Request for Judicial Notice should be disregarded and/or stricken.

## II.    CONCLUSION

For the reasons set forth herein, Creditor respectfully request Debtor's late filed Request for Judicial Notice should be disregarded and/or stricken.

Respectfully submitted,

ALDRIDGE PITE, LLP

Dated: _March 16, 2016_

/s/ Todd S. Garan (CA SBN 236878)_____
Todd S. Garan
Attorneys for U.S. Bank National
Association, as Trustee for Lehman XS
Trust Mortgage Pass-Through Certificates,
Series 2007-16N; Nationstar Mortgage, LLC

SER 332

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 4375 Jutland Drive, Suite 200, San Diego, CA 92117.

A true and correct copy of the foregoing document entitled: OBJECTION TO DEBTOR'S LATE FILED REQUEST FOR JUDICIAL NOTICE AND MOTION TO STRIKE THE SAME will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On March 16, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Michael Daniels    BkECFnotifications@nationstarmail.com
- **Debtor's Attorney**: Dana M Douglas    dmddouglas@hotmail.com
- **United States Trustee**: Abram Feuerstein    abram.s.feuerstein@usdoj.gov
- Cassandra J Richey    cmartin@pralc.com
- **United States Trustee**: (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On March 16, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

- **Debtor:** Anthony Paul Manrique, 718 Silverwood Ave., Upland, CA 91786
- **Judge:** Hon. Scott H. Yun, 3420 Twelfth Street, Suite 345, Riverside, CA 92501-3819

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 16, 2016 | Megan Pellow | /s/ Megan Pellow |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF SERVICE**

SER-353

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Anthony Paul Manrique<br>718 Silverwood Ave.<br>Upland, CA 91786<br>909-985-1869<br>Manq5230@aol.com | **FILED**<br>**APR 1 2 2016**<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:              Deputy Clerk |
| ☒ *Individual appearing without attorney*<br>☐ *Attorney for:* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - \*\*SELECT DIVISION\*\***

| In re:<br><br>ANTHONY PAUL MANRIQUE<br><br><br>Debtor(s). | CASE NO.: 6:15-bk-10650-SY<br><br>ADVERSARY NO.:<br>(*if applicable*)<br><br>CHAPTER: 11 |
|---|---|
| <br><br>Plaintiff(s) (*if applicable*).<br>vs.<br><br><br><br>Defendant(s) (*if applicable*). | <br><br>**NOTICE OF APPEAL**<br>**AND STATEMENT OF ELECTION** |

**Part 1: Identify the appellant(s)**

1.   Name(s) of appellant(s):  Anthony Paul Manrique

2.   Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
☐  Plaintiff
☐  Defendant
☐  Other (*describe*):

For appeals in a bankruptcy case and not in an adversary proceeding.
☒  Debtor
☐  Creditor
☐  Trustee
☐  Other (*describe*):

---

December 2015                    Page 1                    Official Form 417A

SER 334

$\pm$ 6013/164

**Part 2: Identify the subject of this appeal**

1. Describe the judgment, order, or decree appealed from:
   Order Denying Debtor's Motion to Reconsider Order Denying Claim Objection, Doc #97,
   US Bankruptcy Court - Central District of California - Riverside Division

2. The date the judgment, order, or decree was entered:  04/07/2016

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (*attach additional pages if necessary*):

1. Party:  U.S. Bank National Association, as Trustee for Lehman XS Trust Mortgage Pass-Through Cert

   Attorney:

   Matthey R. Clark
   Aldridge Pite, LLP
   4375 Jutland Drive, Suite 200
   P.O. Box 17933
   San Diego, CA 92177-0933
   Telephone: 858-750-7600

2. Party:

   Attorney:

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☒ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5: Sign below**

_____    Date: 04/11/2016
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

SER 335

1  Matthew R. Clark (SBN 271054)
   mclark@aldridgepite.com
2  Todd S. Garan (SBN 236878)
   tgaran@aldridgepite.com
3  ALDRIDGE PITE, LLP
   4375 Jutland Drive, Suite 200
4  P.O. Box 17933
   San Diego, CA 92177-0933
5  Telephone: (858) 750-7600
   Facsimile: (619) 590-1385
6
   Attorneys for *Secured Creditor*
7  U.S. Bank National Association, as Trustee for
   Lehman  XS Trust Mortgage Pass-Through
8  Certificates, Series 2007-16N

```
┌─────────────────────────────────┐
│      FILED & ENTERED            │
│                                 │
│        APR 07 2016              │
│                                 │
│  CLERK U.S. BANKRUPTCY COURT    │
│  Central District of California │
│  BY Mason    DEPUTY CLERK       │
└─────────────────────────────────┘
```

9                              CHANGES MADE BY COURT

10              UNITED STATES BANKRUPTCY COURT

11      CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

12  In re:                          Case No.6:15-bk-10650-SY

13  ANTHONY PAUL MANRIQUE,          Chapter 11

14          Debtor.                 **ORDER DENYING DEBTOR'S
                                    MOTION TO RECONSIDER ORDER
15                                  DENYING CLAIM OBJECTION**

16                                  **Hearing Date:**
                                    Date:    March 17, 2016
17                                  Time:    1:30 p.m.
                                    Place:   Courtroom 302
18                                           3420 Twelfth Street
                                             Riverside, CA 92501
19  ─────────────────────────────

20      The above-captioned matter came on for hearing on March 17, 2016, in Courtroom 302

21  of the U.S. Bankruptcy Court for the Central District of California, Riverside Division located at

22  3420 Twelfth Street, Riverside, CA 92501, upon Debtor Anthony Paul Manrique's ("Debtor")

23  Motion to Reconsider Order Denying Objection to Claim (the "Motion"). Appearances are as

24  noted on the record.

25      Having reviewed the Debtor's Motion and all papers submitted and filed in support

26  thereof, the opposition filed by U.S. Bank National Association, as Trustee for Lehman  XS Trust

27  Mortgage Pass-Through Certificates, Series 2007-16N; Natiosntar Mortgage LLC as servicer,

28  and the testimony on the record, and good cause appearing, and for the reasons stated on the

                                -1-

1 | record,

2 | **IT IS HEREBY ORDERED** that the Motion is DENIED.

3 | ###

Date: April 7, 2016

Scott H. Yun
United States Bankruptcy Judge

SER 337

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

718 Silverwood Ave., Upland, CA 1786

A true and correct copy of the foregoing document entitled: **NOTICE OF APPEAL AND STATEMENT OF ELECTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  04/11/2016  , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Scott Yun
US Bankruptcy Court - Central District of CA
3420 Twelfth St., Ste. 345
Riverside, CA 92501-3819

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/11/2016 | Lisa Manrique | *Lisa Manrique* (signature) |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

SER 338

Matthey R. Clark

Aldridge Pite, LLP

4375 Jutland Drive, Suite 200

P.O. Box 17933

San Diego, CA 92177-0933

SER 339

1   Dana M. Douglas  (SBN 220053)
    Attorney at Law
2   11024 Balboa Blvd., No. 431
    Granada Hills, CA 91344
3   MAILING ADDRESS
    4712 Admiralty Way #1001
4   Marina del Rey, CA  90292
    Telephone: 818-360-8295
5   Facsimile:  213-270-9456
    *dana@danamdouglaslaw.com*
6
    Attorney for Debtor
7   Anthony Paul Manrique

8               UNITED STATES BANKRUPTCY COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                      RIVERSIDE DIVISION

11  In re:                          )   Case No. 6:15-10650-SY
                                    )
12   ANTHONY PAUL MANRIQUE,         )
                                    )
13      Debtor and Debtor in Possession. )   Chapter 11
                                    )
14                                  )   **DECLARATION OF ANTHONY PAUL
                                    )   MANRIQUE IN SUPPORT OF DEBTOR'S**
15                                  )   **MOTION TO RECONSIDER ORDER**
                                    )   **DENYING OBJECTION TO CLAIM**
16                                  )
                                    )   Date:     October 29, 2015
17                                  )   Time:     1:30 pm
                                    )   Location: Courtroom 302
18                                  )             3420 Twelfth St.
                                    )             Riverside, CA  92501
19

20  TO THE HONORABLE SCOTT YUN, U.S. BANKRUPTCY JUDGE, U.S. BANK NATIONAL

21  ASSOCIATION AND NATIONSTAR MORTGAGE, LLC, INTERESTED PARTIES, BY AND

22  THROUGH THEIR ATTORNEYS OF RECORD:

23          Debtor Anthony Paul Manrique hereby submits his Declaration in Support of

24  Debtor's Motion to Reconsider Order Denying Objection (the "Declaration" and the

25  "Motion") which has already been filed by Debtor.

26          I, Anthony Paul Manrique, declare as follows:

27

28
                                  1
                        **DECLARATION IN SUPPORT**



1   1.  I am the Debtor herein.  I have personal knowledge of the facts set

2 forth herein, and if called as a witness, I could and would testify competently with

3 respect thereto. Where facts are alleged upon information and belief, I believe them

4 to be true.

5   2.  I commenced my bankruptcy case by filing a voluntary petition under

6 Chapter 11 of the Bankruptcy Code on January 26, 2015.  In Schedule D of my petition

7 I disclosed my secured debts, including the debt related to the mortgage on my home,

8 which I described as "disputed."  I initially disputed the debt because I have received

9 correspondence from and about so many entities asserting they are investors, owners or

10 services on the loan, and the title on my property shows so many parties having

11 recorded various interest(s) and/or liens thereon that I no longer know who has a right

12 to payment. However, in my continuing course of researching the history of the loan

13 that I obtained from Countrywide Home Loans when I refinanced the prior loan at the

14 recommendation of a mortgage broker in 2007, I recently learned that notwithstanding

15 the representations in the Proof of Claim and in the response to my objection, the

16 mortgage on my residence may never have legally transferred to US Bank as Trustee for

17 LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N

18 (the "Trust") in accord with the representations made by Lehman Brothers Holdings,

19 Inc., to the Securities & Exchange Commission in its Prospectus Supplement dated

20 August 30, 2007, and which it averred it had done in its Form 8-K Report dated August

21 31, 2007.  Attached hereto, as Exhibits A and B, are copies of documents I recently

22 located and am providing in support of the Motion.  The certified originals are available

23 for delivery to the court if desired.

24   3.  According to the Prospectus Supplement **Exhibit "A,"** attached hereto,

25 each transfer of a mortgage loan to the Trust will be reflected as such in the Sale and

26 Assignment Agreement and the Trust Agreement, respectively.  Neither Proof of

27 Claim 3 filed by Nationstar Mortgage, LLC for US Bank as Trustee for LEHMAN XS

28 TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N (the "POC" or

1  "POC 3") nor in the Response to Debtor's Objection to Proof of Clam No. 3 filed by U.S.

2  Bank National Association (Docket No. 51, the "Response") does claimant provide the

3  documentation the Prospectus states is the required documentation for each loan

4  transferred to the Trust.

5      4.    According to **Exhibit "B,"** each loan documented via a mortgage note that

6  was transferred to the Trust with the note endorsed in blank would include all

7  necessary intervening endorsements, as applicable; neither the POC nor the Response

8  provides a complete history of endorsements.

9      5.    The Fixed/Adjustable Rate Note attached to POC 3 in paragraph 1 titled

10  "Borrowers Promise to Pay" states "The Principal may increase..." This is not an

11  agreement to pay a fixed amount of money; therefore, I believe it is NOT A NEGOTIABLE

12  INSTRUMENT and cannot be transferred by a mere endorsement.

13      6.    I have objected to the content and accuracy of the Mortgage Proof of Claim

14  attachment and the Annual Escrow Disclosure Statement included in POC 3. I have

15  also disputed that the contents of the Deed of Trust demonstrates information

16  claimants have attributed to it.

17      7.    Finally, the POC asserts that US Bank as Trustee for LEHMAN XS TRUST

18  MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N, is the correct party

19  to assert the claim but neither the POC nor the Response provides any evidence that

20  America's Wholesale Lender ever transferred the loan to Lehman Brothers Holdings,

21  Inc., or to Structured Assets Securities Corporation who are the parties whom the

22  Prospectus Supplement and the Form 8-K Report indicate sold all loans owned by the

23  Trust.

24      Executed this 15th day of January, 2016, at Upland, California.

25

26

27                               Anthony Paul Manrique, Debtor

28



3
**DECLARATION IN SUPPORT**

SER 342

**EXHIBIT A**



# UNITED STATES OF AMERICA
SECURITIES AND EXCHANGE COMMISSION

# ATTESTATION

I HEREBY ATTEST

*that:*

*Attached is a copy of prospectus supplement dated August 30, 2007, received in this Commission on September 4, 2007, under the name of LEHMAN XS TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-16N, File No. 333-139693-05, pursuant to the provisions of the Securities Act of 1933.*

on file in this Commission

_____10/15/2014_____
Date

_Larry Mills_

Larry Mills, Acting Branch Chief

It is hereby certified that the Secretary of the U.S. Securities and Exchange Commission, Washington, DC, which Commission was created by the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) is official custodian of the records and files of said Commission and was such official custodian at the time of executing the above attestation, and that he/she, and persons holding the positions of Deputy Secretary, Assistant Director, Records Officer, Branch Chief of Records Management, and the Program Analyst for the Records Officer, or anyone of them, are authorized to execute the above attestation.

For the Commission

_Brent J. Fields_

Secretary

**EXHIBIT A**

SEC 334 (9-12)

SER 344

424B5 1 v086822_424b5.htm
PROSPECTUS SUPPLEMENT
(To Prospectus dated August 16, 2007)

$1,658,767,000 (Approximate)
# LEHMAN XS TRUST
Mortgage Pass-Through Certificates, Series 2007-16N

# AURORA LOAN SERVICES

| Lehman Brothers Holdings Inc. | Aurora Loan Services LLC |
|---|---|
| Sponsor and Seller | Master Servicer |
| | |
| Lehman XS Trust, Series 2007-16N | Structured Asset Securities Corporation |
| Issuing Entity | Depositor |

Consider carefully the risk factors beginning on page S-32 of this prospectus supplement and on page 6 of the prospectus.

For a list of capitalized terms used in this prospectus supplement and the prospectus, see the glossary of defined terms beginning on page S-159 in this prospectus supplement and the index of principal terms beginning on page 189 in the prospectus.

The certificates will represent interests in the issuing entity only and will not represent interests in or obligations of the sponsor, the depositor or any of their affiliates or any other party.

This prospectus supplement may be used to offer and sell the certificates offered hereby only if accompanied by the prospectus.

The trust fund will issue certificates including the following classes offered hereby:

- Multiple classes of senior certificates including exchangeable certificates

- Multiple classes of subordinate certificates

The classes of certificates offered by this prospectus supplement are listed, together with their initial class principal amounts and interest rates, in the table under "The Offered Certificates" on page S-1 of this prospectus supplement. This prospectus supplement and the accompanying prospectus relate only to the offering of the certificates listed in the table on page S-1 and not to the other classes of certificates that will be issued by the trust fund as described in this prospectus supplement.

Principal and interest will be payable monthly on the certificates, as described in this prospectus supplement. The first expected distribution date will be September 25, 2007. Credit enhancement for the offered certificates includes excess interest, overcollateralization, subordination, loss allocation and limited cross-collateralization features. The Class 1-A1 and Class 1-A2 Certificates will have the benefit of an interest rate swap agreement provided by ABN AMRO Bank N.V. and the Class 2-A1, Class 2-A2, Class 2-A3, Class 2-A4, Class 3-A1, Class 3-A2 and Class 3-A3 Certificates will have the benefit of an interest rate swap agreement provided by Swiss Re Financial Products Corporation. Amounts payable under the interest rate swap agreements will be available to pay certain interest shortfalls, maintain overcollateralization and repay certain losses of the Class 1-A1, Class 1-A2, Class 2-A1, Class 2-A2, Class 2-A3, Class 2-A4, Class 3-A1, Class 3-A2 and Class 3-A3 Certificates, as described in this prospectus supplement. The Class 1-A1 and Class 1-A2 Certificates will have the benefit of two interest rate cap agreements provided by ABN AMRO Bank N.V. and the Class 2-A1, Class 2-A2, Class 2-A3, Class 2-A4, Class 3-A1, Class 3-A2 and Class 3-A3 Certificates will have the benefit of an interest rate cap agreement provided by Swiss Re Financial Products Corporation, as described in this prospectus supplement. The Class 1-A2 Certificates will have the benefit of a certificate insurance policy issued by Assured Guaranty Corp.

The assets of the trust fund will consist primarily of three pools of conventional, first lien, adjustable rate, fully amortizing, hybrid negative amortization residential mortgage loans that were originated in accordance with underwriting guidelines that are not as strict as Fannie Mae and Freddie Mac guidelines.



Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved the certificates or determined that this prospectus supplement or the accompanying prospectus is accurate or complete. Any representation to the contrary is a criminal offense.

The certificates offered by this prospectus supplement will be purchased by Lehman Brothers Inc., as underwriter, from Structured Asset Securities Corporation, and are being offered from time to time for sale to the public in negotiated transactions or otherwise at varying prices to be determined at the time of sale. The underwriter has the right to reject any order. Proceeds to Structured Asset Securities Corporation from the sale of these certificates will be 100.00% of their initial total class principal amount before deducting expenses.

On or about August 31, 2007, delivery of the certificates offered by this prospectus supplement will be made through the book-entry facilities of The Depository Trust Company, and upon request, through Clearstream Banking Luxembourg and the Euroclear System.

Underwriter:
# LEHMAN BROTHERS
The date of this prospectus supplement is August 30, 2007.

Important notice about information presented in this
prospectus supplement and the accompanying prospectus:

We provide information to you about the certificates offered by this prospectus supplement in two separate documents that progressively provide more detail: (1) the accompanying prospectus, which provides general information, some of which may not apply to your certificates and (2) this prospectus supplement, which describes the specific terms of your certificates.

The information presented in this prospectus supplement is intended to enhance the general terms of the accompanying prospectus. If the specific terms of this prospectus supplement and the general terms of the accompanying prospectus vary, you should rely on the information in this prospectus supplement.

You should rely only on the information contained or incorporated by reference in this prospectus supplement and the accompanying prospectus. We have not authorized anyone to provide you with different information.

We are not offering the certificates in any state where the offer is not permitted. We do not claim that the information in this prospectus supplement and prospectus is accurate as of any date other than the dates stated on their respective covers.

_____

Dealers will deliver a prospectus supplement and prospectus when acting as underwriters of the certificates and with respect to their unsold allotments or subscriptions. In addition, all dealers selling the certificates will be required to deliver a prospectus supplement and prospectus for ninety days following the date of this prospectus supplement.

_____

We include cross-references in this prospectus supplement and the accompanying prospectus to captions in these materials where you can find further related discussions. The following tables of contents provide the pages on which these captions are located.

For European Investors Only

In relation to each Member State of the European Economic Area which has implemented the Prospectus Directive (each, a "Relevant Member State"), the underwriter has represented and agreed that with effect from and including the date on which the Prospectus Directive is implemented in that Relevant Member State (the "Relevant Implementation Date") it has not made and will not make an offer of certificates to the public in that Relevant Member State prior to the publication of a prospectus in relation to the certificates which has been approved by the competent authority in that Relevant Member State or, where appropriate, approved in another Relevant Member State and notified to the competent authority in that Relevant Member State, all in accordance with the Prospectus Directive, except that it may, with effect from and including the Relevant Implementation Date, make an offer of certificates to the public in that Relevant Member State at any time:

- (a)to legal entities which are authorized or regulated to operate in the financial markets or, if not so authorized, or regulated, whose corporate purpose is solely to invest in securities;

- (b)to any legal entity which has two or more of (1) an average of at least 250 employees during the last financial year; (2) a total balance sheet of more than €43,000,000 and (3) an annual net turnover of more than €50,000,000, as shown in its last annual or consolidated accounts; or

- (c)in any other circumstances which do not require the publication by the issuer of a prospectus pursuant to Article 3 of the Prospectus Directive.

For the purposes of this provision, the expression an "offer of certificates to the public" in relation to any certificates

SER 347

in any Relevant Member State means the communication in any form and by any means of sufficient information on the terms of the offer and the certificates to be offered so as to enable an investor to decide to purchase or subscribe the certificates, as the same may be varied in that Member State by any measure implementing the Prospectus Directive in that Member State and the expression "Prospectus Directive" means Directive 2003/71/EC and includes any relevant implementing measure in each Relevant Member State.

S-ii

SER 348

TABLE OF CONTENTS

| | |
|---|---|
| Summary of Terms | S-3 |
|     Parties | S-3 |
|     The Certificates | S-4 |
|     The Mortgage Loans | S-22 |
|     Financing | S-30 |
|     Tax Status | S-30 |
|     ERISA Considerations | S-30 |
|     Legal Investment Considerations | S-30 |
|     Ratings of the Certificates | S-30 |
| Risk Factors | S-32 |
| Glossary of Defined Terms | S-60 |
| Description of the Certificates | S-60 |
|     General | S-60 |
|     Book-Entry Registration | S-62 |
|     Distributions of Interest | S-62 |
|     Determination of LIBOR | S-66 |
|     Distributions of Principal | S-67 |
|     Exchangeable Certificates | S-73 |
|     The Interest Rate Cap Agreements | S-74 |
|     ABN AMRO Bank N.V. | S-76 |
|     Swiss Re Financial Products Corporation | S-77 |
|     The Class AP-I, Class 2-AP and Class 3-AP Certificates | S-78 |
|     Credit Enhancement | S-78 |
|     The Supplemental Interest Trusts | S-86 |
|     Optional Purchase of the Mortgage Loans | S-91 |
| Fees and Expenses of the Trust Fund | S-92 |
| Description of the Mortgage Pools | S-93 |
|     General | S-93 |
|     The Pool 1 Mortgage Loans | S-96 |
|     The Pool 2 Mortgage Loans | S-96 |
|     The Pool 3 Mortgage Loans | S-97 |
| Static Pool Information | S-97 |
| Material Legal Proceedings | S-98 |
| Affiliations and Relationships | S-98 |
| Additional Information | S-98 |
| The Sponsor | S-99 |
| The Depositor | S-99 |
| The Custodians | S-99 |
| Origination of the Mortgage Loans and Underwriting Guidelines | S-100 |
|     Lehman Brothers Bank, FSB. | S-100 |
|     Countrywide Home Loans, Inc. | S-105 |
| The Master Servicer | S-111 |
| The Servicers | S-112 |
|     Aurora Loan Services LLC | S-112 |
|     Countrywide Home Loans Servicing LP. | S-112 |
| Administration of the Trust Fund | S-115 |
|     Servicing and Administrative Responsibilities | S-115 |
|     Trust Accounts | S-119 |
|     Example of Distributions | S-120 |
| Mortgage Loan Servicing | S-121 |
|     General | S-121 |
|     Servicing Accounts | S-122 |
|     Servicing Compensation and Payment of Expenses | S-122 |

SER 349

Waiver or Modification of Mortgage Loan Terms   S-123
Prepayment Interest Shortfalls   S-123
Advances   S-123
Collection of Taxes, Assessments and Similar Items   S-124
Insurance Coverage   S-124
Evidence as to Compliance   S-124
Master Servicer Default; Servicer Default   S-125
Amendment of the Servicing Agreements   S-125
Custody of the Mortgage Files   S-125
The Trust Agreement   S-125
General   S-125
The Issuing Entity   S-126
The Trustee   S-127
Assignment of Mortgage Loans   S-128
Representations and Warranties   S-129
Certain Matters Under the Trust Agreement   S-130
Reports to Certificateholders   S-134
Voting Rights   S-136
Yield, Prepayment and Weighted Average Life   S-137
General   S-137
Overcollateralization   S-141
Subordination of Certain Certificates   S-141
Weighted Average Life   S-142
The Certificate Insurance Policy   S-143
The Policy   S-143
The Insurer   S-148
Material Federal Income Tax Considerations   S-150
General   S-150
Tax Treatment of the Offered Certificates   S-151
Additional Considerations for the Exchangeable Certificates   S-154
Legal Investment Considerations   S-154
ERISA Considerations   S-154
Use of Proceeds   S-156
Underwriting   S-156
Experts   S-157
Legal Matters   S-157
Ratings   S-157
Glossary of Defined Terms   S-159
Annex A: Certain Characteristics of the Mortgage Loans   S-A-1
Annex B-1: Assumed Mortgage Loan Characteristics   S-B-1-1
Annex B-2: Principal Amount Decrement Tables   S-B-2-1
Annex C. Interest Rate Cap Agreement Schedules   S-C-1
Annex D: Swap Agreement Scheduled Notional Amounts and Rates of Payment   S-D-1
Annex E: Available Exchange Combinations   S-E-1

S-iii

SER 350

EX-4.1 3 v087727_ex4-1.htm

EXECUTION COPY

STRUCTURED ASSET SECURITIES CORPORATION,
as Depositor,

AURORA LOAN SERVICES LLC,
as Master Servicer,

and

U.S. BANK NATIONAL ASSOCIATION,
as Trustee

———————

TRUST AGREEMENT

Dated as of August 1, 2007

———————

LEHMAN XS TRUST

MORTGAGE PASS-THROUGH CERTIFICATES,

SERIES 2007-16N

SER 351

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---:|
| **ARTICLE I. DEFINITIONS** |  | 22 |
|  |  |  |
| Section 1.01. | Definitions | 22 |
| Section 1.02. | Calculations Respecting Mortgage Loans | 82 |
| Section 1.03. | Calculations Respecting Accrued Interest | 83 |
| Section 1.04. | Rights of the NIMS Insurer | 83 |
|  |  |  |
| **ARTICLE II. DECLARATION OF TRUST; ISSUANCE OF CERTIFICATES** |  | 83 |
|  |  |  |
| Section 2.01. | Creation and Declaration of Trust Fund; Conveyance of Mortgage Loans | 83 |
| Section 2.02. | Acceptance of Trust Fund by Trustee: Review of Documentation for Trust Fund | 87 |
| Section 2.03. | Representations and Warranties of the Depositor | 89 |
| Section 2.04. | Discovery of Breach | 91 |
| Section 2.05. | Repurchase, Purchase or Substitution of Mortgage Loans | 92 |
| Section 2.06. | Grant Clause | 93 |
|  |  |  |
| **ARTICLE III. THE CERTIFICATES** |  | 94 |
|  |  |  |
| Section 3.01. | The Certificates | 94 |
| Section 3.02. | Registration | 95 |
| Section 3.03. | Transfer and Exchange of Certificates | 96 |
| Section 3.04. | Cancellation of Certificates | 102 |
| Section 3.05. | Replacement of Certificates | 102 |
| Section 3.06. | Persons Deemed Owners | 102 |
| Section 3.07. | Temporary Certificates | 102 |
| Section 3.08. | Appointment of Paying Agent | 103 |
| Section 3.09. | Book Entry Certificates | 104 |
| Section 3.10. | Deposit of Underlying REMIC Certificates under the Exchange Trust Agreement | 105 |
|  |  |  |
| **ARTICLE IV. ADMINISTRATION OF THE TRUST FUND** |  | 105 |
|  |  |  |
| Section 4.01. | Collection Account | 105 |
| Section 4.02. | Application of Funds in the Collection Account | 107 |
| Section 4.03. | Reports to Certificateholders | 110 |
| Section 4.04. | The Certificate Account | 115 |

-i-

TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|
| **ARTICLE V. DISTRIBUTIONS TO HOLDERS OF CERTIFICATES** | | 116 |
| Section 5.01. | Distributions Generally | 116 |
| Section 5.02. | Distributions from the Certificate Account. | 117 |
| Section 5.03. | Allocation of Losses | 137 |
| | (a) On each Distribution Date, the aggregate Class Principal Amount of the Certificates shall be reduced by the amount of any Pool 1 Applied Loss Amount for such date, in the following order of priority: | 137 |
| Section 5.04. | Advances by Master Servicer, Servicers and Trustee | 138 |
| Section 5.05. | Compensating Interest Payments | 139 |
| Section 5.06. | Pool 1 Basis Risk Reserve Fund and Pool 2-3 Basis Risk Reserve Fund | 139 |
| Section 5.07. | Supplemental Interest Trusts | 140 |
| Section 5.08. | Rights of each Swap Counterparty | 141 |
| Section 5.09. | Termination Receipts | 141 |
| Section 5.10. | Collateral Account | 142 |
| Section 5.11. | Class AP-I, Class 2-AP and 3-AP Reserve Funds | 142 |
| Section 5.12. | X-I Component Account and X-II Component Account | 143 |
| Section 5.13. | The Certificate Insurance Policy | 144 |
| | | |
| **ARTICLE VI. CONCERNING THE TRUSTEE; EVENTS OF DEFAULT** | | 147 |
| Section 6.01. | Duties of Trustee | 147 |
| Section 6.02. | Certain Matters Affecting the Trustee | 150 |
| Section 6.03. | Trustee Not Liable for Certificates | 151 |
| Section 6.04. | Trustee May Own Certificates | 152 |
| Section 6.05. | Eligibility Requirements for Trustee | 152 |
| Section 6.06. | Resignation and Removal of Trustee | 152 |
| Section 6.07. | Successor Trustee | 153 |
| Section 6.08. | Merger or Consolidation of Trustee | 154 |
| Section 6.09. | Appointment of Co-Trustee, Separate Trustee or Custodian | 154 |
| Section 6.10. | Authenticating Agents | 156 |
| Section 6.11. | Indemnification of Trustee | 157 |

-ii-

TABLE OF CONTENTS
(continued)

|  |  | Page |
|---|---|---|
| Section 6.12. | Fees and Expenses of Trustee and Custodian | 158 |
| Section 6.13. | Collection of Monies | 158 |
| Section 6.14. | Events of Default; Trustee To Act; Appointment of Successor | 158 |
| Section 6.15. | Additional Remedies of Trustee Upon Event of Default | 163 |
| Section 6.16. | Waiver of Defaults | 163 |
| Section 6.17. | Notification to Holders | 164 |
| Section 6.18. | Directions by Certificateholders and Duties of Trustee During Event of Default | 164 |
| Section 6.19. | Action Upon Certain Failures of the Master Servicer and Upon Event of Default | 165 |
| Section 6.20. | Preparation of Tax Returns and Other Reports | 165 |
| Section 6.21. | Reporting Requirements of the Commission | 172 |
| Section 6.22. | Indemnification by the Trustee | 172 |
| **ARTICLE VII. PURCHASE OF MORTGAGE LOANS AND TERMINATION OF THE TRUST FUND** | | 173 |
| Section 7.01. | Purchase of Mortgage Loans; Termination of the Trust Fund Upon Purchase or Liquidation of Mortgage Loans | 173 |
| Section 7.02. | Procedure Upon Termination of Trust Fund | 176 |
| Section 7.03. | Additional Trust Fund Termination Requirements | 177 |
| Section 7.04. | Optional Purchase Right of NIMS Insurer | 178 |
| **ARTICLE VIII. RIGHTS OF CERTIFICATEHOLDERS** | | 178 |
| Section 8.01. | Limitation on Rights of Holders | 178 |
| Section 8.02. | Access to List of Holders | 179 |
| Section 8.03. | Acts of Holders of Certificates | 179 |
| **ARTICLE IX. ADMINISTRATION AND SERVICING OF MORTGAGE LOANS BY THE MASTER SERVICER** | | 180 |
| Section 9.01. | Duties of the Master Servicer | 180 |
| Section 9.02. | Master Servicer Fidelity Bond and Master Servicer Errors and Omissions Insurance Policy | 181 |
| Section 9.03. | Master Servicer's Financial Statements and Related Information | 181 |
| Section 9.04. | Power to Act; Procedures | 182 |

-iii-

SER 354

TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|
| Section 9.05. | Enforcement of Servicers' and Master Servicer's Obligations | 183 |
| Section 9.06. | Collection of Taxes, Assessments and Similar Items | 184 |
| Section 9.07. | Termination of Servicing Agreements; Successor Servicers | 185 |
| Section 9.08. | Master Servicer Liable for Enforcement | 186 |
| Section 9.09. | No Contractual Relationship Between the Servicer, Any NIMS Insurer and Trustee or Depositor | 186 |
| Section 9.10. | Assumption of Servicing Agreement by the Trustee | 186 |
| Section 9.11. | Due-on-Sale Clauses; Assumption Agreements; Easements | 187 |
| Section 9.12. | Release of Mortgage Files | 187 |
| Section 9.13. | Documents, Records and Funds in Possession of Master Servicer To Be Held for Trustee | 189 |
| Section 9.14. | Representations and Warranties of the Master Servicer | 191 |
| Section 9.15. | Opinion | 193 |
| Section 9.16. | Standard Hazard and Flood Insurance Policies | 194 |
| Section 9.17. | Presentment of Claims and Collection of Proceeds | 194 |
| Section 9.18. | Maintenance of the Primary Mortgage Insurance Policies | 194 |
| Section 9.19. | Trustee To Retain Possession of Certain Insurance Policies and Documents | 195 |
| Section 9.20. | Realization Upon Defaulted Mortgage Loans | 195 |
| Section 9.21. | Compensation to the Master Servicer | 196 |
| Section 9.22. | REO Property | 197 |
| Section 9.23. | Notice to the Sponsor, the Depositor and the Trustee | 197 |
| Section 9.24. | Reports to the Trustee | 198 |
| Section 9.25. | Assessment of Compliance and Attestation Reports | 199 |
| Section 9.26. | Annual Statement of Compliance with Applicable Servicing Criteria | 200 |
| Section 9.27. | Merger or Consolidation | 201 |
| Section 9.28. | Resignation of Master Servicer | 201 |
| Section 9.29. | Assignment or Delegation of Duties by the Master Servicer | 202 |
| Section 9.30. | Limitation on Liability of the Master Servicer and Others | 202 |
| Section 9.31. | Indemnification; Third Party Claims | 203 |

-iv-

SER 355

TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---:|
| Section 9.32. | Special Servicing of Delinquent Mortgage Loans | 204 |
| Section 9.33. | Allocation to Related Mortgage Pool | 204 |
| **ARTICLE X. REMIC ADMINISTRATION** | | **204** |
| Section 10.01. | REMIC Administration | 204 |
| Section 10.02. | Prohibited Transactions and Activities | 218 |
| Section 10.03. | Indemnification with Respect to Certain Taxes and Loss of REMIC Status | 218 |
| Section 10.04. | REO Property | 218 |
| **ARTICLE XI. MISCELLANEOUS PROVISIONS** | | **219** |
| Section 11.01. | Binding Nature of Agreement; Assignment | 219 |
| Section 11.02. | Entire Agreement | 219 |
| Section 11.03. | Amendment. | 219 |
| Section 11.04. | Voting Rights | 221 |
| Section 11.05. | Provision of Information | 222 |
| Section 11.06. | Governing Law | 222 |
| Section 11.07. | Notices | 222 |
| Section 11.08. | Severability of Provisions | 223 |
| Section 11.09. | Indulgences; No Waivers | 223 |
| Section 11.10. | Headings Not To Affect Interpretation | 223 |
| Section 11.11. | Benefits of Agreement | 223 |
| Section 11.12. | Special Notices to the Rating Agencies, the Certificate Insurer, the Swap Counterparties and NIMS Insurer | 223 |
| Section 11.13. | Conflicts | 224 |
| Section 11.14. | Counterparts | 225 |
| Section 11.15. | Transfer of Servicing | 225 |
| Section 11.16. | Third Party Rights | 227 |
| Section 11.17. | Matters Relating to the Certificate Insurance Policy | 227 |

-v-

SER 356

TABLE OF CONTENTS
(continued)

Page

ATTACHMENTS

| | | |
|---|---|---|
| Exhibit A | Forms of Certificates | |
| Exhibit B-1 | Form of Initial Certification | |
| Exhibit B-2 | Form of Interim Certification | |
| Exhibit B-3 | Form of Final Certification | |
| Exhibit B-4 | Form of Endorsement | |
| Exhibit C | Request for Release of Documents and Receipt | |
| Exhibit D-l | Form of Residual Certificate Transfer Affidavit (Transferee) | |
| Exhibit D-2 | Form of Residual Certificate Transfer Affidavit (Transferor) | |
| Exhibit E | Servicing Agreements | |
| Exhibit F | Form of Rule 144A Transfer Certificate | |
| Exhibit G | Form of Purchaser's Letter for Institutional Accredited Investors | |
| Exhibit H | Form of ERISA Transfer Affidavit | |
| Exhibit I | [Reserved] | |
| Exhibit J | [Reserved] | |
| Exhibit K | Custodial Agreements | |
| Exhibit L | Form of Exchange Trust Agreement (including Available Combination Schedule) | |
| Exhibit M | Form of Certificate Insurance Policy | |
| Exhibit N | Forms of Swap Agreements | |
| Exhibit O | Forms of Interest Rate Cap Agreements | |
| Exhibit P | [Reserved] | |
| Exhibit Q-1 | Additional Form 10-D Disclosure | |
| Exhibit Q-2 | Additional Form 10-K Disclosure | |
| Exhibit Q-3 | Additional Form 8-K Disclosure | |
| Exhibit Q-4 | Additional Disclosure Notification | |
| Exhibit R | Servicing Criteria to be Addressed in Report on Assessment of Compliance | |
| Exhibit S | Transaction Parties | |
| Exhibit T | Form of Back-Up Sarbanes-Oxley Certification | |
| Exhibit U | Form of Back-Up Sarbanes-Oxley Certification to be Provided by the Trustee | |
| Schedule A | Mortgage Loan Schedule | |
| Schedule B | Swap Agreement Scheduled Notional Amounts and Rates of Payment | |

-vi-

Case: 16-56799  08/12/2016, ID: 10083752, DktEntry: 30-2, Page 289 of 290

This TRUST AGREEMENT, dated as of August 1, 2007 (the "Agreement"), is by and among STRUCTURED ASSET SECURITIES CORPORATION, a Delaware corporation, as depositor (the "Depositor"), AURORA LOAN SERVICES LLC, as master servicer (the "Master Servicer"), and U.S. BANK NATIONAL ASSOCIATION, a national banking association, as trustee (the "Trustee").

## PRELIMINARY STATEMENT

The Depositor has acquired the Mortgage Loans from Lehman Brothers Holdings Inc. (the "Seller"), and at the Closing Date is the owner of the Mortgage Loans and the other property being conveyed by it to the Trustee hereunder for inclusion in the Trust Fund. On the Closing Date, the Depositor will acquire the Certificates from the Trust Fund as consideration for its transfer to the Trust Fund of the Mortgage Loans and the other property constituting the Trust Fund. The Depositor has duly authorized the execution and delivery of this Agreement to provide for the conveyance to the Trustee of the Mortgage Loans and the other property constituting the Trust Fund. All covenants and agreements made by the Seller in the Mortgage Loan Sale Agreement and by the Depositor, the Master Servicer and the Trustee herein with respect to the Mortgage Loans and the other property constituting the Trust Fund are for the benefit of the Holders from time to time of the Certificates and, to the extent provided herein, any NIMS Insurer and the Swap Counterparty. The Depositor, the Trustee and the Master Servicer are entering into this Agreement, and the Trustee is accepting the Trust Fund created hereby, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

As provided herein, the Trustee shall elect that the Trust Fund (other than (i) the Pool 1 Basis Risk Reserve Fund and the Pool 2-3 Basis Risk Reserve Fund, (ii) the rights to receive Prepayment Premiums distributable to the Class P Certificates and the Class P Reserve Funds, (iii) the X-I Component Account and X-II Component Account, (iv) the Interest Rate Cap Agreements and the Interest Rate Cap Accounts, (v) the Swap Agreements and the Supplemental Interest Trusts and (vi) the Lower Tier Interests) be treated for federal income tax purposes as comprising six real estate mortgage investment conduits (each a "REMIC" or, in the alternative, the "SWAP I REMIC," "REMIC I-1," "REMIC I-2," the "SWAP II REMIC," "REMIC II-1" and "REMIC II-2"). Each Group I Certificate and each Class X-I Certificate represents ownership of one or more regular interests in REMIC I-2 for purposes of the REMIC Provisions. In addition, (i) each Group I Certificate represents the right to receive payments with respect to Excess Interest and (ii) each Group I Certificate represents the obligation to make payments in respect of Class I-I Shortfalls. Each Group II Certificate (other than any Exchange Certificate or Exchangeable Certificate) and each Class X-II Certificate represents ownership of one or more regular interests in REMIC II-2 for purposes of the REMIC Provisions. In addition, (i) each Group II Certificate (other than any Exchange Certificate or Exchangeable Certificate) represents the right to receive payments with respect to Excess Interest and (ii) each Group II Certificate represents the obligation to make payments in respect of Class I-II Shortfalls. The Class R Certificate represents ownership of the sole Class of residual interest in each REMIC for purposes of the REMIC Provisions. Each Exchange Class or Exchangeable Class represents a beneficial interest in a grantor trust created under the Exchange Trust Agreement holding the related Underlying REMIC Certificates.

Section 11.05.          Provision of Information.

(a)          For so long as any of the Certificates of any series or Class are "restricted securities" within the meaning of Rule 144(a)(3) under the Act, each of the Depositor, the Master Servicer and the Trustee agree to cooperate with each other to provide to any Certificateholders, and to any prospective purchaser of Certificates designated by such holder, upon the request of such holder or prospective purchaser, any information required to be provided to such holder or prospective purchaser to satisfy the condition set forth in Rule 144A(d)(4) under the Act. Any reasonable, out-of-pocket expenses incurred by the Trustee in providing such information shall be reimbursed by the Depositor.

(b)          The Trustee shall make available to any person to whom a Prospectus was delivered, upon the request of such person specifying the document or documents requested, (i) a copy (excluding exhibits) of any report on Form 8-K, Form 10-D or Form 10-K filed with the Commission pursuant to Section 6.20(c), (d) or (e) and (ii) a copy of any other document incorporated by reference in the Prospectus (to the extent that the Trustee has such documents in its possession or such documents are reasonably obtainable by the Trustee). Any reasonable out-of-pocket expenses incurred by the Trustee in providing copies of such documents shall be reimbursed by the Depositor.

(c)          On each Distribution Date, the Trustee shall make available on its website or otherwise deliver to the Depositor a copy of the report delivered to Certificateholders pursuant to Section 4.03.

Section 11.06.          Governing Law.

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW) AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 11.07.          Notices.

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given when received by (a) in the case of the Depositor, Structured Asset Securities Corporation, 745 Seventh Avenue, 13th Floor, New York, New York 10019, Attention: Mortgage Finance, LXS 2007-16N, (b) in the case of the Seller, Lehman Brothers Holdings Inc., 745 Seventh Avenue, 13th Floor, New York, New York 10019, Attention: Mortgage Finance, LXS 2007-16N, (c) in the case of the Trustee, U.S. Bank National Association, One Federal Street, Boston, M.A. 02110, Attention: Corporate Trust Services, (d) in the case of the NIMS Insurer, if any, as set forth in the Indenture, (e) in the case of either Swap Counterparty, at the address therefore set forth in the applicable Swap Agreement, (f) in the case of the Master Servicer, Aurora Loan Services LLC, 10350 Park Meadows Drive, Littleton, Colorado 80124; Attention: Master Servicing, LXS 2007-16N and (g) in the case of the Certificate Insurer, Assured Guaranty Corp., 1325 Avenue of the Americas, New York, New York 10019, Attention: Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-16N, Class 1-A2 Certificates or, as to each party such other address as may hereafter be furnished by such party to the other parties in writing. All demands, notices and communications to a party hereunder shall be in writing and shall be deemed to have been duly given when delivered to such party at the relevant address, facsimile number or electronic mail address set forth above or at such other address, facsimile number or electronic mail address as such party may designate from time to time by written notice in accordance with this Section 11.07.

-222-

SER 360